# EXHIBIT A

FILED
2022 JUL 18 12:50 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 21-2-04263-1 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

JAVIER TAPIA,

Plaintiff,

v.

NAPHCARE, INC., an Alabama Corporation;
PIERCE COUNTY, a political subdivision of
the State of Washington; PAUL PASTOR, in
his personal capacity; ROB MASKO, in his
Personal Capacity; KAREN DANIELS, in her
Personal Capacity; JIM MCLANE, in his
Personal Capacity; SUSANNE MOORE, in her
Personal Capacity; MARSHA BURGESS, in
her Personal Capacity; AMBER H. SIMPLER,
in her Personal Capacity; JEFFREY
ALVAREZ, in his Personal Capacity;
BRADFORD T. MCLANE, in his Personal
Capacity; CORNELIUS HENDERSON, in his
Personal Capacity; ELLIOT WADE, in his
Personal Capacity; CAMERON CARRILLO,
in his Personal Capacity; ELIZABETH
WARREN, in her Personal Capacity; DEBRA
RICCI in her Personal Capacity; RICK
OELTJEN, in his Personal Capacity; DUANE
PRATHER, in his Personal Capacity;
DARREN NEALIS, in his Personal Capacity;
JESUS PEREZ, in his Personal Capacity;
MIGUEL BALDERRAMA, in his Personal
Capacity; JOHN and JANE DOES 1-10, in
their Personal Capacities,

Defendants.

NO.  21-2-04263-1 SEA

**FIRST AMENDED COMPLAINT**

**JURY DEMANDED**

FIRST AMENDED COMPLAINT - 1
(NO.  21-2-04263-1 SEA)

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

COMES NOW the above-named Plaintiff, pursuant to Fed. R. Civ. P. 15(a)(2), by and through attorneys Ryan D. Dreveskracht and Corinne Sebren, of Galanda Broadman, PLLC, and by way of claim alleges upon personal knowledge as to himself and his own actions, and upon information and belief upon all other matters, as follows:

## I.     PARTIES

**A.    PLAINTIFF**

1.      JAVIER TAPIA is an adult residing in Pierce County, Washington.  This is an action arising from Javier's easily preventable injuries and the Defendants' negligence, gross negligence, and deliberate indifference to Javier's serious medical condition.  The claims herein include all claims for damages available under Washington and federal law.

**B.    PIERCE COUNTY DEFENDANTS**

2.      Defendant PIERCE COUNTY is a municipal corporation responsible for administering the Pierce County Jail ("Jail").  The Jail is an adult corrections facility that is required to provide proper custody, control, and supervision for county, state, and federal inmates in Pierce County.  Pierce County is, and was at all times mentioned herein, responsible for the actions or inactions, and the policies, procedures, and practices/customs of all health services relating to the Jail, including the provision medical treatment at outside facilities when necessary.  Although Pierce County has attempted to privatize the provision of healthcare services to Defendant NAPHCARE, INC., it cannot contract-away its constitutional obligations and is legally liable for the negligence and constitutional violations committed by such providers.

3.      Defendant PAUL PASTOR is the Pierce County Sheriff.  He supervised, administrated, and managed all Pierce County employees and corrections facilities at the time of Javier's injuries and was responsible for ensuring the presence and implementation of proper policies, procedures, and training.  Defendant Pastor was also responsible for the training,

FIRST AMENDED COMPLAINT - 2
(NO.  21-2-04263-1 SEA)

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

supervision, and discipline of Pierce County employees and/or agents, including the below individually named Jailer Defendants, and John and Jane Does 1 through 5.  He has approved and ratified the acts and omissions of the employees and contractors described below.  He is sued in his personal capacity only.

4.      Defendant ROB MASKO is Pierce County's Undersheriff.   He supervised, administrated, and managed all Pierce County employees and corrections facilities at the time of Javier's injuries, and was responsible for ensuring the presence and implementation of proper policies, procedures, and training.   Defendant Masko was also responsible for the training, supervision, and discipline of Pierce County employees and/or agents, including the below individually named Jailer Defendants, and John and Jane Does 1 through 5.  He has approved and ratified the acts and omissions of the employees and contractors described below.  He is sued in his personal capacity only.

5.      Defendant KAREN DANIELS is Pierce County's Chief of Corrections.   She supervised, administrated, and managed all Pierce County employees and corrections facilities at the time of Javier's injuries, and was responsible for ensuring the presence and implementation of proper policies, procedures, and training.  Defendant Daniels was also responsible for the training, supervision, and discipline of Pierce County employees and/or agents, including the below individually named Jailer Defendants, and John and Jane Does 1 through 5.  She has approved and ratified the acts and omissions of the employees and contractors described below.  She is sued in his personal capacity only.

6.      Defendant LARRY WHITE is Pierce County's Corrections Sergeant.   He supervised, administrated, and managed all Pierce County employees and corrections facilities at the time of Javier's injuries, and was responsible for ensuring the presence and implementation of proper policies, procedures, and training.  Defendant White was also responsible for the training,

FIRST AMENDED COMPLAINT - 3
(NO.  21-2-04263-1 SEA)

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

1   supervision, and discipline of Pierce County employees and/or agents, including the below

2   individually named Jailer Defendants, and John and Jane Does 1 through 5.  He has approved and

3   ratified the acts and omissions of the employees and contractors described below.  He is sued in his

4   personal capacity only.

5       7.      Defendants PASTOR, MASKO, DANIELS, and WHITE shall be referred to

6   collectively as "County Policymaking Defendants."   At all material times, each County

7   Policymaking Defendant acted under color of law and was a state actor.

8       8.      Defendants RICK OELTJEN, DUANE PRATHER, DARREN NEALIS, JESUS

9   PEREZ, and MIGUEL BALDERRAMA ("County Jailer Defendants," together with County

10  Policymaking Defendants referred to as "County Defendants") at all times material to this lawsuit

11  were employees of Pierce County and were responsible for providing for Javier's safety and

12  security.  County Jailer Defendants knew that Javier was in need of medical assistance but were

13  deliberately indifferent to his serious medical condition and/or were otherwise negligent.  At all

14  times, County Jailer Defendants were agents and/or employees of Pierce County and were

15  responsible for keeping Javier safe and in good health during his incarceration.  At all material

16  times, County Jailer Defendants were acting under color of state law.  The actions and omissions

17  alleged in this Amended Complaint to have been carried out by the County Defendants were carried

18  out by themselves, personally, and/or with their knowledge, information, consent, or approval, and

19  in violation of their obligations under, *inter alia*, the U.S. Constitution and Washington State

20  common law.

21      9.      Defendants JOHN and JANE DOES 1–5 are subcontractors, employees, and/or

22  agents of Pierce County.  These County Defendants Doe are persons who knew that Javier was in

23  the need of medical care.  In spite of this knowledge, these County Defendants Doe took no steps

24  to prevent serious injury to Javier.  Each County Defendant Doe was negligent; deliberately

25  FIRST AMENDED COMPLAINT - 4
    (NO.  21-2-04263-1 SEA)

1  indifferent; acted in furtherance of an official and/or de facto policy or procedure of deliberate

2  indifference; and/or was responsible for the promulgation of the policies and procedures and

3  permitted the customs/practices pursuant to which the acts alleged herein were committed.  The

4  identities of County Defendants Doe are unknown at this time and will be named as discovery

5  progresses.  These County Defendants Doe are sued in their personal capacities only.

