THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAVIER TAPIA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>NAPHCARE, INC. and PIERCE COUNTY,<br><br>　　　　　　　　Defendants. | CASE NO. C22-1141-JCC<br><br>ORDER |

This matter comes before the Court on Defendants Pierce County and NaphCare, Inc.'s motions to dismiss (Dkt. Nos. 19, 21). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motions for the reasons explained herein.

I.   BACKGROUND[1]

Pierce County utilizes third parties to provide its jail population with healthcare professionals. (Dkt. No. 18-1 at 2.) During the events at issue, NaphCare was the third party. (*Id.*) According to their agreement, NaphCare supplied a licensed practical nurse, nurse practitioner and/or physician's assistant, registered nurse, director of nursing, and support staff.

---

[1] Unless otherwise indicated, the facts below are based on allegations contained in Plaintiff's Second Amended Complaint (Dkt. No. 18-1).

(*See* Dkt. No. 20-1 at 2–16 (copy of March 2016 personal services)[2].) Pierce County did not contract with NaphCare for a doctor's services; instead, it directly employed a medical director for the jail, although Plaintiff contends this individual "has no corrections medicine experience and is not qualified for the position." (Dkt. No. 18-1 at 8–9.)

On June 6, 2018, Plaintiff was booked into the Pierce County Jail as a pretrial detainee. (*Id.* at 4.) His detention was initially unremarkable. (*Id.* at 4–5.) Then, on September 14th, just over three months after he arrived, Plaintiff put in a sick call request, complaining of insomnia. (*Id.* at 5.) Three days later, Pierce County correctional deputies observed Plaintiff acting strangely. (*Id.*) He was rolling on the floor, flailing around, and lying in a fetal position. (*Id.*) The next day, Pierce County mental health personnel noted Plaintiff seemed confused and unable to verbally respond to questions. (*Id.*) He also refused meals, suffered from poor hygiene, smelled of urine and, in general, was "way off his baseline." (*Id.* at 5, 24.) Jail staff chalked this up to Plaintiff's history of substance abuse, rather than a pressing medical need. (*Id.*) According to Plaintiff, the true cause was a blood clot that had formed in his groin. (*Id.* at 6.) It reduced blood flow to his left leg. (*Id.*) As a result, over the next two weeks, his left foot and lower leg were starved of blood and began to decompose. (*Id.*)

Plaintiff contends that his need for medical services was "obvious even to the casual observer," given that he had "sores and blisters that bled and released a dirty-looking, foul smelling discharge [which were] . . . readily apparent to anyone even superficially interacting with [him]." (*Id.*) Yet no one at the jail performed a physical examination until October 1, 2023.

---

[2] The SAC frequently references this agreement, (*see* Dkt. No. 18-1 at 2, 3, 13–15, 18, 19), and a selection of Plaintiff's prison medical records, (*see id.* at 7, 8–10). NaphCare provides the Court with a supporting declaration containing an exhibit of the contract and excerpts of Plaintiff's jail medical records. (*See* Dkt. No. 20.) NaphCare suggests these documents are incorporated by reference into the complaint. (Dkt. No. 19 at 11–12.) Plaintiff does not contest this assertion. (Dkt. No. 23 at 8–9 n.6.) The Court will, therefore, consider the information provided in NaphCare's exhibit without converting the instant motions to ones seeking summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

ORDER
C22-1141-JCC
PAGE - 2

1  (*Id.* at 5–12.) Once they did, the jail's medical director authorized Plaintiff's referral to Tacoma General Hospital. (*Id.*) This was the first and only examination of Plaintiff by a medical professional at the jail during the two-week ordeal. (*Id.*) While NaphCare personnel interacted with Plaintiff during this time, they did not examine him. (*Id.* at 7–9.)

Treating physicians at Tacoma General diagnosed Plaintiff's condition as sepsis, gangrene, and/or thrombosis. (*Id.* at 5–12.) On October 14, after revascularizing as much of the left leg as possible, surgeons amputated just below the knee. (*Id.* at 11.) The Hospital's medical providers, upon initially examining Plaintiff, noted that if he had been diagnosed and treated in the first "24–36 hours," the outcome may have been different. (*Id.* at 10.)

Plaintiff contends that NaphCare provided Plaintiff inadequate medical care and did so in conformity with Pierce County's policy of withholding care in an effort to save money. (*Id.* at 5–12.) According to Plaintiff, NaphCare personnel ignored clear indicators of medical distress and failed to perform a physical examination when they did interact with Plaintiff. (*Id.*) And County mental health providers did not adequately respond to Plaintiff's mental health issues, which fully resolved once he received adequate medical treatment. (*Id.*)

Plaintiff further contends that these failings could be traced to an affirmative decision to understaff the medical and mental health function at the jail, which included, among other things, excluding a doctor from the jail healthcare team. (*Id.*) All of this was consistent with "policies, established procedures, and protocols" to support a "profit over care" model to minimize Pierce County's cost and maximize NaphCare's bottom line. (*Id.* at 12–19.) Plaintiff argues this represents not only negligent care, but constitutionally inadequate care. (*Id.*) Plaintiff asserts the following causes of action: negligence against Pierce County and corporate negligence against NaphCare; §1983 liability against Pierce County and NaphCare; and violations of the Americans with Disabilities Act ("ADA") and Rehabilitation Act against Pierce County. (*Id.* at 19–26.) Defendants move to dismiss all claims pursuant to Rule 12(b)(6). (Dkt. Nos. 19, 21.)

