UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAVIER TAPIA,<br><br>          Plaintiff,<br><br>     v.<br><br>NAPHCARE INC. et al,<br><br>          Defendants. | CASE NO. C22-1141-KKE<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S DISCOVERY MOTIONS |

This matter comes before the Court on two motions by Plaintiff Javier Tapia: (1) Motion to Overrule NaphCare Inc.'s Assertion of Privilege and Compel Deposition Testimony of Dr. Elliot Wade (Dkt. No. 59), and (2) Motion to Compel Discovery Against Defendant NaphCare Inc. (Dkt. No. 60). After reviewing the motions and supporting declarations, the Court finds that Tapia has satisfied Local Civil Rule 37's meet and confer requirement. For the reasons stated below, the Court grants Tapia's Motion to Overrule NaphCare Inc.'s Assertion of Privilege and Compel Deposition Testimony of Dr. Elliot Wade (Dkt. No. 59). Further, the Court grants in part and denies in part Tapia's Motion to Compel Discovery Against Defendant NaphCare (Dkt. No. 60), as limited below.

//

## I. FACTS

Pierce County contracts with NaphCare Inc. ("NaphCare") to provide medical care at the Pierce County Jail. Dkt. No. 20-1. While incarcerated there, Javier Tapia developed a blood clot, and ultimately, his left leg was amputated below the knee. Dkt. No. 61-8 at 2, 5. In March 2021, Tapia filed suit against Pierce County and NaphCare in state court alleging negligent hiring, training and retention, and medical malpractice. Dkt. No. 2-1. On July 18, 2022, Tapia filed an Amended Complaint adding federal civil rights claims under 42 U.S.C. § 1983 (Dkt. No. 1-2 ¶ 103), and failure to accommodate under the Americans with Disabilities Act, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 701. *Id.* ¶ 118, 134.[1] The case was removed to this Court on August 15, 2022. Dkt. No. 1.

Following the partial grant of a motion to dismiss (Dkt. No. 31), the parties engaged in discovery, precipitating the pending motions to compel. Tapia's first motion concerns the production of a June 16, 2020 e-mail from Dr. Elliot Wade, NaphCare's Medical Director, to several other NaphCare employees ("the Wade e-mail"). Dkt. No. 59. Dr. Wade was employed at NaphCare as a Staff Physician from May 2018 to June 2019 and has served as Medical Director since October 2019. Dkt. No. 73-1. The e-mail concerned Tapia's medical care while at the jail and expressed Dr. Wade's views that the NaphCare staff involved in his care had done "everything right." Dkt. No. 62-1. One of the recipients, Jonathon Slothower, forwarded the e-mail to two Pierce County employees the same day he received it. Dkt. No. 62-1 at 2. At some point during discovery in the state court action, Pierce County produced the Wade e-mail to Tapia. When Tapia filed his amended complaint on July 18, 2022, he included a screenshot of the Wade e-mail in the body of his complaint. Dkt. No. 1-2 ¶ 54. A screenshot of the Wade e-mail was included again in

---

[1] This Order refers to the parties' briefing using the CM/ECF page numbers.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S DISCOVERY MOTIONS - 2

Tapia's second amended complaint, filed in this Court on October 7, 2022. Dkt. No. 15 ¶ 38. Nearly a year later, on September 21, 2023, NaphCare also produced the Wade e-mail in discovery in this action. Dkt. No. 68 at 17 (citing Dkt. No. 61-25).

On September 28, 2023, Tapia deposed Dr. Wade, apparently without objection. Dkt. No. 61-3 at 2. When questioned about the Wade e-mail, counsel for NaphCare directed Dr. Wade not to answer questions about his review of Tapia's medical record, which counsel asserted was a "privileged" review. *Id.* at 4–6, 37–42. At the end of Dr. Wade's deposition, counsel for Tapia indicated he would keep the deposition open to facilitate later questioning about the Wade e-mail and investigation, after obtaining a ruling from this Court regarding NaphCare's assertions of privilege. *Id.* at 42. Counsel for NaphCare objected to any future reconvening of the deposition. *Id.* Later the same day, counsel for NaphCare sent an e-mail requesting to "claw back for privilege" the Wade e-mail. Dkt. No. 61-24 at 2.

