# EXHIBIT 25

# Rebuttal Report of
# Denise M. Panosky, DNP, RN, CNE, CCHP, FCNS

*Tapia v. Naphcare Inc., et al.*

This is my rebuttal to Registered Nurse Kathryn Wild's expert nursing report and opinions about the care of Mr. Javier Tapia, provided by nurses working in the Pierce County Jail, from June 16, 2018 through October 1, 2018.

Nurse Wild's Registered Nurse (RN) expert report may include facts of the case including nursing care and documentation, but there are many areas she disregards or does not opine about. She does not opine about the facts that Licensed Practical Nurses (LPNs) in Pierce County Jail are: working independently and outside their LPN nursing scope of practice; making independent decisions about patient care and treatment, performing RN duties; not following policies and procedures; and LPNs are not working under the supervision of a Registered Nurse or Licensed Physician as required by their LPN License. Examples include:

a. Independently and incorrectly completing COWS Assessments with no reporting to a Registered Nurse on June 16 – 19, 2018;
b. not calling or notifying a Registered Nurse or Physician to report patient symptoms and/or clinical findings of increasing withdrawal symptoms on 6-18-18;
c. not administrating medication as ordered on 6-19-18;
d. not calling or notifying a Registered Nurse or Physician to report patient symptoms and/or clinical findings of being nonresponsive and hypertensive on 9-19-18, with confusion, unable to verbally respond, was decompensated, and "way off his baseline" for the past 2 days;
e. not reporting refusals of care on 10-1-18;
f. making independent assessments and/or decisions regarding treatment plan(s) and care;
g. not referring Mr. Tapia to a medical provider; and
h. choosing <u>not</u> to send to the Emergency Department for medical care or evaluation.

Nurse Wild RN failed to specifically mention and/or include in her expert nursing report, during the June 2018 timeframe, that no calls or reports were made to RNs after COWS Scores were completed. There were no COWS data collection findings reported to RNs when it was documented Mr. Tapia's pulse was elevated and not scored correctly on the COWS Assessment at least 3 times, his O2 Sat was low at least 1 time, no COWS Assessments were completed at least 2 times, and COWS data was inaccurately or not collected at all.

Nurse Wild RN does not opine about the facts that Registered Nurses in Pierce County Jail are responsible for overseeing and/or for the direct clinical supervision of LPN staff. No RN ever saw Mr. Tapia for an assessment and/or to determine the appropriate treatment during the times the COWS Assessment were complete by LPNs. RNs are not following NaphCare's policies and procedures under their RN role and job description. On 9-29-18, there is no mention that the RN who saw Mr. Tapia did not complete a thorough nursing assessment when Mr. Tapia had an elevated pulse, and it was known that he was confused, unable to verbally respond,

1

decompensated, and "way off his baseline.". Nurse Wild RN never mentioned that a health provider was never notified of these symptoms or the condition of Mr. Tapia, and he was not sent for a medical evaluation at a higher level of care.

Nurse Wild RN lists and cites National Standards, Washington State Standards, and NaphCare Policy and Procedure in her report. Nurse Wild RN also mentions the statement made in the Deposition of Nurse Warren RN "…when Mr. Tapia was in the mental health housing unit, he was seen by a nurse on each shift to ensure he was OK, whether or not he was receiving medications." (Wild Expert Report, Pg. 19). There is no documentation that any Registered Nurse saw Mr. Tapia for any nursing assessment during the time he was in the mental health housing unit, and no documentation that any Registered Nurse saw Mr. Tapia for any nursing assessment for most of September 2018. Mr. Tapia was seen on 9-19-18 by Carrillo LPN, and "referred to medical due to being nonresponsive" but no Registered Nurse documented or followed up with Mr. Tapia for being nonresponsive or for his elevated Blood Pressure. These facts not discussed by Nurse Wild RN in her report and I do not agree Mr. Tapia was seen or assessed by a nurse each shift.

I do not agree that "Nursing personnel monitored Mr. Tapia…" (Wild Expert Report, Pg. 20) correctly, as his COWS Scores were scored incorrectly many times. It was never documented that LPN data collection of Mr. Tapia was reported to any RN. I also do not agree that Mr. Tapia was "offered mediation to relieve any symptoms as indicated in the Opiate Withdrawal Protocol". On 6-19-18, it was documented on the COWS Assessment under GI Upset that Mr. Tapia had "1 Stomach cramps". Mr. Tapia was administered PRN Motrin, but he was not given Aluminum-Magnesium PRN as ordered for GI Upset. The NaphCare Policy "Intoxication, Withdrawal, and Detoxification" Protocol was not followed and this standard was <u>not</u> met.