6  **C.   NAPHCARE, INC. DEFENDANTS**

7      10.    Defendant NAPHCARE, INC. ("NaphCare") is a limited partnership organized

8  under the laws of the State of Alabama, licensed and doing business in the State of Washington as

9  a foreign for-profit corporation.

10         a.    NaphCare is in the business of providing healthcare services to jail and

11  prison facilities throughout the United States, including the Pierce County Jail ("Jail").  That

12  is, instead of maintaining their own staff of doctors, nurses, and other health professionals,

13  corrections facilities across the Nation hire NaphCare as an independent contractor to

14  undertake the day-to-day responsibilities of providing their inmates with medical and

15  mental healthcare.

16         b.    The services provided by NaphCare range from physician and nursing

17  services, dental care, mental health/psychiatric care, pharmaceuticals, utilization

18  management, and administrative support.

19         c.    The Jail has such an arrangement with NaphCare, as do various institutions

20  in the twenty-three states that NaphCare has entered into fixed-cost contracts with.  These

21  contracts are structured to provide an incentive to minimize the cost of care for the

22  corrections institutions—and to maximize profits NaphCare's profits.  Last year, for

23  instance, NaphCare took in roughly $300 million in annual revenue.

24

25  FIRST AMENDED COMPLAINT - 5
   (NO.  21-2-04263-1 SEA)

d.   The County's contract with NaphCare required that the County pay millions of dollars for NaphCare's services for calendar year 2019.  In return, NaphCare guaranteed that its services would comport with the standard of care.

e.   According to Defendant Jim MCLANE, NaphCare's Founder, Owner, and Chairman of the Board, NaphCare is so profitable because it puts up "barriers so that [inmates] do not avail themselves to unnecessary treatment."[1]

f.   NaphCare has been on notice for over a decade that its procedures, practices, and customs are deliberately indifferent to the rights and safety of inmates—having been a named defendant in over 250 lawsuits for this precise conduct.

g.   NaphCare has a long, documented history of civil rights and medical negligence suits against them, and a body count arising from substandard medical care and neglect in Alabama, Nevada, Virginia, Texas, and Washington jails and prisons.

h.   According to a 2019 report: "NaphCare regularly swoops in to take over troubled providers' contracts in the wake of scandal."[2]  This is exactly what occurred here, when Pierce County ended its contract with Correct Care Solutions following a string of inmate deaths.

i.   In providing medical care for inmates, NaphCare was acting under the color of state law.

j.   NaphCare is duly registered and conducts business as a health care provider in Washington state as defined by RCW 7.70 *et seq.*, and provided mental health services and medical care to Javier, as contracted for by Defendant Pierce County.

---

[1] Jenifer Park, *NaphCare Inc.: Prisons, Jails are its Marketplace*, BIRMINGHAM BUSINESS JOURNAL, May 7, 2000, https://www.bizjournals.com/birmingham/stories/2000/05/08/focus4.html.
[2] Tara Herivel, *Profits and Preventable Deaths in Oregon Jails*, STREET ROOTS, Jan. 18, 2019, https://www.streetroots.org/news/2019/01/18/profits-and-preventable-deaths-oregon-jails.

FIRST AMENDED COMPLAINT - 6
(NO.  21-2-04263-1 SEA)

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

11.     Defendant JIM MCLANE is the Founder, Owner, and Chairman of the Board for NaphCare.  In that position, Defendant McLane is responsible for establishing and has final approval on policies, procedures, and practices for NaphCare; oversees the delivery of medical, mental health and dental care in all NaphCare-served facilities, including standards of medical care and utilization review; and works with the key stakeholders across the Nation in ensuring that NaphCare turns a profit, at patient expense.  As a policymaker, Defendant MCLANE set in place an established practice of putting profit over care and putting vulnerable patients at risk of serious harm or death. This established practice was due to his deliberate indifference to these detainees. He acted in a tortious and constitutionally violative fashion in formulating, administering, and ratifying policies, procedures, practices, and customs within NaphCare that are deliberately indifferent to the rights and safety of pretrial detainees.  He is sued in his personal capacity only.

12.     Defendant SUSANNE MOORE is the Executive Vice President & Chief Operating Officer at NaphCare.  In that position, Defendant MOORE is responsible for establishing and has final approval on policies, procedures, and practices for NaphCare; oversees the delivery of medical, mental health and dental care in all NaphCare-served facilities, including standards of medical care and utilization review; and works with the key stakeholders across the Nation in ensuring that NaphCare turns a profit, at patient expense.  As a policymaker, Defendant MOORE set in place and furthered an established company-wide practice of putting profit over care and putting vulnerable patients at risk of serious harm or death. This established practice was due to her deliberate indifference to these detainees.  She acted in a tortious and constitutionally violative fashion in formulating, administering, and ratifying policies, procedures, practices, and customs within NaphCare that are deliberately indifferent to the rights and safety of pretrial detainees.  She is sued in her personal capacity only.

FIRST AMENDED COMPLAINT - 7
(NO.  21-2-04263-1 SEA)

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

13.     Defendant MARSHA BURGESS is the Chief Nursing Officer at NaphCare.  In that position, Defendant BURGESS is responsible for establishing and has final approval on policies, procedures, and practices for NaphCare; oversees the delivery of nursing care in all NaphCare-served facilities, including standards of medical care and utilization review; and works with the key stakeholders across the Nation in ensuring that NaphCare turns a profit, at patient expense.  As a policymaker, Defendant BURGESS set in place and furthered an established company-wide practice of putting profit over care and putting vulnerable patients at risk of serious harm or death. This established practice was due to her deliberate indifference to these detainees.  She acted in a tortious and constitutionally violative fashion in formulating, administering, and ratifying policies, procedures, practices, and customs within NaphCare that are deliberately indifferent to the rights and safety of pretrial detainees.  She is sued in her personal capacity only.

14.     Defendant JEFFREY ALVAREZ is the Chief Medical Officer at NaphCare.  In that position, Defendant ALVAREZ is responsible for establishing and has final approval on policies, procedures, and practices for NaphCare; oversees the delivery of medical care in all NaphCare-served facilities, including standards of medical care and utilization review; and works with the key stakeholders across the Nation in ensuring that NaphCare turns a profit, at patient expense.  As a policymaker, Defendant ALVAREZ set in place and furthered an established company-wide practice of putting profit over care and putting vulnerable patients at risk of serious harm or death. This established practice was due to his deliberate indifference to these detainees.  He acted in a tortious and constitutionally violative fashion in formulating, administering, and ratifying policies, procedures, practices, and customs within NaphCare that are deliberately indifferent to the rights and safety of pretrial detainees.  He is sued in his personal capacity only.

15.     Defendant BRADFORD T. MCLANE is the Chief Executive Officer at NaphCare. In that position, Defendant MCLANE is responsible for establishing and has final approval on

policies, procedures, and practices for NaphCare; oversees the delivery of medical and mental healthcare in all NaphCare-served facilities, including standards of medical care and utilization review; and works with the key stakeholders across the Nation in ensuring that NaphCare turns a profit, at patient expense.  As a policymaker, Defendant MCLANE set in place and furthered an established company-wide practice of putting profit over care and putting vulnerable patients at risk of serious harm or death. This established practice was due to his deliberate indifference to these detainees.   He acted in a tortious and constitutionally violative fashion in formulating, administering, and ratifying policies, procedures, practices, and customs within NaphCare that are deliberately indifferent to the rights and safety of pretrial detainees.  He is sued in his personal capacity only.