## II. DISCUSSION

### A. Legal Standard

Dismissal is proper when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A plaintiff is obligated to provide grounds for their entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A claim has facial plausibility when the plaintiff pleads factual content[3] that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Dismissal under Rule 12(b)(6) "can [also] be based on the lack of a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

### B. Negligence Claims

Pierce County argues the negligence claim against it is inadequately pleaded and NaphCare argues the corporate negligence claim against it ostensibly fails as a matter of law. (*See generally* Dkt. Nos. 19, 21.) For the reasons described below, the Court FINDS that the Second Amended Complaint adequately states a negligence claim against Pierce County but that, because Plaintiff does not allege that NaphCare is a hospital, the corporate negligence claim fails as a matter of law.

#### 1. Pierce County

Due to their "special relationship with inmates," jailers owe detainees an affirmative

---

[3] Although the Court must accept as true a complaint's well-pleaded facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

nondelegable duty of care. *Gregoire v. City of Oak Harbor*, 244 P.3d 924, 928 (Wash. 2010). To the extent a Plaintiff seeks to establish that a jail violated this duty based on inadequate medical care, they must establish that the medical provider "failed to exercise that degree of care, skill, and learning expected for a reasonable prudent health care provider." RCW 7.70.040.

In arguing for dismissal, Pierce County contends that the Second Amended Complaint fails to allege that a Pierce County employee or a NaphCare employee actually observed Plaintiff's leg prior to October 1. (Dkt. No. 25 at 2–3.) And, on this basis, the County had no duty to exercise *any* degree of medical care. (*Id.*)[4] But that is the very point. Plaintiff alleges that his physical deterioration was self-evident.[5] (*See* Dkt. No. 18-1 at 5–12.) He had repeated contacts with Pierce County and NaphCare personnel over a two-week period, exhibited significant indicators of physical and mental distress, yet no one thought to physically examine him. (*Id.*) Whether this was reasonable is not a question to be resolved by a Rule 12(b)(6) motion. *See Scheuring v. Traylor Bros., Inc.*, 476 F.3d 781, 791 (9th Cir. 2007).

   2.  NaphCare

As this Court has previously described, the reason that Washington recognizes a "corporate negligence" claim against hospitals is because most of their treating physicians are independent contractors; as such, "the theory of *respondeat superior* is inapplicable." *Harris v. Extendicare Homes, Inc.*, 829 F. Supp. 2d 1023, 1029 (W.D. Wash. 2011). A corporate negligence claim is, therefore, necessary to provide a means of relief against a hospital who fails to ensure its doctors are providing adequate medical care. *Id.* But here, Plaintiff has not pled

---

[4] Pierce County also argued that it cannot be liable for a contractor's conduct. (Dkt. No. 21 at 6.) It has since abandoned this argument. (*Compare* Dkt. No. 22 at 16, *with* Dkt. No. 25 at 2–3.) For good reason. "When there is a nondelegable duty, the principal remains liable for the torts of an independent contractor." *Gonzalez v. Dammeier County of Pierce*, 21 Wash. App. 2d 1056, 2022 WL 1155744, slip op. at 5 (Wash. Ct. App. 2022) (not reported in Pacific Reporter).

[5] Pierce County questions the adequacy of this allegation. (Dkt. No. 25 at 2–3.) This is a factual challenge not appropriate for a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

facts to suggest that NaphCare is a hospital or that the actions of its employees could not be attributed to NaphCare. (*See generally* Dkt. No. 18-1.) As such, applying corporate negligence serves no purpose.[6] For this reason, a corporate negligence claim against NaphCare cannot stand.

### C.  Section 1983 Claims

Plaintiff also asserts *Monell*-based § 1983 claims against Pierce County and NaphCare. (Dkt. No. 18-1 at 22–23.) He contends that, by virtue of their employees' inadequate medical care, which flowed directly from Pierce County and NaphCare's policy, custom, or practice of limiting access to appropriate levels of care and failing to adequately train their employees, each Defendant committed Fourteenth Amendment violations.[7] (*Id.* at 12–19.) For the reasons described below, the Court FINDS that the Second Amended Complaint states § 1983 claims against Pierce County and NaphCare for inadequate medical care arising from the policy of withholding care **but not** from a failure to train.