On October 26, 2023, Tapia filed a motion to overrule NaphCare's assertion of privilege and compel further deposition of Dr. Wade (Dkt. No. 59). On the same day, Tapia also filed a motion to compel answers to several of his outstanding discovery requests. Dkt. No. 60. The motions are addressed in turn below.

## II.   ANALYSIS

### A.   Local Civil Rule 37 is Satisfied.

NaphCare argues the Court should deny Tapia's motions for failure to meet and confer. Dkt. No. 65 at 10, Dkt. No. 68 at 13. Regarding Tapia's motion concerning the Wade e-mail, Tapia responds that counsel conferred at Dr. Wade's deposition (Dkt. No. 61-3 at 89–90), and that the conferral requirement of Local Civil Rule 37(a)(1) does not apply to its motion to overrule NaphCare's assertion of privilege. Dkt. No. 74 at 1 n.1. Regarding Tapia's motion pertaining to NaphCare's discovery responses, NaphCare argues that Tapia failed to meaningfully discuss

requests related to NaphCare's corporate structure and NaphCare's supplemental responses to the requests at issue. Dkt. No. 65 at 11.

In this instance, the Court concludes that the on-the-record discussion at Dr. Wade's deposition of the privilege issues raised in the first motion and the August 24, 2023 phone call[2] regarding the issues in the second motion are sufficient to satisfy Local Civil Rule 37(a)(1), albeit only just. While the Court will reach the merits of Tapia's motions in the interest of judicial economy and advancing this litigation, counsel is admonished to confer thoroughly and in good faith with respect to any future discovery disputes. Counsel is further reminded that this Court's discovery dispute procedure applies to all future discovery issues in this case. Dkt. No. 79.

**B.  Tapia's Motion to Overrule Privilege and Compel Deposition is Granted.**

    1.  <u>The Wade e-mail is not privileged.</u>

NaphCare argues that the Wade e-mail is protected work product because it was generated at the request of NaphCare's legal department in response to Tapia's filing a claim with Pierce County. Dkt. No. 68 at 9–11. NaphCare also argues the privilege was not waived by sharing the e-mail with Pierce County, nor the repeated reference to and production of the e-mail in discovery in this action. *Id.* at 16–17. To that end, counsel for NaphCare avers that "[s]hortly before the deposition of Dr. Wade, my team became aware of the interplay between the e-mail Dr. Wade sent and his privileged review of the claim. Immediately upon leaving the deposition, I instructed my team to confirm this link and send a claw-back request." Dkt. No. 70 ¶ 6. In support of the claw-back effort, Slothower stated in his declaration that he "believed and expected that the e-mail would be kept confidential by the County and not produced to Tapia in discovery or produced in

---

[2] The parties met and conferred via telephone on August 24, 2023 regarding NaphCare's discovery responses. Dkt. No. 61-25 at 13.

response to a Public Record Act request because it was related to the evaluation of threatened litigation." Dkt. No. 66 ¶ 6.

"The primary purpose of the work-product [doctrine] is to 'prevent exploitation of a party's efforts in preparing for litigation.'" *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (quoting *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)). The party invoking the work-product doctrine bears the burden of establishing that it applies. *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 507 (S.D. Cal. 2003). The work-product doctrine generally protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co.*, 881 F.2d at 1494 (citing Fed. R. Civ. P. 26(b)(3)).

However, "[t]he privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived." *United States v. Nobles*, 422 U.S. 225, 239 (1975). A party may waive work-product protection by disclosing or placing the work product at issue during the course of litigation. *See Sanmina*, 968 F.3d at 1119. Unlike attorney-client privileged materials, "disclosure of work product to a third party does not waive the protection unless such disclosure is made to an adversary in litigation or has substantially increased the opportunities for potential adversaries to obtain the information." *Id*. (cleaned up); *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, 333 F.R.D. 638, 648 (D. Or. 2019) ("If a document otherwise protected by work-product immunity is disclosed to others with an actual intention, or reasonable probability, that an opposing party may see the document, the party who made the disclosure cannot subsequently claim work-product immunity." (cleaned up)).