Nurse Wild RN discusses (Wild Expert Report, Pgs. 21-22) how NaphCare nursing staff performs in the jail, including "focused assessments". Under the Washington Nurse Practice Act for LPNs, LPNs must perform "under the direction of a licensed physician…acting under the scope of his or her license, or at the direction and under the supervision of a registered nurse…". It is also stated in the Registered Nurse and Licensed Practical Nurse, Scope of Practice, the distinction between the RN and LPN roles including "…an LPN's scope and practice to "perform a focused nursing assessment and re-assessment at the direction of the RN…". LPNs, including LPN Carrillo, are not working under the direction of physicians or nurses. They are acting independently by completing assessments and/or making independent treatment decisions without documenting and/or reporting data to a Registered Nurse as required by their LPN Practice Act. LPN Carrillo did not document he reported the data he collected on Mr. Tapia, including his condition and/or elevated BP, to any Registered Nurse or Physician, or ask for assistance with the assessment. There is a commonly used phrase in nursing, "If it is not documented, it is not done.". This certainly applies here as there is no documentation by LPN Carrillo that he reported the data collected, and no documentation by any RN or Physician about receiving a report about data collected. Mr. Tapia's elevated Blood Pressure was never evaluated or rechecked. The RN "retains the overall responsibility for verifying data collection, interpreting and analyzing data, and formulating nursing diagnoses." And this did <u>not</u> happen as Mr. Tapia was not seen or assessed by a RN, and he was never assessed, evaluated, or diagnosed by a medical healthcare provider at this time on 9-19-18. Licensed Practical Nurses are <u>not</u> working within their Scope of Practice as Nurse Wild RN states (Wild Expert Repot, Pg. 22).

2

Nurse Wild RN discusses Mr. Tapia's care by Nurse Warren on 9-29-18 (Wild Expert Report, Pgs. 22-23). Mr. Tapia needed a thorough nursing assessment at this time when it was clearly known and documented that Mr. Tapia was confused, unable to verbally respond, was decompensated, and "way off his baseline". Nurse Warren RN did not follow up on why his cell smelled of urine (Was he incontinent?), why a sheet was wrapped around his waist (Did he have any clothes on?), why he was confused and decompensated (No neurological assessment was completed.), and why his pulse was elevated. There is no thorough heart assessment as Nurse Wild RN has stated. Mr. Tapia's pulse was elevated and tachycardiac (Rate documented as 100). Nurse Warren RN did not notify a Physician of any of these findings or send Mr. Tapia for an evaluation this day. Mr. Tapia's care by Nurse Warren RN fell below what a reasonable and prudent nurse would do in the same or similar circumstances. I do not agree that Nurse Warren RN's care was "well within the standard of care and the RN's scope of practice" as Nurse Wild RN stated in her report (pg. 23).

Finally, on 10-1-19, Mr. Tapia was referred by Medical Director Balderrama and Nurse Hughes NP to Tacoma General Emergency Department for the medical care he needed. Mr. Tapia went almost 2 weeks without a medical assessment and/or medical evaluation by a medical healthcare provider. It was not until 10-1-19, **13 days later**, that Mr. Tapia was **finally** seen, assessed, and evaluated by a medical healthcare provider for his symptoms, and change in condition that began on 9-18-18.

Failure to cite specific actions and inactions of nurses and nursing care to substantiate Nurse Wild's RN broad statements leaves into question the validity of her opinions and/or statements. I do not agree with Nurse Wild's RN Summary of Opinions (Wild Expert Report, Pg. 26) specifically that nurses' actions "met the standard of care" and "are working within their scope of practice.". Nurse Wild RN does not provide specific opinions indicating how nurses followed through on their documentation, or lack of documentation, or assessments, or lack of thorough assessments. Nurse Wild RN does not address the inaccurate and missing information on COWS Assessments. Nurse Wild RN does not mention the medication that was not given as ordered. There is no mention about Licensed Practical Nurses working outside their LPN Nursing Scope of Practice. There is no mention that LPNs are working independently making decisions, or no decisions, about patient treatment and/or care. Registered Nurses are not following NaphCare Registered Nurse Performance Expectations (NCI 000054-55) specifically supervising Licensed Practical Nurses. Registered Nurses did not notify a Physician about Mr. Tapa's condition and did not send him to a higher level of care for at least 13 days, and this is not included in Nurse Wild's Expert Report. Nurse Wild RN states "NaphCare nursing personnel followed these policies as outlined", but Licensed Practical Nurses and Registered Nurses failed to follow policies, and fell below the Nursing Standard of Care. I disagree with Nurse Wild RN when she states "that NaphCare nursing personnel provided appropriate care and treatment to Mr. Tapia based on his presentation and the information he provided.

Healthcare is not to be left up to the patient, and nurses must assess and evaluate each and every patient they care for. Nursing Standards of Practice is the same in ALL environments. Nursing Care and Nursing Scope and Standards of Practice are the same in the jails, as in the community, as in a hospital, and in all settings. How the care is delivered may be slightly different, but patients

3

should receive the same standard of care no matter the setting they happen to be in. Nurses working in the Pierce County Jail, from June 16, 2018 through October 1, 2018, caring for Mr. Tapia failed to deliver the nursing standard of care he deserved. Nurses caring for Mr. Tapia fell below the nursing standard of care that is expected of a reasonable prudent nurse acting in the same or similar circumstances for all the reasons listed in the Complaint, and listed and rebutted above.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

*Denise M. Panosky*

Denise M. Panosky DNP, RN, CNE, CCHP, FCNS

April 27, 2024