16.     Defendant CORNELIUS HENDERSON is NaphCare's Senior Vice President of Jail Operations.  In that position, Defendant HENDERSON is responsible for establishing and has final approval on policies, procedures, and practices for NaphCare; oversees the delivery of medical, mental health, and dental care in all NaphCare-served facilities, including standards of medical care and utilization review; and works with the key stakeholders across the Nation in ensuring that NaphCare turns a profit, at patient expense.   As a policymaker, Defendant HENDERSON set in place and furthered an established company-wide practice of putting profit over care and putting vulnerable patients at risk of serious harm or death. This established practice was due to his deliberate indifference to these detainees.  He acted in a tortious and constitutionally violative fashion in formulating, administering, and ratifying policies, procedures, practices, and customs within NaphCare that are deliberately indifferent to the rights and safety of pretrial detainees.  He is sued in his personal capacity only.

17.     Defendant GINA SAVAGE is NaphCare's Vice President of Administration.  In that position, Defendant SAVAGE is responsible for establishing and has final approval on policies,

FIRST AMENDED COMPLAINT - 9
(NO.  21-2-04263-1 SEA)

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

procedures, and practices for NaphCare; oversees the delivery of medical, mental health, and dental care in all NaphCare-served facilities, including standards of medical care and utilization review; and works with the key stakeholders across the Nation in ensuring that NaphCare turns a profit, at patient expense.  As a policymaker, Defendant SAVAGE set in place and furthered an established company-wide practice of putting profit over care and putting vulnerable patients at risk of serious harm or death. This established practice was due to his deliberate indifference to these detainees. She acted in a tortious and constitutionally violative fashion in formulating, administering, and ratifying policies, procedures, practices, and customs within NaphCare that are deliberately indifferent to the rights and safety of pretrial detainees.  She is sued in her personal capacity only.

18.     Defendant ELLIOT WADE is NaphCare's Corporate Medical Director.  In that position, Defendant WADE is responsible for establishing and has final approval on policies, procedures, and practices for NaphCare; oversees the delivery of medical, mental health, and dental care in all NaphCare-served facilities, including standards of medical care and utilization review; and works with the key stakeholders across the Nation in ensuring that NaphCare turns a profit, at patient expense.  As a policymaker, Defendant WADE set in place and furthered an established company-wide practice of putting profit over care and putting vulnerable patients at risk of serious harm or death. This established practice was due to his deliberate indifference to these detainees. He acted in a tortious and constitutionally violative fashion in formulating, administering, and ratifying policies, procedures, practices, and customs within NaphCare that are deliberately indifferent to the rights and safety of pretrial detainees.  He is sued in his personal capacity only.

19.     Defendants MCCLAIN, MOORE, BURGES, SIMPLER, ALVAREZ, MCLANE, HENDERSON, and WADE shall be referred to collectively as "NaphCare Policymaking Defendants."  At all material times, each NaphCare Policymaking Defendant acted under color of law and was a state actor.

FIRST AMENDED COMPLAINT - 10
(NO.  21-2-04263-1 SEA)

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

20. Individually named Defendants CAMERON CARRILLO, ELIZABETH WARREN, and DEBRA RICCI ("NaphCare Defendants") are employees or subcontractors of NaphCare. They were at all material times state actors. These NaphCare Defendants knew that Javier was in need of medical care. In spite of this knowledge, these NaphCare Defendants took no steps to prevent serious injury to Javier. These NaphCare Defendants were negligent; deliberately indifferent; and/or acted in furtherance of an official and/or de facto policy or procedure of deliberate indifference. These Defendants are sued in their personal capacities only.

21. Defendants JOHN and JANE DOES 5–10 are subcontractors, employees, and/or agents of NaphCare. These NaphCare Defendants Doe are persons who knew that Javier was in the need of medical care. In spite of this knowledge, these NaphCare Defendants Doe took no steps to prevent serious injury to Javier. Each NaphCare Defendant Doe was negligent; deliberately indifferent; acted in furtherance of an official and/or *de facto* policy or procedure of deliberate indifference; and/or were responsible for the promulgation of the policies and procedures and permitted the customs/practices pursuant to which the acts alleged herein were committed. The identities of NaphCare Defendants Doe unknown at this time and will be named as discovery progresses. These NaphCare Defendants Doe are sued in their personal capacities only.

## II.    JURISDICTION AND VENUE

22. Plaintiff Javier Tapia has filed a standard tort claim with the Pierce County Risk Management, pursuant to Chapter 4.96 RCW. More than sixty (60) days have elapsed since the claim was filed. The notice of claim provisions required by RCW 4.96.020 have been satisfied.

23. The Superior Court of King County, Washington has jurisdiction over this matter pursuant to RCW 2.08.010.

24. Venue is proper in King County pursuant to RCW 4.12.025.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

1

### III.    FACTS

2

**A.    JAVIER'S INCARCERATION AND HOSPITALIZATION.**

3      25.    On June 16, 2018, Javier was arrested for driving a stolen vehicle and outstanding

4  Washington State Department of Corrections ("DOC") warrants.  He was booked into the Pierce

5  County Jail ("Jail") as a pretrial detainee at approximately 2:00 a.m.

6      26.    Registered Nurse Etsuko Yagi conducted a mental health screening, indicating that

7  Javier had not previously "[h]ad any treatment for mental health issues," been "psychiatric

8  hospitaliz[ed]," or experienced any "delusional thought processes or psychosis."

9      27.    Javier's incarceration was largely unremarkable until September 10, when

10  Corrections Deputy Willie Alley observed that he "[s]eem[ed] to have difficulty following simple

11  rules such as 1400hrs lockdown."

12      28.    On September 14, Javier put in a sick call request, complaining of "insomnia."

13  Nurse Jesus Perez canceled the appointment, instructing Javier "to kite MH office with current

14  needs."

15      29.    On September 17, Corrections Deputy Jonathon Knight made the following entry in

16  Javier's chart:

17      I observed Inmate Tapia, Javier get off his bunk and throw his hands in the air and
       roll on to the floor near his bunk and begin to flail around and roll all around the
18      floor. I called for an escort to step in due to his odd behavior and unknown mental
       state. As I approached him he was laying down in the fetal position and I told him
19      to get up and he just stared at me. I gained control of his right arm and he started
       crying and mumbling unintelligibly. I then gained control of his other arm and
20      assisted him up and applied wrist restraints without incident. On the way out of the
       Unit he mumbled a few unintelligible remarks and was tearful and was acting very
21      strange. I escorted him out of the unit and he was placed in a timeout cell by
       responding deputies.