In general, a municipality or its agent "may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). But it may be liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id*. "Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690.

NaphCare points out that its personnel only came into contact with Plaintiff three times

---

[6] This remains true even though Plaintiff inexplicably dropped the simple and/or medical negligence claims it previously raised against NaphCare and its personnel. (*Compare* Dkt. No. 2-1 (original complaint alleging negligence against NaphCare), *with* Dkt. Nos. 1-2 (First Amended Complaint adding Naphcare employees), 18-1 (Second Amended complaint striking both).)

[7] The Fourteenth Amendment protects pre-trial state detainees while the Eighth Amendment protects individuals serving custodial sentences. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

before examining him. (Dkt. No. 19 at 15.) And once they did examine him, on the fourth occasion, they referred him to Tacoma General that same day. (*Id.*) NaphCare further points out that, in each instance where they did interact with Plaintiff, he either did not appear to be in distress (in the opinion of the NaphCare employee) or simply refused to engage with them. (*Id.*) On this basis, NaphCare argues there is no intentional decision and/or reckless disregard for Plaintiff's welfare, a predicate for a *Monell* claim. (*Id.* at 15–17.) Said another way, according to NaphCare, Plaintiff fails to allege the requisite <u>affirmative individual conduct</u>, to be attributed to Pierce County and NaphCare, through *Monell*'s custom/policy/practice framework.

This argument misses the mark. *Monell* liability attaches to an employing municipality (or its agent) when there is a "direct causal link" between a municipality's custom, or policy, or practice and a constitutional deprivation. *Sandoval v. County of San Diego*, 985 F.3d 657, 681 (9th Cir. 2021) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Here the deprivation is a failure to provide adequate medical care, *e.g.*, an omission—not an affirmative act. (*See generally* Dkt. No. 18-1). Affirmative conduct by an employee is not always required to establish *Monell* liability. *See Crowell v. Cowlitz County*, 726 F. App'x 593, 595 (9th Cir. 2018). And while a link between an omission and the policy, custom, or practice is required, the Second Amended Complaint adequately alleges such a link. (*See* Dkt. No. 18-1 at 12–16); *Sandoval*, 985 F.3d at 682.

Pierce County and NaphCare also challenge the adequacy of allegations supporting a Fourteenth Amendment based on a failure to train. (*See* Dkt. Nos. 19 at 24–26, 21 at 9–10.) On this issue, Defendants have the better argument. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal citation omitted). And the Second Amended Complaint is threadbare on this issue. (*See* Dkt. No. 18-1 at 8, 14, 16–20.) It fails to allege how or why it was deficient, how it evinces deliberate indifference, or the causal connection between the two. (*Id.*) Instead, it is limited to conclusory allegations, (*id.*), inadequate to support a Fourteenth

ORDER
C22-1141-JCC
PAGE - 7

Amendment violation. *See Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009).

For the reasons described above, *Monell* claims against NaphCare and Pierce County based on their failure to provide adequate medical care may continue. But claims based on a failure to train are inadequately pleaded and may not continue, absent amendment.

### D. Disability Claims

Finally, Plaintiff contends that he was denied adequate medical care because Pierce County personnel assumed his odd behavior stemmed from past substance use rather than an acute medical condition. (Dkt. No. 18-1 at 24.) On this basis, he brings claims for violations of the ADA and Rehabilitation Act, arguing that he received disparate medical care because of his mental health history. (*Id.* at 23–26.) In moving to dismiss, Pierce County argues that the Second Amended Complaint "fails to identify any specific physical or mental disability, or how he was discriminated against because of such specific disability." (Dkt. No. 21 at 12.) The Court agrees. It FINDS that Plaintiff is essentially alleging a misdiagnosis, not a deprivation of medical care based on a mental health-based disability. (*See generally* Dkt. No. 18-1.)

### III. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (Dkt. Nos. 19, 21) are GRANTED in part and DENIED in part. Plaintiff's federal corporate negligence claim against NaphCare is DISMISSED without prejudice, as is Plaintiff's § 1983 claims against both Defendants premised on a failure to train, along with Plaintiff's claims against Pierce County based on ADA and/or Rehabilitation Act violations. The remaining claims survive. Plaintiff may amend the Second Amended Complaint, solely to cure the deficiencies described above,[8] within

---

[8] The Court declines NaphCare's request to deny leave to amend. (*See* Dkt. Nos. 19 at 30, at 24 at 18.) Even though Plaintiff has previously amended his complaint, this is the first instance where a court has ruled on the adequacy of Plaintiff's allegations. And it is entirely conceivable that, with the guidance provided, the deficiencies noted above (except perhaps NaphCare's non-hospital status) could be cured by amendment. For this reason, a dismissal without leave to

21 days of this Order.

DATED this 23rd day of May 2023.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

amend would be inappropriate. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).