For purposes of this analysis, the Court accepts NaphCare's assertion that the e-mail was initially generated in response to a request from its legal team, in anticipation of Tapia's future claim against it. The question then is whether NaphCare's forwarding of the e-mail to Pierce County, subsequent silence in the face of its widespread publication, and citation to and production

of the e-mail in this action, waives work-product protection. For the reasons articulated below, the Court finds that it does.

        a.    <u>The common interest doctrine does not apply.</u>

First, NaphCare argues in passing that its disclosure to Pierce County did not waive protection over the e-mail under the common interest doctrine. "The common interest doctrine is an exception to the work-product doctrine designed to allow co-parties and others pursuing a common legal strategy to communicate with each other with confidentiality." *Quinn v. City of Vancouver*, No. 3:17-CV-05969-BHS, 2020 WL 13578249, at *4 (W.D. Wash. Sept. 11, 2020) (citing *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012)). "However, a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception. Instead, the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." *In re Pac. Pictures Corp.*, 679 F.3d at 1129 (cleaned up).

When Slothower forwarded the Wade e-mail to Pierce County, it did not contain any direction that confidentiality be maintained or any indication it contained privileged information. *See McKenzie L. Firm, P.A.*, 333 F.R.D. at 648 (defendant did not obtain or even request any "assurance, commitment, or agreement to maintain the confidentiality of the communications exchanged"). Despite Slothower's post-hoc explanation that he expected Pierce County employees would maintain the e-mail's confidentiality, there is no evidence that NaphCare and Pierce County were parties to a common interest agreement. Given the County's duties under the Public Records Act,[3] NaphCare's disclosure of the e-mail without any indication of its allegedly privileged status to Pierce County introduced a "reasonable probability[] that an opposing party

---

[3] WASH. REV. CODE § 42.56.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S DISCOVERY MOTIONS - 6

may see the document[.]" *Id.* at 647 (cleaned up).  Moreover, the parties' mutual indemnification obligations under NaphCare's services contract further increased the likelihood that they might end up as litigation opponents.  Dkt. No. 20-1 at 6.  Indeed, Pierce County is now NaphCare's adversary in this action.[4]

          b.      <u>NaphCare waived work-product protection over the Wade e-mail.</u>

Even if the Wade e-mail retained work-product protection under the common interest doctrine, NaphCare's action (and inaction) subsequent to sharing the document with Pierce County has waived it.  The Wade e-mail was first produced by Pierce County more than a year before Dr. Wade's deposition, during which time it was quoted in two complaints filed by Tapia (one in state court and one in this Court).  NaphCare obviously knew that Tapia possessed the e-mail when it reviewed and responded to *two* complaints.  In fact, in NaphCare's reply in support of its Motion to Dismiss, filed in November 2022, NaphCare cited the e-mail, argued it did not support Tapia's claim, and importantly, asserted no privilege over the e-mail or Dr. Wade's review of Tapia's care.  Dkt. No. 24 at 24.  Then, despite claiming to "recogniz[e] the County's improper production of the E-mail" before scheduling Dr. Wade's deposition (Dkt. No. 68 at 15), NaphCare also produced the e-mail.  Dkt. No. 68 at 17 (citing Dkt. No. 61-25).  NaphCare did not attempt to claw it back until after Dr. Wade's deposition, a week after it produced the e-mail, and nearly a year after NaphCare referenced the e-mail in its reply brief in this Court.  Dkt. No. 24 at 9.  Any work-product protection that may have attached to the e-mail has been unquestionably waived.  *See Nobles*, 422 U.S. at 239; *McKenzie L. Firm, P.A.*, 333 F.R.D. at 648.