22
       30.    Javier was seen the next day by Mental Health Provider ("MHP") Darren Nealis for
23
    an "initial assessment."  Defendant Nealis wrote in the chart:
24

25  FIRST AMENDED COMPLAINT - 12                    **Galanda Broadman PLLC**
    (NO.  21-2-04263-1 SEA)                         8606 35th Avenue NE, Ste. L1
                                                    Mailing: P.O. Box 15146
                                                    Seattle, WA 98115
                                                    (206) 557-7509

Assessment:
Met with I/M at about 1100 for initial assessment in response to C/D report. He came to the door and was cooperative during the interview, but appears to be confused and was unable to verbally respond to my questions. He has been here at PCJ since June, but appears to be decompensated at this time. His UA was positive for Methamphetamins when he booked in on 6/16/18.

Plan:
S/P: Recommend continued level 1 MH housing at this time for further assessment, MH will f/u.

31.     Javier began refusing meals at this time.

32.     In addition, the decomposition of Javier's foot and leg—due to a blood clot in his groin—became obvious to even the casual observer.  Sores and blisters that bled and released a dirty-looking, foul-smelling discharge were readily apparent to anyone even superficially interacting with Javier.

33.     Because of the vulnerability caused by his disability, according to medical records Javier was "involved in several fights" during or shortly before this time period, "develop[ing] trauma to the left head."

34.     On the evening of September 19, Defendant Nealis attempted to assess Javier again, ignoring his serious and obvious medical condition, writing in Javier's medical chart:

Assessment:
Met with I/M at about 1045 for initial assessment in response to C/D report. He presented again today as confused. I/M was again unable to verbally respond to my questions. He has been here at PCJ since June, but appears to be decompensated at this time. Officers report that he appears to be "way off his baseline," and he was nonverbal in court today as well. He could have an unknown medical condition.

S/P: Referred to medical for assessment. Recommend continued level 1 MH housing at this time for further assessment, MH will f/u. Referred to medical department for assessment.

35.     Javier was seen by Licensed Practical Nurse ("LPN") Cameron Carrillo roughly an hour after Defendant Nealis' referral.  Defendant Carrillo did not assess Javier, however.  He simply observed that Javier did "not appear in distress," noted that he did "not have any medical concern at this time," and otherwise ignored his serious and obvious medical condition.

DEF PC 000288

36.     Mental health providers engaged with Javier and observed his serious and obvious medical condition on September 20 (Defendant Duane Prather), September 26 (Defendant Darren

FIRST AMENDED COMPLAINT - 13
(NO.  21-2-04263-1 SEA)

DEF PC 000289

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

Nealis), and September 28 (Defendant Jesus Perez), with no response.  Javier continued to present as "confused and non-verbal," but was not referred to or evaluated by a medical professional.

37.   On September 29, Corrections Deputy Rick Oeltjen observed Javier's serious medical condition and merely noted that Javier was exhibiting "disturbing mannerisms."  Defendant Oeltjen did not make a medical referral or take any steps to treat Javier's obviously serious medical condition.

38.   When informed of Javier's serious and worsening medical condition, Dr. Miguel Balderrama ordered that Javier's vitals be taken "once in the a.m." for the next three days.  Defendant Balderrama neither assessed Javier nor provided him with any semblance of medical care.  In fact, this order was Defendant Balderrama's only participation in Javier's medical care.

39.   Later that day, Elizabeth Warren, RN, allegedly "assessed" Javier by providing only a verbal request for lunch and vitals, otherwise ignoring his obviously serious medical condition:

> Inmate Tapia would not respond to me verbally when I asked him if he wanted lunch. He did look up at me but would not give me an answer. A search of his behavior log indicates he has been refusing meals periodically. . . . Cell smells of urine. Sheet wrapped around waist. . . . Allowed assessment. 96.9, Apical pulse 100 , S1S2, slow, even respirations , rate 14-16 , B/P 127/77.

40.   On September 30, Javier had no documented interaction with a health care professional.

41.   On the morning of October 1, Debra Ricci, LPN, wrote that Javier "[r]efused" her attempt to take his vitals—because he was nonresponsive as a result of his serious, worsening, and untreated medical condition.  Defendant Ricci otherwise ignored Javier's obviously deteriorating medical condition.

42.   Later in the day, Ashley Chalk, RN, wrote:

> Asked to see inmate by unit officer for c/o "toes turning black". Upon visual inspection, left foot slightly swollen and severely discolored. Inmate brought to clinic via wheelchair. Vitals: BP 111/80 T 97.9 P 105 SpO2 94% RA. Inmate is non-verbal and does not answer questions. Spoken to by MHP and reported having pain, but does not recall what happened or when. Per provider, M. Balderrama and I. Hughes, Inmate referred to Tacoma General ED.

FIRST AMENDED COMPLAINT - 14
(NO.  21-2-04263-1 SEA)

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

43.     Javier "was sent to Tacoma General Hospital for a swollen, black foot" for what RN Chalk described as "suspected gangrene."

44.     By this time, it was noted by correctional officers, Javier had lost approximately 20 lbs. in the preceding two weeks—again, an obvious, serious, worsening medical condition that was ignored by County and NaphCare employees.

45.     Intake notes from the Tacoma General ED indicate as follows, in relevant part:

> 36 yo male incarcerated since June 2018
> GENERAL APPEARANCE: sickly appearance, lying in bed tremulous
> SKIN: cool LLE from below knee to foot, (temp change just below knee)
> cold forefoot
>
> LLE - swelling of calf to foot with black gangrenous skin changes of entire forefoot and all toes, unable to move toes, cold forefoot, cool hindfoot and lower calf
> Able to move leg but not toes, can move slightly at ankle
> Sensory deficit at forefoot, sensation preserved in hind foot
> Possible phlegmasia cerulea dolens with gangrene

46.     Javier was then examined by Dr. Nicholas D. Garcia, who noted as follows, in relevant part:

DEF PC 000086

DEF PC 000086

> **[H]as had at least two weeks, possibly up to 1 mos of left leg pain and inability to walk on leg.  He also has left leg paralysis of unclear duration but likely over a week** per his limited history. . . . His study notes dilatated veins but clot appears subacute and indeterminate age of clot. . . . Guards that are with patient today state patient had change last month and became more confused and need to be transferred to "old jail" which involves living alone and more supervision and these individuals unable to be in general population. . . . Gait: Not observed, **unable to walk for multiple weaks** [sic]. . . . If this presentation was less than 24-36 hours and potential salvage of limb/digits/function were still present then fasciotomy and consideration of catheter directed thrombolysis would be necessary. However, fasciotomy with this degree of venous occlusion and associated venous hypertension would likely be associated with significant bleeding and unreasonable to proceed with this given current information.  If CK's after hydration continue to escalate then fasciotomy or leg amputation would need to be considered to prevent complication of rhabdomyolysis. Given chronicity of symptoms and appearance and dysfunction of left foot, I suspect CK may be trending down at this point and next 24 hours of CK while on heparin will be necessary information for additional treatment recommendations.  Regarding catheter directed thrombolysis usually only helpful for acute clot <14 days, history of left leg dysfunction which may or may not be accurate suggest longer duration of venous thrombosis and also risk of catheter

DEF PC 000085

DEF PC 000088

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

directed thrombolysis likely unreasonable at this point given information and current paralyzed limb of unclear duration with venous gangrene and paralyzed limb.