---

[4] Under the contract, the parties must indemnify and defend each other for claims arising out of the other party's negligence.  Dkt. No. 20-1 at 6.  Here, Pierce County alleges that to the extent it is found liable for Tapia's injuries, it is due to NaphCare's acts and omissions.  Dkt. No. 37 at 14 ¶ 3.5.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S DISCOVERY MOTIONS - 7

      c.      *NaphCare is not entitled to relief under Rule 26(b)(5)(B).*

Further, while NaphCare invoked Federal Rule of Civil Procedure 26(b)(5)(B) to claw back the Wade e-mail, it fails to satisfy the requirements of the rule. Under the rule, the burden of proof rests upon the party attempting the claw-back to show: "(1) the materials it seeks are privileged or protected under the work-product doctrine, (2) the disclosure was inadvertent, (3) the party took reasonable steps to prevent disclosure, *and* (4) the party acted promptly to correct the inadvertent disclosure." *Trident Seafoods Corp. v. Commonwealth Ins. Co.*, No. 2:10-CV-00214-RAJ, 2011 WL 13234644, at *1 (W.D. Wash. Oct. 31, 2011) (emphasis added). Even if NaphCare could show the Wade e-mail was at one time protected work product, NaphCare fails to show that its own disclosure of the e-mail was inadvertent, that it took reasonable steps to prevent disclosure, or that it took prompt corrective action. *Id.* To the contrary, the Wade e-mail has now been in the public domain for 18 months, with NaphCare's full knowledge. Dkt. No. 1-2 ¶ 54.

In sum, the Wade e-mail is not work product, and NaphCare's assertion to the contrary in the face of this record is frivolous. Tapia's motion to overrule NaphCare's objection is granted.

    2.    <u>Dr. Wade is not a non-testifying expert.</u>

NaphCare argues that even if the Court rules that the Wade e-mail is discoverable, "[a]nything *beyond* the E-mail itself must remain protected. This includes the facts reviewed, the reasoning, and the opinions reached that are not on the face of the E-mail." Dkt. No. 68 at 17. NaphCare asserts Dr. Wade's investigation and opinions are privileged because he is "a non-testifying consulting expert" and "his review is attorney work-product." Dkt. No. 68 at 14. The Court disagrees.

As a threshold matter, NaphCare produced Dr. Wade for deposition without objection. At his deposition, on the record before the Court, counsel did not assert that Dr. Wade was a

consulting expert, nor did they instruct him not to answer on that basis.[5]  Rather, the basis of NaphCare's objection was that the Wade e-mail, though produced by Pierce County, was "probably privileged" (Dkt. No. 70-1 at 7), and that Dr. Wade's review was "in response to a legal inquiry." *Id.* at 6.  NaphCare's "consulting expert" theory did not surface until its opposition brief in this Court.  Regardless, it lacks merit.

A person may instruct a deponent not to answer only in extremely limited circumstances, including when necessary to preserve a privilege.  *Coloplast A/S. v. Generic Med. Devices, Inc.*, C10-227-BHS, 2011 WL 6330064, at *2 (W.D. Wash. Dec. 19, 2011) (citing Fed. R. Civ. P. 30(c)(2)).  Under Federal Rule of Civil Procedure 26(b)(4)(D), "[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."  While there is mixed authority on the question of whether an employee can ever be considered a non-testifying expert, "[w]hat all the cases agree on is that the expert must be 'specially employed in anticipation of litigation.'" *Tellabs Operations, Inc. v. Fujitsu Ltd.*, 283 F.R.D. 374, 387 (N.D. Ill. 2012).

Here, Dr. Wade has been employed as a "Medical Director" at NaphCare since October 2019.  Dkt. No. 73-1.  His resume does not list any litigation-specific duties.  *Id.*  Dr. Wade's responsibilities consist of oversight and management duties, including "[w]ork with Corporate Medical Director, East and the Chief Medical Officer to answer clinical questions for all sites, and help to provide guidance to directors, providers, and health services administrators." *Id.*  Dr. Wade testified that he reviews "all ER send-out[s][6] and returns throughout all NaphCare facilities."  Dkt.

---

[5] NaphCare argues that it "asserted both the non-testifying expert and work-product privileges[,]" but the record does not support this assertion.  Dkt. No. 68 at 18.