47.     Dr. Lucas Labine also conducted a psychological examination on Javier:

PSYCHIATRIC: Oriented to person, place, year; Mood - alert, nervous and Affect - normal. No visual or auditory hallucinations. No tangential or circumferential thought processes. Judgement clear and intact. Speech clear.

48.     The next day, October 2, Dr. Labine hypothesized that Javier's reported mental health issues may have been "due to azotemia / uremia," "other metabolic or vasculitis process," or "neoplasm"—in other words, caused by his serious, obvious, and worsening medical condition—and noted that Javier would "likely need brain imaging when renal function is improved."

49.     By October 3, Drs. Labine and Garcia had set out to "medically revascularize as much as possible in order to do the least amount of amputation possible" by using "catheter directed thrombolysis in an attempt to revascularize thigh area."

DEF PC 000095

50.     Javier's left foot, however, was "not salvageable," **given the "long standing event (weeks, likely)" and because "foot paralysis already present on admission."**

51.     Dr. Labine assured Javier "that we are doing all we can to salvage what we can of his limb, and that the medical team is well aware of what a drastic and life-changing step an amputation will be for him."  Dr. Labine also noted that there was "[n]o clear indication for psychiatric intervention at this time," but that Javier's "[s]evere malnutrition" needed to be addressed.

52.     By October 14, it became clear that thrombolytic therapy would not salvage Javier's leg.  As noted by Dr. Branson Propper:

Unfortunately, following the therapy [Javier] developed ischemia of the forefoot with significant swelling, necrosis of the tissue, and then on top of that a subsequent infection.  I discussed with him over the past few days, the need for amputation given that he appeared to have what would be ascending cellulitis in the setting of post venous thrombotic syndrome.  He was unwilling to proceed with amputation and waited a few days.  Things did seem to get worse, and his white count seems to be high.  Finally, I was able to convince him that this was likely going to be a

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

problem if we continue to wait as I thought he would likely have an ascending infection that got worse and he consented to surgery.

53.     Javier's leg was then amputated just below the knee.

54.     On June 16, 2020—less than a week after Javier filed a Claim for Damages with Pierce County pursuant to Chapter 4.96 RCW—Elliot Wade, NaphCare's Corporate Medical Director, emailed LPN Carrillo, RN Warren, and RN Chalk:

A few times per week, I am asked by our legal department to review a chart, in regards to the care provided by the staff. Usually it's a former patient seeking a claim for damages.

Specifically, Javier Tapia, who was in custody June to November 2018. Your notes were not lengthy at all, but they contained all of the necessary information needed at the time. And helped to establish that he was seen and taken seriously. And in my opinion, had you not seen him immediately on October 1st 2018, called the provider and had him sent to the hospital, he may have died.

So thanks to you, he's alive. He's mad about his below the knee amputation, but in my opinion you did everything right and he's lucky.

**B.     PIERCE COUNTY AND NAPHCARE POLICY AND ESTABLISHED PRACTICE – *MONELL*, SUPERVISORY, AND POLICYMAKING LIABILITY**

55.     The loss of Javier's limb was tragic and could have been prevented by standard approaches to medical and mental health care management.

56.     The policies, established procedures, and protocols in place at the Jail—maintained *vis-à-vis* its Supervisory and Policymaking Defendants and NaphCare—put Javier and all other similarly situated patients at an increased risk of serious harm and death.

57.     That these policies, established procedures, and protocols would put similarly situated patients at an increased risk of serious harm and death would be obvious to any medical or mental health professional exercising his or her professional judgment.

58.     Pierce County—*vis-à-vis* its Supervisory and Policymaking Defendants and NaphCare—also failed to adequately train its employees, resulting in a condition that put Javier and all other similarly situated patients at an increased risk of serious harm and death.

DEF PC 906629

FIRST AMENDED COMPLAINT - 17
(NO.  21-2-04263-1 SEA)

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

59.     That this failure to train would put similarly situated patients at an increased risk of serious harm and death would be obvious to any medical or mental health professional exercising his or her professional judgment.

60.     Javier would have not lost his limb had jailers and medical and mental health staff not been indifferent to his needs.

61.     Jailers and medical and mental health staff's indifference to Javier's serious medical needs was ratified by Supervisory and Policymaking Defendants and NaphCare.

62.     Despite knowledge of Javier's serious medical needs, jailers and medical and mental health staff failed to administer and attend to him.  As a result, Javier had to have his leg and foot amputated.

63.     All of the acts and omissions taken in regard to the care and custody of Javier were in accordance with Pierce County's established practices and/or were ratified by the Policymaking and Supervisory Defendants and/or NaphCare.

64.     It is a common and widespread practice at the Jail and NaphCare to ignore information related to serious medical conditions in a measured attempt to avoid liability in a deliberate indifference action, by claiming a lack of knowledge.

65.     Pierce County, NaphCare, and their Policymaking and Supervisory Defendants were also negligent and deliberately indifferent when they failed to adequately train individual Defendants.  These individual Defendants failed to perform their duties as described in this Complaint due to inadequate training.  Pierce County, NaphCare, and their Policymaking and Supervisory Defendants knew that their training inadequately instructed its employees but did nothing to change this policy.

66.     Pierce County, NaphCare, and their Policymaking and Supervisory Defendants failed to train officers and employees to properly monitor and to protect inmates.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

67.     Pierce County, NaphCare, and their Policymaking and Supervisory Defendants failed to train officers and employees to properly identify and monitor at-risk inmates.

68.     Pierce County, NaphCare, and their Policymaking and Supervisory Defendants failed to enforce the aforesaid policies and procedures by disciplining officers and employees or by other means.

69.     Pierce County, NaphCare, and their Policymaking and Supervisory Defendants caused, permitted, and allowed a custom and practice of continued and persistent deviations from policies and procedures.

70.     Pierce County, NaphCare, and their Policymaking and Supervisory Defendants maintained inadequate monitoring and safety check systems.

71.     Pierce County, NaphCare, and their Policymaking and Supervisory Defendants failed to create systems of information sharing, communication, and clearly delineated roles and lines of authority for County Jail staff and medical providers

72.     Pierce County, NaphCare, and their Policymaking and Supervisory Defendants failed to provide sufficient resources to provide for the necessary medical care for mentally ill inmates.

73.     Pierce County, NaphCare, and their Policymaking and Supervisory Defendants maintained a policy of not regularly monitoring inmates.

74.     In order to save money, Pierce County, NaphCare, and their Policymaking and Supervisory Defendants maintained a policy of refusing to admit patients in need of medical care to appropriate clinical settings (e.g., hospitalization).

75.     In fact, saving money is at the heart of Pierce County's

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

76.     Each of the above policies and established practices amounts to negligence and deliberate indifference to the known and/or obvious serious medical and safety needs of at-risk detainees, including Javier.

77.     Pierce County employees and subcontractors deliberately did not comply with formal policies and national standards, which evidences their deliberate indifference and negligence. *See Salter v. Booker*, No. 12-0174, 2016 WL 3645196, at *12 (S.D. Ala. June 29, 2016) ("Defendants acted with deliberate indifference when they failed to enforce or follow the written jail policies and procedures . . . .").

78.     Defendants are not even trying—they have been negligent, grossly negligent, and have showed deliberate indifference to the medical and safety needs of the inmates at the Jail.  This includes, again, failing to have and follow proper training, policies, and procedures for the care and treatment of people in the Jail.  It also includes a cold-hearted attitude on the part of staff and subcontractors, who ignore medical and safety harms as they present and who refuse to properly observe or listen to people who have serious medical and safety needs.