[6] This term refers to when incarcerated individuals are sent out to receive care offsite.  *See* Dkt. No. 61-3 at 41.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S DISCOVERY MOTIONS - 9

No. 61-3 at 38. Dr. Wade did not testify that he was specifically employed to work on Tapia's case. To the contrary, NaphCare submitted no declaration from Dr. Wade in opposition to Tapia's motion. Given Dr. Wade's responsibilities, the Court finds that Dr. Wade was not "specially employed in anticipation of litigation" as required to be considered a non-testifying expert under Federal Rule of Civil Procedure 26(b)(4)(D); *Tellabs Operations, Inc.*, 283 F.R.D. at 387. Because Dr. Wade is not such an expert, he can be deposed about what information he reviewed with respect to Tapia and why, along with his opinions and conclusions regarding the care provided by NaphCare, to the extent he has personal knowledge of the same. Fed. R. Civ. P. 30(c)(2).

For all of these reasons, Tapia's motion to compel deposition of Dr. Wade is granted.

**C.    Tapia's Motion to Compel Additional Discovery Responses is Granted in Part and Denied in Part.**

Tapia next asks the Court to compel discovery in four main categories: information related to investigations into Tapia's care; information related to NaphCare's corporate structure and financial condition; information related to NaphCare's budget; and NaphCare's history of inmate treatment. Dkt. No. 60. Cases involving *Monell*-type[7] claims such as this one often require broad discovery. *See Reed v. Wexford Health Sources, Inc.*, 2021 WL 5578076, at *3 (S.D. Ill. Oct. 19, 2021) (citing cases); *see also Beck v. City of Pittsburgh*, 89 F.3d 966, 968–69 (3d Cir. 1996) (using misconduct complaints, including ones not sustained, to conclude that there was sufficient evidence to support plaintiff's *Monell* claim). For the reasons stated below, the Court grants in part and denies in part Tapia's motion to compel.

---

[7] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Tapia argues that under *Monell*, NaphCare can be liable under Section 1983 if its policy or custom caused injuries through deliberate indifference to Tapia's constitutional right to adequate medical care. Dkt. No. 60 at 7 n.20.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S DISCOVERY MOTIONS - 10

1. <u>The Court grants the motion to compel discovery related to investigations into Tapia's care.</u>

Tapia asks the Court to compel NaphCare to provide full responses to Interrogatory No. 1 and Requests for Production ("RFP") Nos. 2 and 5A. Dkt. No. 60 at 4-5. Interrogatory No. 1 asks NaphCare to identify "every person associated with NaphCare, Inc. … who had any responsibility … for investigating or inquiring into any aspect of the facts or circumstances surrounding the conditions of confinement, injury, and/or treatment of Javier Tapia." Dkt. No. 61-27 at 8. NaphCare initially objected to this interrogatory on overbreadth and ambiguity grounds, and asserted it requested information protected by work-product, consulting expert, and other privileges. *Id.* In its first supplemental response, NaphCare maintained the same objections but stated "NaphCare did not perform any non-privileged investigations relating to Mr. Tapia." *Id.* NaphCare argues Dr. Wade's analysis is privileged under the consulting expert protection (Dkt. No. 65 at 12–13) and states it did not include e-mails between NaphCare's legal department and Dr. Wade on its privilege log for this reason. Dkt. No. 68 at 9 n.6. In light of the Court's finding that Dr. Wade does not qualify as a consulting expert, NaphCare's assertion of the privilege here is inappropriate to the extent it works to withhold information related to Dr. Wade's analysis of Tapia's care. Moreover, any allegedly privileged e-mails involving Dr. Wade should be identified on NaphCare's privilege log with sufficient detail so that any asserted privileges may be understood and challenged. Fed. R. Civ. P. 26(b)(5)(A); *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996).

Because NaphCare asserted the same objections to RFP Nos. 2 and 5A (Dkt. No. 65 at 12), this holding applies to these requests as well. Tapia's motion to compel discovery as to these discovery requests is granted.