79.     Each and every individually named Defendant had knowledge that a substantial risk of serious harm existed as to Javier's health and safety.

80.     Pierce County, NaphCare, and their Policymaking and Supervisory Defendants had knowledge that their policies, customs, and/or protocols created a substantial risk of serious harm as to Javier's health and safety because they had resulted in serious harm in the past.  NaphCare's policies and established practices have resulted in hundreds, if not thousands, of deaths across the Nation, as evidenced by the fact that "NaphCare, Inc. is no stranger to these claims" because it has been sued for its constitutionally inadequate policies and established practices as described above approximately 150 times.  *Johnson v. NaphCare, Inc.*, No. 19-54, 2022 WL 306981, at *18 (S.D. Ohio Feb. 2, 2022); *see, e.g., Brown v. Clark Cnty. Det. Ctr.*, No. 15-1670, 2018 WL 1457292, at

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

*7 (D. Nev. Mar. 23, 2018) ("NaphCare has a policy of denying off-site care as a cost-control measure."); *Sitton v. LVMPD*, No. 17-111, 2020 WL 1916171, at *4 (D. Nev. Apr. 20, 2020) (same); *Bruins v. Osborn*, No. 15-324, 2016 WL 8732299, at *3 (D. Nev. Feb. 5, 2016) ("Naphcare had a policy of understaffing medical personnel"); *Bruins v. Osborn*, No. 15-324, 2016 WL 8732299, at *3 (D. Nev. Feb. 5, 2016) ("NaphCare medics and nurses could not send an inmate to the hospital absent a 'life threatening' issue"); *O'Neal v. Las Vegas Metro. Police Dep't*, No. 17-2765, 2018 WL 4088002, at *4 (D. Nev. Aug. 27, 2018) ("Naphcare had a policy of refusing medical treatment"); *Cheek v. Nueces Cnty. Tex.*, No. 13-26, 2013 WL 4017132, at *20 (S.D. Tex. Aug. 5, 2013) ("Plaintiffs' Complaint includes a litany of past instances of constitutional allegations based on deliberate indifference to serious medical needs against NaphCare, including a policy of cutting costs and maximizing profits to the detriment of the patients it serves.").  Pierce County, too, is liable because it had constructive knowledge of these policy and established practice deficiencies when it contracted with NaphCare and allowed it to continue to provide services in the Jail.  *See O'Neal*, 2018 WL 4088002, at *4 ("Although Naphcare provides the medical care at [the jail, the] County remains liable for any constitutional deprivations caused by the policies, practices, or customs of its contractor.") (citing *West v. Atkins*, 487 U.S. 42, 56 (1988)).  Pierce County is also liable for its own constitutionally deficient policies and established practices, described above, which were also well-known to cause harm and even death.  *See, e.g.*, *Sullivan v. Cnty. of Pierce*, 216 F.3d 1084 (9th Cir. 2000) (evidence of a Pierce County "policy of inadequate medical treatment"); *Whitmore v. Pierce Cnty. Dep't of Cmty. Corr.*, No. 05-5265, 2007 WL 2116402, at *6 (W.D. Wash. July 19, 2007) (alleging "policies and customs regarding staffing levels and medical practices" that led to an inmate "not receiving constitutionally adequate mental health care"); *Smith v. Pierce Cnty.*, 218 F. Supp. 3d 1220, 1230 (W.D. Wash. 2016) (alleging that Pierce County "maintained unconstitutional policies, procedures and customs with regard to . . . taking detainees

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

to a hospital or acute care facility when symptoms increase, worsen or recur" and "a failure to "provide training on managing individuals who are suffering [from] severe and ongoing symptoms" due to medical needs).

81.     Even if Pierce County and NaphCare did not have knowledge of the risk of harm created by their policies, customs, and/or protocols—and lack thereof/lack of training thereon/lack of funding to implement—the risk was obvious in light of reason and the basic general knowledge that these Defendants are presumed to have.

82.     The acts and omissions caused by Defendants through their policies, practices, and customs—including inadequate staffing, training, preparation, procedures, supervision, and discipline—were a proximate cause of Javier's pain, suffering, and loss of his leg and foot.

83.     The aforesaid acts and omissions of Defendants deprived Javier of his right to be free from cruel and unusual punishment and to due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution; directly caused and/or directly contributed to his pain, suffering, and a general decline of his quality of life; directly caused and/or directly contributed to cause his family to suffer loss of services, companionship, comfort, instruction, guidance, counsel, training, and support; and directly caused and/or directly contributed to cause his family to suffer pecuniary losses, including but not limited to medical expenses.

84.     Javier suffered extreme physical and mental pain, terror, humiliation, anxiety, suffering, and emotional distress.

85.     Javier's loss of his foot and leg was completely unnecessary and could have been easily prevented via provision of even the most basic medical care and treatment.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

# IV. CLAIMS

**A. FIRST CAUSE OF ACTION – NEGLIGENCE, GROSS NEGLIGENCE, AND MEDICAL NEGLIGENCE – PIERCE COUNTY**

86. Defendants had a duty to care for inmates and provide reasonable safety and medical and mental healthcare.

87. This duty is an affirmative one under both Washington State and federal law because prisoners, by virtue of incarceration, are unable to obtain medical care for themselves.

88. Defendants breached this duty, and were negligent, when they failed to have and follow proper training, policies, and procedures on the assessment of persons with apparent medical and psychiatric needs.

89. Defendants breached this duty, and were negligent, when they failed pass on vital lifesaving information from one institution or person to another.

90. Defendants breached this duty, and were negligent, when they failed to adequately treat Javier's medical needs.  Indeed, because Javier's obvious medical needs related to his blood clot condition were entirely ignored, Defendants were grossly negligent.

91. Defendants breached this duty, and were negligent, when they failed to have and follow proper training, policies, and procedures on the provision of reasonable and necessary medical care, treatment of inmates, and the passing on of information.

92. Defendants breached this duty, and were negligent, when they failed to ensure adequate and proper staffing at the Jail.

93. Defendants breached this duty, and were negligent, when they failed to ensure that Javier was properly supervised and/or that cell checks were conducted in a safe, timely, and consistent manner.

94. Defendants breached this duty, and were negligent, when they failed to ensure that

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

Javier received necessary medication.

95.     Defendants breached this duty, and were negligent, when they ignored notification of Javier's serious medical condition.

96.     Defendants breached this duty, and were negligent, when they failed to properly assess and treat Javier.

97.     As a direct and proximate result of the breaches, failures, and negligence of Defendants, as described above and in other respects as well, Javier **had to have his leg amputated** just below the knee, resulting in extreme and ongoing pain, permanent physical disability, suffering, embarrassment, and terror.

98.     As a direct and proximate result of the breaches, failures, and negligence of Defendants, as described above and in other respects as well, Javier has incurred and will continue to incur economic and noneconomic damages in an amount to be determined at trial.