2. <u>The Court grants Tapia's motion to compel discovery related to NaphCare's corporate structure and financial condition.</u>

Tapia asks the Court to compel responses to Interrogatory Nos. 18 and 19, and RFP Nos. 18 and 19. Tapia asserts this information is relevant to punitive damages (Dkt. No. 60 at 6), and "necessary to explain Plaintiff's *Monell* theory to a jury." Dkt. No. 60 at 8. NaphCare responds that these requests are "overbroad, burdensome, and irrelevant to the issues in this case" (Dkt. No. 65 at 14), and "[a]ll that is *potentially* relevant is *NaphCare*'s net worth." *Id.* at 15.[8]

A defendant's net worth and financial condition are relevant to the issue of punitive damages. *See*, *e.g.*, *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 462 & n.28 (1993) (noting it is "well-settled" that a defendant's "net worth" is a factor that is "typically considered in assessing punitive damages"). However, the inquiry as to how much detail is required is fact-specific, and courts have reached conflicting outcomes on the extent to which this type of discovery is appropriate in a given case. *See e.g.*, *Dawson v. S. Corr. Entity*, No. C19-1987RSM, 2021 WL 843141, at *3 (W.D. Wash. Mar. 5, 2021) (limiting the scope of discovery regarding NaphCare's assets and insurance to the last three years data was available); *Fish, LLC v. Harbor Marine Maint. & Supply, Inc.*, No. C17-0245-JCC, 2018 WL 1121332, at *3 (W.D. Wash. Mar. 1, 2018) (granting motion to compel three years' worth of documents related to defendant's financial state including cash flow statements, payroll ledgers, and annual reports); *Riley v. PK Mgmt., LLC*, No. 18-cv-2337-KHV-TJJ, 2019 WL 1509861, at *4 (D. Kan. Apr. 5, 2019) (limiting scope of request for defendant's financial information to one-year period); *but see*, *e.g.*, *RG Abrams Ins. v. L. Offices of C.R. Abrams*, No. 2:21-cv-00194-FLA-MAAx, 2022 WL 422824, at *8 (C.D. Cal. Jan. 19, 2022) (allowing discovery, holding that "documents that reveal the corporate structure, financial

---

[8] As of the briefing on this motion, it does not appear to the Court that NaphCare has provided any such information. *See* Dkt. Nos. 61-17, 61-26, 61-27.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S DISCOVERY MOTIONS - 12

activities, insurance coverage, and/or net worth of the Entity Defendants inform the question of punitive damages").

        a.    *Interrogatory No. 18 and RFP No. 18*

Interrogatory No. 18 asks NaphCare to identify "each legal entity under common control with NaphCare . . . and describe the legal and tax relationships between the entities." Dkt. No. 61-17 at 16. RFP No. 18 asks NaphCare to "[p]roduce all documents and materials you identified or relied upon in answering Plaintiff's Interrogatory No. 18." Dkt. No. 61-17 at 29. Tapia argues NaphCare "has employed a vast array of passive corporate entities to hide or otherwise insulate its exact fortune[,]" and that this discovery "is required to determine the *true* value of NaphCare's wealth." Dkt. No. 60 at 7. NaphCare argues the only information potentially relevant to punitive damages is NaphCare's net worth. Dkt. No. 65-15. However, NaphCare does not address in its response whether this discovery is relevant to Tapia's *Monell* claim.

Because Tapia's *Monell* theory is based in part on NaphCare's policy and practices allegedly prioritizing profit over care, discovery that reveals "[w]here NaphCare's revenue stream begins and ends" is relevant to Tapia's claim. Dkt. No. 75 at 3. Tapia's motion to compel discovery as to these discovery requests is granted.

        b.    *Interrogatory No. 19 and RFP No. 19*

Interrogatory No. 19 requests NaphCare identify "the shareholders and corporate officers of each legal entity under common control with NaphCare and describe the compensation paid to each of them." Dkt. No. 61-17 at 17. RFP No. 19 seeks documents relied upon or identified in the course of answering Interrogatory No. 19. Dkt. No. 61-17 at 30. Tapia argues this information is relevant to his *Monell* claim, in part because "[i]f NaphCare's net worth is intentionally diminished because it pays its shareholders and policymakers millions of dollars in compensation … Plaintiff (and the jury) are entitled to know about it." Dkt. No. 75 at 4. NaphCare argues this

information is not relevant to punitive damages (Dkt. No. 65 at 14–15) but does not address whether this information is relevant to Tapia's *Monell* claim. *See* Dkt. No. 65 at 13–15.

The Court finds the information is relevant to Tapia's *Monell* claim because it goes to whether NaphCare has directed funds away from patient care, and as such, grants the motion to compel as to these discovery requests.