99.     Municipalities such as Pierce County have a long-standing and special duty to keep inmates in health and safety.  This duty requires officials to consider what is the safest and most humane for the prisoners; and what is most conducive to their health, well-being, and safety, despite the costs.  As a matter of law, Washington courts have long recognized a jailer's special relationship with inmates, particularly the duty to ensure health, welfare, and safety.  This heightened duty is derived from the special relationship between custodians and the individuals entrusted to their care. Inmates rely completely on the government to make decisions as to their safety and health care, similar to students relying on schools, guests on innkeepers, and patients on hospitals.  Contributory negligence has no place in such a scheme, and Pierce County is therefore responsible for the negligence of all Defendants described herein.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

**B.**     **SECOND CAUSE OF ACTION – CORPORATE NEGLIGENCE – NAPHCARE**

100.     Defendant NaphCare had a duty to select its employees with reasonable care and to supervise all persons practicing medicine under its corporate name and to ensure that they complied with the standard of care and did not put profits ahead of comprehensive patient care.

101.     Defendant NaphCare breached this duty by failing to hire competent and properly trained employees, oversee care, implement safety policies designed to prevent harm to patients, and in many more regards, described above.

102.     As a direct and proximate cause of the aforesaid failure to follow the standard of care to which NaphCare patients are entitled, Javier sustained pain, anguish, permanent physical disability, and death.

**C.**     **THIRD CAUSE OF ACTION – 42 U.S.C. § 1983 – PIERCE COUNTY, NAPHCARE, AND ALL INDIVIDUALLY NAMED DEFENDANTS**

103.     The acts and failure to act described above were done under color of law and are in violation of 42 U.S.C. § 1983, depriving Plaintiff of his civil rights.

104.     At the time Javier was detained by Pierce County, it was clearly established in the law that the Fourteenth Amendment imposes a duty on jail officials to provide humane conditions of confinement, including adequate medical and mental health care, and to take reasonable measures to guarantee the safety of the inmates, including from self-harm.

105.     Being subjected to unnecessary physical pain and suffering is simply not part of the penalty that criminal offenders pay for their offenses against society.  As a result, municipalities, Jail officials, and subcontractors are liable if they know that an inmate or inmates face a substantial risk of serious harm and callously disregard that risk by failing to take reasonable measures to abate it.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

106.    Here, Defendants knew that Javier faced a substantial risk of pain and anguish, yet callously disregarded that risk by failing to take reasonable measures to abate it.

107.    Having an inmate in custody creates a duty of care that must include enough attention to mental health concerns that inmates with obvious symptoms receive medical attention. Defendants had numerous opportunities to meet their responsibilities to help Javier, but no one did. One cannot avoid responsibility by putting one's head in the sand.

108.    Here, Pierce County, NaphCare, and their Policymaking and Supervising Defendants knew of and callously disregarded the excessive risk to inmate health and safety caused by their inadequate formal and informal policies, including a lack of training, funding, and supervision.

109.    Pierce County, NaphCare, and their Policymaking and Supervising Defendants knew of this excessive risk to inmate health and safety because it was obvious and because numerous other inmates had been injured and/or killed as a result of these inadequacies in the past.

110.    Pierce County, NaphCare, and their Policymaking and Supervising Defendants were responsible for a policy, practice, or custom of maintaining a longstanding constitutionally deficient safety and medical and mental health care, and training thereon, which placed inmates like Javier at substantial risk.

111.    There was little to no supervision of Javier and inmates like him because Pierce County, NaphCare, and their Policymaking and Supervising Defendants maintained a known policy and custom of providing the cheapest care available, cutting corners to save and/or make money. That this would result in serious injury or death would have been obvious to any corrections management official exercising his or her professional judgment.

112.    Pierce County, NaphCare, and their Policymaking and Supervising Defendants had an unwritten policy of understaffing and indifference to inmate supervision that was maintained

FIRST AMENDED COMPLAINT - 26
(NO.  21-2-04263-1 SEA)

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

1   with deliberate indifference.  Pierce County, NaphCare, and their Policymaking and Supervising

2   Defendants know that the Jail is understaffed and undertrained, and that their employees often have

3   trouble completing all of their duties as a result.  Yet these Defendants failed to take any steps to

4   correct these inadequacies.

5          113.    Pierce County, NaphCare, and their Policymaking and Supervising Defendants had

6   a policy, procedure, or custom of inadequate communication and coordination between staff. The

7   Jail had no clear demarcation of responsibilities between corrections and medical staff with respect

8   to at least, but not limited to, the assessment of inmate medical needs, integration of care between

9   departments, and regularity of inmate chart/records review. This policy of inadequate

10  communication and coordination contributed to and caused Javier's pain, suffering, and permanent

11  physical disability, and constituted deliberate indifference to Javier's serious medical needs.

12         114.    With the exception of the Policymaking and Supervising Defendants, all

13  individually-named Defendants were subjectively aware that Javier was in dire need of treatment

14  for his deteriorating medical condition.  Indeed, a quick glance at Javier—who was unable to walk

15  for "at least two weeks, possibly up to 1 mos" by the time he was finally taken to the hospital—

16  obviously revealed his immediate serious need for medical care.  From this evidence, a reasonable

17  jailer and/or healthcare provider would have been compelled to infer that a substantial risk of

18  serious harm existed.  Indeed, Defendants did infer that a substantial risk of serious harm existed

19  yet failed to take any steps to alleviate this risk.  And Javier experienced extreme pain, suffering,

20  loss of limb, and permanent physical disability as a result.

21         115.    Pierce County, NaphCare, and their Policymaking and Supervising Defendants have

22  consistently failed to attend to the serious medical needs of inmates.  Pierce County, NaphCare, and

23  their Policymaking and Supervising Defendants knew that there were numerous instances of under-

24  treatment and a failure to properly evaluate inmates, and that there were relatively inexpensive

25  FIRST AMENDED COMPLAINT - 27
    (NO.  21-2-04263-1 SEA)

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

prevention measures available.  Yet these Defendants did not employ any of these measures.  In addition, these Defendants knew that its employees were not providing adequate medical care, but continued to employ them nonetheless to avoid costs.

116.   As a direct and proximate result of the deliberate indifference of Defendants, as described above and in other respects as well, Javier experienced—and continues to experience, extreme pain, permanent physical disability, suffering, anxiety, terror, and emotional distress.  His life will never be the same.

117.   These Defendants have shown reckless and callous disregard and indifference to inmates' rights and safety and are therefore subject to an award of punitive damages to deter such conduct in the future.

**D.   FOURTH CAUSE OF ACTION – 42 U.S.C. § 12132 – PIERCE COUNTY**

118.   The Americans with Disabilities Act ("ADA") provides in its relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  A failure to reasonably accommodate a person's disability is an act of discrimination under the ADA. Per 28 C.F.R. § 35.130(b)(7): "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."

119.   Pierce County incarcerates significant numbers of individuals with disabilities, as that term is defined in the ADA and the Rehabilitation Act ("RA"), as discussed below.  Together with Defendant NaphCare, these Defendants fail to provide inmates with disabilities with basic reasonable accommodations to ensure equivalent access to all of the programs, activities, and

FIRST AMENDED COMPLAINT - 28
(NO.  21-2-04263-1 SEA)

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

services offered at the Jail.  These Defendants' failure to accommodate prisoners with disabilities not only denies them access to prison programs and services, but also substantially increases the risk that they are injured in an emergency or are the victim of violence or abuse from other prisoners. Moreover, These Defendants' refusal to accommodate prisoners with disabilities results in the provision of inadequate medical and mental health care.