    3.    <u>The Court Grants Tapia's motion to compel discovery related to NaphCare's Budget.</u>

Tapia served amended RFP Nos. 25 and 26 seeking internal budgets for inmate health and mental health services and budget overages at the Pierce County Jail from 2013–2018. Dkt. No. 61-26 at 12–13. NaphCare objected to the RFPs on the basis that they were overbroad, unduly burdensome, and not relevant or proportional. *Id.* Additionally, NaphCare objected because NaphCare does not provide comprehensive mental health services at the Pierce County Jail. *Id.* NaphCare also objected to the extent the RFPs request documents or materials protected by privilege, though it did not identify whether any materials are being withheld on that basis. *Id.* NaphCare argues these RFPs "do not seek information relating to NaphCare limiting medical care during Tapia's incarcerations at the Jail; instead, they seek internal budgets for all care—including mental health care that NaphCare was not responsible for, provided to all inmates/patients—for five years prior to Tapia's incarceration." Dkt. No. 65 at 16.

Tapia argues this information is relevant to his *Monell* claim, which is based on the theory that NaphCare has a practice of limiting access to appropriate levels of care in order to save money. Dkt. No. 75 at 4. Tapia argues that to prove this theory, he needs to show it was demonstrated by repeated conduct, and that "[i]nternal budgets and budget overages are absolutely necessary to assess limitations regarding the care provided to patients and whether those limitations were based on financial (as opposed to medical) considerations." *Id.*

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S DISCOVERY MOTIONS - 14

The Court finds the information sought is relevant to Tapia's claim and that a five-year period is a reasonable timeframe. Tapia's motion to compel is granted with regard to these discovery requests.

4. <u>The Court grants in part and denies in part the motion to compel discovery related to NaphCare's history of inmate health treatment.</u>

NaphCare objected to Interrogatory No. 6 and RFP Nos. 20, 22, 23, and 24, which all seek information related to in-custody injuries and NaphCare's provision of treatment at the Pierce County Jail and other jail facilities in Washington. Dkt. No. 60 at 9; Dkt. No. 65 at 16. NaphCare objects to these discovery requests because they are "overbroad and burdensome concerning the timeframe and scope as they [seek] information … not related to the types of injuries at issue in this action[.]" Dkt. No. 65 at 17.

NaphCare asserts Tapia "has not explained why incidents unrelated to Tapia, at sites where Tapia was not incarcerated, which have different contracts and terms with different counties, have *any* bearing on the claims *in this case*." Dkt. No. 65 at 17–18. Tapia argues this information is essential to showing an established practice of providing inadequate care as part of his *Monell* claim. Dkt. No. 75 at 5. The Court largely agrees with Tapia.

As a general matter, other courts, including a court in this district, have concluded in similar cases that discovery pertaining to incidents concerning other individuals and occurring at other NaphCare facilities is appropriate. *See*, *e.g., Estate of Hill v. NaphCare, Inc.*, No. 2:20-CV-410-RMP, 2021 WL 8892195, at *1 (E.D. Wash. Aug. 30, 2021) (compelling discovery of "documents pertaining to complaints and concerns regarding alleged deficiencies in healthcare at the jail" not limited to care of decedent or patients like her); *Rapp v. NaphCare Inc*. No. 3:21-cv-05800-DGE, 2023 WL 372825, at *4 (W.D. Wash. Jan. 24, 2023) (permitting discovery of incidents at other NaphCare facilities). Similarly, numerous courts have found a five-year lookback period