120.    For years, Pierce County and NaphCare have executed systemic and willful discrimination against, and failure to provide reasonable accommodations in programs, services, and activities to, inmates in the Jail who have, or are perceived to have, disabilities.

121.    During his incarceration at the Jail, Javier, for instance, either had or was perceived by Jail staff to have, present physical or mental impairments that qualified as disability—as alleged above, he had a long-standing history of substance use disorder, exhibited behaviors consistent with mental disability, and had difficulty, or was unable to, walk due the serious medical condition he suffered from.

122.    Javier was denied access to services, including but not limited to, appropriate health care services; and he was denied reasonable accommodations for his disabilities, including but not limited to, accessibility aids/assistive devices, special housing, additional safety checks or other security, because of his actual or perceived mental disability or substance use disorder.

123.    Pierce County and NaphCare lack adequate policies and practices for identifying and tracking prisoners with disabilities and the accommodations those prisoners require.

124.    This systemic failure to accommodate inmates with disabilities results in the widespread exclusion of prisoners with disabilities from many of the programs, services, and activities offered by Pierce County and NaphCare, including health care services, exercise, religious services, sleeping, and educational programs.

FIRST AMENDED COMPLAINT - 29
(NO.  21-2-04263-1 SEA)

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

125.    Moreover, Pierce County and NaphCare's lack of adequate policies and procedures makes inmates with disabilities vulnerable to exploitation and violence by other inmates and increases their risk of serious injury or death.

126.    Pierce County and NaphCare have an affirmative obligation to create and maintain a system to identify and track individuals with disabilities and the accommodations they require. Pierce County and NaphCare, however, lack adequate policies and practices for identifying individuals with disabilities and the reasonable accommodations they require.

127.    Upon information and belief, the officers who are responsible for conducting medical and mental health assessments are not adequately trained by Pierce County and NaphCare regarding how to identify and track individuals with disabilities, and therefore frequently fail to identify inmates with disabilities or the accommodations they need to access Jail programs and services.

128.    Pierce County and NaphCare's failures to accurately identify inmates' disabilities and needed accommodations result in the denial of accommodations mandated by federal law, placing inmates at risk of discrimination, injury, and/or exploitation.

129.    For example, during the last month of Javier's incarceration his serious medical condition was obviously worsening.  Again, he could not walk for roughly a month, but was given no assistance.  He became visibly confused.  He was either unintelligible or nonverbal and nonresponsive.  He was refusing food and became seriously malnourished.  He suffered from poor hygiene and smelled of urine or worse.  He had outbursts, displayed "disturbing mannerisms," and was noted by Jail staff to be "[w]ay off his baseline."  During this time, he was observed hundreds of times by Pierce County Corrections Deputies during cell checks, and had clinical interactions with both Pierce County mental health staff and NaphCare medical staff, yet all failed to identify his disability needs (or, identified and ignored them). This resulted in a lack of accommodations for

his disability, to wit, health care services, exercise, adequate sleep, adequate nutrition, accessibility aids/assistive devices, and protection from other inmates necessitated by his vulnerability.

130.    Pierce County and NaphCare lacked policies and practices to ensure that prisoners with disabilities who require assistive devices—including, but not limited to, wheelchairs, walkers, crutches, canes, and braces—are provided with and are allowed to retain those devices.  These Defendants failed to adequately train staff in how to timely and appropriately provide assistive devices to prisoners with disabilities.

131.    Because of Pierce County and NaphCare's deficient disability screening and identification procedures, inmates, like Javier, who require assistive devices to access Jail programs are frequently not identified.  As a result, Javier, and those prisoners similarly situated, do not receive needed assistive devices and cannot access the programs and services offered at the Jail.

132.    Pierce County and NaphCare failed to adequately train custody and health care staff in how to provide appropriate and timely accommodations to prisoners with disabilities.  The lack of training is evident from the numerous failures to accommodate prisoners with disabilities, and exclusion of prisoners with disabilities from equal access to programs, services, and activities they offer, and placement of prisoners with disabilities at risk of injury and exploitation.  As a result of a lack of adequate training, custody and health care staff do not, among other failings, identify and track individuals with disabilities and the accommodations they require, or provide equal access to Jail services and programs.

133.    Because Pierce County remains liable for the unlawful acts of its agent, even if that agent, a private entity, is not itself liable under Title II, Plaintiff's ADA Claim is brought against Pierce County only.  Even though Javier does not have recourse under Title II directly against NaphCare, he still has recourse against the government when a private contractor violates the ADA.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

*Wilkins-Jones v. County of Alameda*, No. 08-1485 2010 WL 4780291, at *4-9 (N.D. Cal. Nov. 16, 2010); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001).

**E.    FIFTH CAUSE OF ACTION – 29 U.S.C. § 701 – PIERCE COUNTY AND NAPHCARE**

134.    Like the ADA, Section 504 of the RA, 29 U.S.C. § 701, *et seq.*, also requires the recipients of federal funds to reasonably accommodate persons with disabilities.   The Jail is believed and therefore alleged to receive federal funds.

135.    Although NaphCare is a private entity, it receives federal funds—NaphCare is, in fact, contractually obligated to seek them—and operates at the Jail under contract with Pierce County, and therefore is subject to Section 504 of the RA.

136.    As described above, Pierce County and NaphCare failed to institute adequate policies and procedure or train its employees on how to accommodate individuals with disabilities, such as Javier.

## V.    JURY DEMAND

185.    Plaintiff hereby demand a trial by jury.

## VI.    AMENDMENTS

186.    Plaintiff hereby reserves the right further to amend his Complaint.

## VII.    RELIEF REQUESTED

187.    Damages have been suffered by Plaintiff and to the extent any state law limitations on such damages are purposed to exist, they are inconsistent with the compensatory, remedial and/or punitive purposes of federal law, and therefore any such alleged state law limitations must be disregarded in favor of permitting an award of the damages prayed for herein.

188.    WHEREFORE, Plaintiff requests a judgment against all Defendants:

(a)    Fashioning an appropriate remedy and awarding economic and noneconomic damages, including damages for pain, suffering, terror, loss of consortium, and loss of

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

familial relations, and loss of society and companionship pursuant to 42 U.S.C. §§ 1983 and

1988, in an amount to be determined at trial;

        (b)     Punitive damages;

        (c)     Awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988,

or as otherwise available under the law;

        (d)     Declaring the defendants jointly and severally liable;

        (e)     Awarding any and all applicable interest on the judgment; and

        (f)     Awarding such other and further relief as the Court deems just and proper.

Respectfully submitted this 18th day of July, 2022.

GALANDA BROADMAN, PLLC

s/Ryan Dreveskracht
Ryan D. Dreveskracht, WSBA #42593
s/Corinne Sebren
Corinne Sebren, WSBA 58777
Attorneys for Plaintiff
P.O. Box 15146 Seattle, WA 98115
(206) 557-7509 Fax: (206) 299-7690
Email: ryan@galandabroadman.com
Email: corinne@galandabroadman.com

FIRST AMENDED COMPLAINT - 33
(NO.  21-2-04263-1 SEA)

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509