reasonable in similar actions. *See Brown v. City of Alexandria*, No. 1:20-CV-00541, 2022 WL 951407, at *9 (W.D. La. Mar. 29, 2022) (allowing discovery of other complaints against police officers in the five-year period preceding the plaintiff's incident); *see also Curtin v. Cnty. of Orange*, No. SA CV 16-591-SVW (PLAx), 2017 WL 5593025, at *7 (C.D. Cal. Mar. 13, 2017) (where a defendant deputy allegedly sexually assaulted plaintiff, court permitted discovery of citizen complaints against all three responding non-defendant deputies for the period of five years prior to the date of the incident); *Goodin v. City of Glendora*, No. CV 17-3567-FMO (PLAx), 2017 WL 10560490, at *5 (C.D. Cal. Dec. 13, 2017) (where officers allegedly entered plaintiff's home without a valid warrant, court reduced scope of discovery of "all citizen complaint files regarding any alleged improper searches and seizures by the defendant officers" for the ten years preceding the incident down to five); *Reid v. Cumberland Cnty.*, 34 F. Supp. 3d 396, 415 (D.N.J. 2013) (where plaintiff claimed he was subjected to excessive force while incarcerated, court found plaintiff's request for five years of internal affairs documents relating to excessive force was not excessive or overbroad). Finally, Tapia cites precedent in the Ninth Circuit stating that "post-event evidence is not only admissible for the purposes of proving the existence of a municipal defendant's policy or custom, but may be highly probative with respect to that inquiry." *Henry v. Cnty. of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997), *opinion amended on denial of reh'g*, 137 F.3d 1372 (9th Cir. 1998).

With these general principles in mind, the Court turns to Tapia's specific requests.

Interrogatory No. 6 asks NaphCare to identify "all in-custody injuries related to an underlying physical or mental health treatment condition that resulted in permanent disability or death that have occurred at jail facilities in Washington where NaphCare provides services from 2013 … to present." Dkt. No. 61-17 at 10. RFP No. 6 seeks related documents. While the Court finds that the geographic scope and timeframe of Interrogatory No. 6 are reasonable, the Court

agrees with NaphCare that this request is vague and ambiguous insofar as the phrase "underlying physical or mental health treatment condition that resulted in permanent disability" is not defined.[9] As such, Tapia's motion is denied without prejudice with respect to Interrogatory No. 6 and RFP No. 6.

RFP No. 20 seeks all external audits of NaphCare's medical or mental health services conducted in Washington in the last ten years and related documents. Dkt. No. 61-17 at 30–31. RFP No. 22 seeks all documents related to investigations of allegedly inadequate medical care at the Pierce County Jail within the last ten years. *Id.* at 32. RFP Nos. 23 and 24 seek documents reflecting risk-management analysis and quality improvement programs for the Pierce County Jail for the past ten years. *Id.* at 33. Each of these requests seeks materials that pre-date Tapia's confinement by five years and extend to the present. The Court finds that these requests are reasonably tailored to lead to the discovery of admissible evidence. Tapia's motion to compel discovery is therefore granted with respect to these requests.

### III.  CONCLUSION

For the reasons stated above, Tapia's Motion to Overrule NaphCare Inc.'s Assertion of Privilege and Compel Deposition Testimony of Dr. Elliot Wade (Dkt. No. 59) is GRANTED. Accordingly, the Court directs the clerk to UNSEAL Dkt. No. 62-1.

Further, the Court GRANTS IN PART and DENIES IN PART Tapia's Motion to Compel Discovery (Dkt. No. 60) as follows:

---

[9] Additionally, NaphCare objected to Interrogatory No. 6 because the phrase "permanent disability" was vague and ambiguous. Dkt. No. 65 at 16. Tapia amended the request to incorporate a definition used by the Social Security Administration. Dkt. No. 61-26 at 7. NaphCare then objected because Tapia is not disabled under that definition. *Id.* Tapia reverts to the original form of the interrogatory in his motion. Dkt. No. 60 at 8.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S DISCOVERY MOTIONS - 17

(1) NaphCare is ORDERED to provide Tapia with full and complete responses to Interrogatory Nos. 1, 18, and 19, RFP Nos. 2, 5A, 23, 18, 19, 20, 22, 23, and 24, and amended RFP Nos. 25 and 26.

(2) Tapia's motion is DENIED without prejudice with regard to Interrogatory No. 6 and RFP No. 6.

(3) Any documents or information withheld from NaphCare's discovery responses on the basis of privilege must be identified in NaphCare's discovery responses and/or privilege log.

(4) All discovery subject to this order is to be produced no later than February 16, 2023.[10]

Dated this 17th day of January, 2024.

_____
Kymberly K. Evanson
United States District Judge

---

[10] Tapia's notice of supplementary evidence (Dkt. No. 76) was not relevant to the Court's analysis and was therefore not considered.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S DISCOVERY MOTIONS - 18