THE HONORABLE KYMBERLY K. EVANSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAVIER TAPIA,

　　　　　　　Plaintiff,

　　v.

NAPHCARE, INC., and PIERCE
COUNTY,

　　　　　　　Defendants.

No. 2:22-cv-01141

DEFENDANT NAPHCARE, INC.'S
MOTION TO EXCLUDE PLAIN-
TIFF'S LIABILITY EXPERTS

NOTE ON MOTION CALENDAR:
MONDAY, JULY 8, 2024

**ORAL ARGUMENT REQUESTED**

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND ............................................................................................ 2

III.   TAPIA'S LIABILITY EXPERTS ................................................................. 3

      A.     Dr. Johnny Bates—Corrections Doctor ................................................. 3

      B.     Denise Panosky—Corrections Nurse ...................................................... 4

      C.     Dr. Daphne Glindmeyer—Forensic Psychiatrist ................................... 4

      D.     Dr. Juan Carlos Jimenez—Vascular Surgeon ....................................... 4

IV.   LEGAL STANDARD .................................................................................... 5

V.    ARGUMENT ................................................................................................. 5

      A.     The Court should exclude expert testimony that is unhelpful, irrelevant, and misleading. ........................................................................ 5

            1.     Tapia's expert testimony about NaphCare's official policies is unhelpful, irrelevant, and misleading. ....................... 6

            2.     Tapia's expert testimony about NaphCare's unofficial customs and practices is unhelpful, irrelevant, and misleading. ...................................................................................... 8

      B.     The Court should exclude any unreliable expert testimony ............... 12

      C.     The Court should exclude any testimony violating Rules 26 and 37 . 17

VI.   CONCLUSION ............................................................................................. 18

NAPHCARE'S MOTION TO EXCLUDE PLAINTIFF'S
LIABILITY EXPERTS (NO. 2:22-CV-01141) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allen v. Am. Cap. Ltd.*,
   287 F. Supp. 3d 763 (D. Ariz. 2017) ....................................................14

*Brumley v. Pfizer, Inc.*,
   200 F.R.D. 596 (S.D. Tex. 2001) ........................................................17

*Burghart v. S. Corr. Entity*,
   2023 WL 1766258 (W.D. Wash. Feb. 3, 2023) ...............................7, 9

*City of Canton v. Harris*,
   489 U.S. 378 (1989) ...............................................................................2

*City of Pomona v. SQM N. Am. Corp.*,
   750 F.3d 1036 (9th Cir. 2014) ..............................................................5

*City of Pomona v. SQM N. Am. Corp.*,
   866 F.3d 1060 (9th Cir. 2017) ..............................................................5

*Connick v. Thompson*,
   563 U.S. 51 (2011) .................................................................................8

*Daubert v. Merrell Dow Pharms., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) (*Daubert II*) ...................................passim

*Diviero v. Uniroyal Goodrich Tire Co.*,
   114 F.3d 851 (9th Cir. 1997) ..............................................................12

*Domingo ex rel. Domingo v. T.K.*,
   289 F.3d 600 (9th Cir. 2002) .......................................................10, 12

*Erwin v. OBI Seafoods, LLC*,
   2024 WL 553697 (W.D. Wash. Feb. 12, 2024) ...................................5

*Est. of W. Scott Creach v. Spokane County*,
   2013 WL 12177096 (E.D. Wash. Apr. 30, 2013) ..............................16

NAPHCARE'S MOTION TO EXCLUDE PLAINTIFF'S
LIABILITY EXPERTS (NO. 2:22-CV-01141) – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

# TABLE OF AUTHORITIES

2

3                                                                          **Page(s)**

4  *Gen. Elec. Co. v. Joiner*,
5        522 U.S. 136 (1997)................................................................................12

6  *Gordon v. Cnty. of Orange*,
7        6 F.4th 961 (9th Cir. 2021) ......................................................................8

8  *Innovative Sols. Int'l, Inc. v. Houlihan Trading Co.*,
       2023 WL 8019459 (W.D. Wash. Nov. 20, 2023)...................................13
9

10 *Kaseburg v. Port of Seattle*,
       2016 WL 4440959 (W.D. Wash. Aug. 23, 2016).................................16
11
   *Kesler v. Puget Sound & Pac. R.R.*,
12       2022 WL 298775 (W.D. Wash. Feb. 1, 2022)..............................5, 12

13 *Laux v. Mentor Worldwide, LLC*,
14       295 F. Supp. 3d 1094 (C.D. Cal. Nov. 8, 2017) ...............................12

15 *Liberty Life Ins. Co. v. Myers*,
16       2013 WL 524587 (D. Ariz. Feb. 11, 2013) .......................................6

17 *Lyons v. City of Chicago*,
18       2023 WL 2390364 (N.D. Ill. Mar. 7, 2023) .....................................6

19 *Microsoft Corp. v. Motorola, Inc.*,
       2013 WL 4008822 (W.D. Wash. Aug. 5, 2013)........................12, 15
20
   *Monell v. Department of Social Services of the City of New York*,
21       436 U.S. 658 (1978)..............................................................................1

22 *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
23       523 F.3d 1051 (9th Cir. 2008) ..........................................................16

24 *Stilwell v. Smith & Nephew, Inc.*,
25       482 F.3d 1187, 1192 (9th Cir. 2007) ..................................................9

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

2

# TABLE OF AUTHORITIES

3

**Page(s)**

4

*Trevino v. Gates,*
  99 F.3d 911 (9th Cir. 1996) ....................................................................9, 10, 11

5

6

*U.S. v. Brodie,*
  858 F.2d 492 (9th Cir. 1988) ..............................................................................16

7

8

*United States v. Duncan,*
  42 F.3d 97 (2d Cir. 1994) ...................................................................................15

9

10

*United States v. Frazier,*
  387 F.3d 1244 (11th Cir. 2004) ............................................................................1

11

12

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,*
  259 F.3d 1101 (9th Cir. 2001) ............................................................................17

13

S\ TATUTES

14

42 U.S.C. § 1983 .....................................................................................................passim

15

R\ ULES

16

Fed. R. Civ. P. 26 ............................................................................................3, 17, 18

17

Fed. R. Civ. P. 37 ............................................................................................3, 17, 18

18

Fed. R. Evid. 403 ...................................................................................................1, 5, 6

19

Fed. R. Evid. 702 .......................................................................................................1, 5

20

O\ THER A\ THORITIES

21

Fed. R. Evid. 702 Advisory Comm. Note to 2000 Amendments ...........................14

22

23

24

25

26

NAPHCARE'S MOTION TO EXCLUDE PLAINTIFF'S
LIABILITY EXPERTS (NO. 2:22-CV-01141) – iv

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

## I.    INTRODUCTION

2    As a pretrial detainee at Pierce County Jail, Plaintiff Javier Tapia developed

3 an extremely rare vascular condition: phlegmasia cerulea dolens ("PCD"). To save

4 his life, doctors at Tacoma General Hospital amputated his lower left leg. Tapia mar-

5 shals the testimony of several experts to try to explain when and why he developed

6 PCD. None of this testimony is admissible. These experts' conclusions are unrelia-

7 ble, often flatly contradictory, and based on nothing more than pure speculation. The

8 testimony is irrelevant, unhelpful, and misleading because Tapia has only one claim

9 against NaphCare, a municipal liability claim under 42 U.S.C. § 1983. There are no

10 claims against any individual NaphCare employee. Under the U.S. Supreme Court's

11 decision in *Monell v. Department of Social Services of the City of New York*,

12 NaphCare can be held liable only for its *own* corporate policies, customs, and prac-

13 tices that cause a constitutional violation. 436 U.S. 658, 691 (1978). NaphCare can-

14 not be held liable for the mistakes or the negligence of its employees.

15    Before admitting expert testimony into evidence, the Court must "perform a

16 'gatekeeping role'" of ensuring that the testimony is both "**relevant to the task at**

17 **hand**" and "**reliable**." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1313,

18 1316 (9th Cir. 1995) (*Daubert II*) (emphasis added); *see* Fed. R. Evid. 702. Expert

19 testimony that offers nothing but conclusory, legalistic, or unqualified opinions is

20 unreliable. Expert testimony that does not "advance[] a material aspect of the pro-

21 posing party's case" is not "helpful[]" and therefore should be excluded. *Daubert II*,

22 43 F.3d at 1315, 1320. Even if expert testimony is relevant or reliable, the Court

23 should nonetheless exclude the testimony if it could mislead or confuse the jury.

24 Fed. R. Evid. 403; *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004)

25 ("Because of the powerful and potentially misleading effect of expert evidence,

26 sometimes expert opinions that otherwise meet the admissibility requirements may

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    still be excluded by applying Rule 403." (citations omitted)). The Supreme Court

2    has expressed concern that municipalities—or in this case a corporate entity—will

3    be held vicariously liable for the mistakes of their employees. *City of Canton v. Har-*

4    *ris*, 489 U.S. 378, 392 (1989) ("In virtually every instance where a person has had

5    his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be

6    able to point to something the city could have done to prevent the unfortunate inci-

7    dent." (quotation marks omitted)). In the absence of any negligence claims against

8    NaphCare or NaphCare's employees, allowing Tapia's experts to opine about pur-

9    ported negligence committed by NaphCare's employees would invite the jury to im-

10    permissibly hold NaphCare responsible for those alleged mistakes.

## II.    BACKGROUND[1]

12         Tapia was incarcerated at the Pierce County Jail on June 16, 2018. After

13    throwing, in his own words, "a temper tantrum" because he wanted a visit from his

14    daughter, Pierce County transferred Tapia to a mental health observation unit on

15    September 17, 2018. Ex. 1 at 144:9-17.[2] It is not clear when Tapia developed PCD,

16    which is known for its rapid onset. But it is undisputed that Tapia never complained

17    about any foot pain during multiple visits from Pierce County and NaphCare em-

18    ployees in September 2018. Roughly 90 minutes after NaphCare employees learned

19    that Tapia's foot was discolored, Tapia was receiving care in Tacoma General Hos-

20    pital's emergency room. Tapia's condition declined significantly after his arrival at

21    the hospital, eventually necessitating a lower-leg amputation.

22         Tapia sued NaphCare and Pierce County. After years of litigation, Tapia has

23    only one claim remaining against NaphCare: a § 1983 claim for allegedly violating

---

[1] NaphCare has provided the Court with a fulsome factual background of the case in its motion for summary judgment. *See* Dkt. 100 at 3-12.

[2] All exhibits cited in this motion are attached to the Declaration of David A. Perez in Support of NaphCare's Motion to Exclude Plaintiff's Liability Experts.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

his Fourteenth Amendment rights to adequate medical care. During the course of discovery, NaphCare served Tapia with interrogatories and requests for production, seeking all information and documents supporting Tapia's claim that NaphCare has policies, customs, or practices that caused his alleged constitutional injury. Ex. 2, Interrogatories 1-3 ("Describe in detail all policies [practices and customs] You contend NaphCare implemented to limit access to appropriate levels of care …."). None of Tapia's responses identified any specific official policy on NaphCare's books that caused him any harm. *Id.*, Answers to Interrogatories 1-3. Tapia's responses suggested that his experts would identify widespread customs and practices that caused his alleged constitutional violation. *Id.*

Tapia disclosed four liability or causation experts. After Tapia served his expert reports, NaphCare deposed each expert. The depositions confirmed Tapia does not have any evidence to support a constitutional claim against NaphCare. Nevertheless, in violation of Federal Rules of Civil Procedure ("Rules") 26 and 37, Tapia served rebuttal reports from the experts with new opinions that, in some cases, flatly contradicted the experts' testimony provided under oath during their depositions.

### III.    TAPIA'S LIABILITY EXPERTS

Tapia has identified the following liability experts.

#### A.    Dr. Johnny Bates—Corrections Doctor

Dr. Bates is a disgruntled former NaphCare employee who owns and operates a small correctional healthcare company, Quality Correctional Health Care. Dr. Bates opines in his report that LPN Cameron Carrillo acted outside of his scope of practice on September 19, 2018, and that NaphCare had policies and established practices that caused Tapia's medical condition to slip through the cracks. Ex. 3 at 5, 8-9. However, at his deposition, Dr. Bates admitted that (i) LPN Carrillo acted within his scope of practice when interacting with Tapia on September 19, 2018, (ii)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

he is not aware of any NaphCare policies that allowed Tapia's medical condition to slip through the cracks, and (iii) his opinion that there are established practices is based entirely on Tapia's care alone. Ex. 4 at 111:6-112:6, 182:1-6, 183:16-184:16.

**B.    Denise Panosky—Corrections Nurse**

Nurse Panosky opines in her report that NaphCare has a custom and established practice of permitting LPNs to practice outside of their scope of practice, LPN Carrillo practiced outside of his scope of practice on September 19, 2018, and LPN Carrillo and RN Elizabeth Warren failed to meet the standard of care when interacting with Tapia on September 19 and September 29, 2018, respectively. Nurse Panosky admitted during her deposition that (i) NaphCare had adequate policies in place during Tapia's incarceration and (ii) LPN Carrillo acted within his scope of practice on September 19, 2018. Ex. 5 at 77:17-21, 138:19-139:3. Nurse Panosky also admitted that she was assuming the role of a juror by weighing the evidence and deciding what factual information to credit. *Id.* at 66:9-20.

**C.    Dr. Daphne Glindmeyer—Forensic Psychiatrist**

Dr. Glindmeyer's opinions are directed almost entirely at Pierce County, not NaphCare. In her report, Dr. Glindmeyer does not identify a single alleged NaphCare policy, established practice, or custom that is deficient. Nor did she identify any such alleged policy during her deposition.

**D.    Dr. Juan Carlos Jimenez—Vascular Surgeon**

Dr. Jimenez opines in his report that a delay in diagnosis of Tapia's alleged DVT and PCD led to Tapia's amputation, Tapia's alleged acute mental status changes in September 2018 were caused by systematic manifestations related to his DVT or PCD, and Tapia experienced profound pain and suffering while incarcerated. In his report, Dr. Jimenez does not identify a single alleged NaphCare policy, established practice, or custom that is deficient, nor did he identify any such alleged

NAPHCARE'S MOTION TO EXCLUDE PLAINTIFF'S
LIABILITY EXPERTS (NO. 2:22-CV-01141) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

policy during his deposition. Dr. Jimenez acknowledged that he is "not a logistics expert in the jails," he does not "work in corrections," and he is "not familiar with the details of the protocol[s]" for healthcare in a jail setting. Ex. 6 at 83:6-9. Because Dr. Jimenez's testimony does not advance any material fact, it is unhelpful and misleading and should be excluded.

## IV.    LEGAL STANDARD

"Before admitting expert testimony into evidence," the Court "must perform a gatekeeping role of ensuring that the testimony is both relevant and reliable" under *Daubert* and Federal Rule of Evidence 702. *Erwin v. OBI Seafoods, LLC*, 2024 WL 553697, at *1 (W.D. Wash. Feb. 12, 2024) (cleaned up); *see City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1069 (9th Cir. 2017) (holding that the admission of an expert's testimony without making "any findings regarding the efficacy of [the expert's] opinions constituted an abdication of the district court's gatekeeping role, and necessarily an abuse of discretion"). Even expert testimony that is both reliable and relevant is nonetheless inadmissible where its negligible probative value is substantially outweighed by the danger of unfair prejudice and juror confusion. Fed. R. Evid. 403. "The party offering expert testimony bears the burden of establishing its reliability and admissibility." *Kesler v. Puget Sound & Pac. R.R.*, 2022 WL 298775, at *1 (W.D. Wash. Feb. 1, 2022).

## V.    ARGUMENT

### A.    The Court should exclude expert testimony that is unhelpful, irrelevant, and misleading.

Expert testimony is inadmissible unless it will "help the trier of fact to understand the evidence or to determine a fact in issue." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014). The Court should exclude evidence that does not "logically advance[] *a material* aspect of the proposing party's case."

NAPHCARE'S MOTION TO EXCLUDE PLAINTIFF'S
LIABILITY EXPERTS (NO. 2:22-CV-01141) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    *Liberty Life Ins. Co. v. Myers*, 2013 WL 524587, at *2 (D. Ariz. Feb. 11, 2013)

2    (emphasis added).

3        In the *Monell* context, there is a serious risk that juries will hold municipal

4    and corporate entities liable for the mistakes of their employees—even though this

5    is forbidden by § 1983 and Supreme Court precedent. *See, e.g.*, *Lyons v. City of*

6    *Chicago*, 2023 WL 2390364, at *3 (N.D. Ill. Mar. 7, 2023). Testimony that is rele-

7    vant is nonetheless inadmissible where its negligible probative value is substantially

8    outweighed by the danger of unfair prejudice and juror confusion. Fed. R. Evid. 403.

9    Tapia's experts testify about NaphCare employees' alleged negligence even though

10   **there is no negligence claim against NaphCare or any NaphCare employee.** This

11   testimony is substantially likely to confuse or mislead a jury.

12        1.    *Tapia's expert testimony about NaphCare's official policies is*
              *unhelpful, irrelevant, and misleading.*

13

14   Tapia alleges in his Second Amended Complaint (SAC) that "NaphCare [is]

15   liable under 42 U.S.C. § 1983 for violating Plaintiff's rights under the Fourteenth

16   Amendment by maintaining unconstitutional policies ... that resulted in the denial of

17   Javier's constitutional right to adequate medical care and treatment and subjected

18   him to inhumane conditions of confinement." Dkt. 18-1 ¶ 75. Tapia has not, how-

19   ever, identified a single official NaphCare "policy" on the books that allegedly re-

20   sulted in the denial of his constitutional right to healthcare. This is not surprising.

21   Tapia's own experts have confirmed, or have not disputed, that NaphCare did not

22   have any such policies.

23   ➢    **Dr. Bates**—Dr. Bates opined in his report that the medical record is

24   "replete with policies ... that caused Mr. Tapia's obvious and serious medical condi-

25   tion to slip through the cracks ...." Ex. 3 at 8. When pressed about this opinion during

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  his deposition, Dr. Bates acknowledged that he was referring to "established prac-

2  tices," not official policies:

3           Q.    So with that in mind, let me ask

4     my question.  Are you aware of any of

5     NaphCare's policies that caused Mr. Tapia's

6     alleged obvious and serious medical condition

7     to slip through the cracks?

          A.    No.

8  Ex. 4 at 182:1-6. In fact, when Dr. Bates was directly asked whether he took issue

9  with Dr. Peter Crum's[3] opinion that NaphCare had policies in place in 2018 that

10  provided inmates access to care and identified appropriate assessments for RNs and

11  LPNs, Dr. Bates responded "**not really, no**." *Id.* at 301:21-302:5. Thus, Dr. Bates

12  concedes that NaphCare did not have any constitutionally deficient policies relevant

13  to this case.

14      ➢    **Nurse Panosky**—Nurse Panosky does not opine in her report or her

15  rebuttal report that NaphCare had constitutionally deficient policies. *See generally*

16  Exs. 7, 8. Nurse Panosky testified during her deposition that she has no opinion re-

17  garding whether NaphCare's policies encouraged profits over care. Ex. 5 at 137:22-

18  24. In fact, during her deposition, Nurse Panosky confirmed that her opinion is that

19  **NaphCare had adequate policies in place**, but that she believes NaphCare employ-

20  ees did not follow NaphCare's policies when interacting with Tapia. *Id.* at 47:7-20.

21  In other words, Nurse Panosky accuses NaphCare employees of *negligence*. But as

22  discussed, under *Monell*, NaphCare cannot be held liable for the mistakes or negli-

23  gence of its employees. *See Burghart v. S. Corr. Entity*, 2023 WL 1766258, at *4

24  (W.D. Wash. Feb. 3, 2023). Nurse Panosky's testimony about NaphCare employees'

25  alleged negligence is likely to mislead or confuse the jury.

26  _____

[3] Dr. Crum has been disclosed as one of NaphCare's experts in this case.

NAPHCARE'S MOTION TO EXCLUDE PLAINTIFF'S
LIABILITY EXPERTS (NO. 2:22-CV-01141) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

➢ **Dr. Glindmeyer**—Dr. Glindmeyer does not identify a single alleged NaphCare policy in her report that is deficient, nor did she identify any such alleged policy during her deposition. She did not attempt to identify any widespread pattern or practice when formulating her conclusions.

> Q. Phrasing it another way: Did you rely on any information about treatment of any other inmates at the Pierce County Jail when reaching the conclusions in your report?
>
> A. No.

Ex. 9 at 84:19-23.

➢ **Dr. Jimenez**—Dr. Jimenez does not identify a single alleged NaphCare policy in his report that is deficient, nor did he identify any such alleged policy during his deposition. Dr. Jimenez acknowledged that he is "not a logistics expert in the jails," he does not "work in corrections," and he is "not familiar with the details of the protocol[s]" for healthcare in a jail setting. Ex. 6 at 83:6-9.

**2.** *Tapia's expert testimony about NaphCare's unofficial customs and practices is unhelpful, irrelevant, and misleading.*

Tapia argues in his SAC that "NaphCare [is] liable under 42 U.S.C. § 1983 for violating Plaintiff's rights under the Fourteenth Amendment by maintaining unconstitutional ... practices[] and customs that resulted in the denial of Javier's constitutional right to adequate medical care and treatment." Dkt. 18-1 ¶ 75. When a plaintiff alleges that an entity has adopted a "practice or custom" that constitutes a de facto, unwritten policy, the plaintiff must show that the practice is "so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021). "Liability for [an] improper custom may not be predicated on isolated or sporadic

1  incidents; it must be founded upon practices of sufficient duration, frequency and

2  consistency that the conduct has become a traditional method of carrying out pol-

3  icy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). "As such, courts routinely

4  dismiss § 1983 claims against employers where plaintiffs allege only incidents of

5  employee negligence or misconduct." *Burghart*, 2023 WL 1766258, at *4.

6         The Court should not consider any testimony from Tapia's experts regarding

7  Tapia's allegation of "established practices" or "customs" because Tapia's experts

8  rely solely on Tapia's care. This testimony is patently insufficient to advance any

9  material fact, so it is "unhelpful" and, therefore, inadmissible. *Stilwell v. Smith &*

10 *Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007). Such testimony is misleading

11 and confusing to a jury. Even assuming it is relevant, the Court should exclude it.

12        ➢    **Dr. Bates**—Dr. Bates opines in his report that "[t]he medical record is

13 replete with ... established practices that caused Mr. Tapia's obvious and serious

14 medical condition to slip through the cracks ...." Ex. 3 at 8. Dr. Bates defined "es-

15 tablished practices" as "something you repeatedly did in a certain way." Ex. 4 at

16 183:9-15. Dr. Bates bases his "established practices" theory solely on Tapia's care:

17

18          Q.    Other than NaphCare's treatment of

19   Tapia, can you point to any other inmates that

     you considered in coming up with this

20   established practice?

21          A.    No, I was referring primarily to

     Tapia in this case.

22          Q.    So your statement about the

23   established practices are focused primarily on

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

LPN Carrillo's and Nurse Warren's treatment of
Tapia on the 19th and the 29th of September?

    A.    And the mental health.

    Q.    Well, I want to back up here.  I
am not talking about mental health right now.
Mental health is the County.  NaphCare is the
medical.  So other than NaphCare's medical
treatment of Tapia on September 19th and
September 29th, are you aware of any other
facts or practices that are helping you define
this established practice?

    A.    No.

    Q.    Put a different way, it is only
the treatment of Tapia on the 19th and 29th?

    A.    That's all these records pertain
to, yes.

*Id.* at 183:16-184:16. This opinion is wholly insufficient to meet the standards of showing "practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918.[4]

    ➢   **Nurse Panosky**—Nurse Panosky claims in her report that "NaphCare had a custom and established practice of requiring LPNs to work outside of their nursing scope of practice by independently completing assessments …." Ex. 7 at 13. Nurse Panosky defined "custom or established practices" as "something that nurses, the LPNs specifically, are doing over and over again by not reporting things to their

---

[4] Dr. Bates also makes the unsupported claim that NaphCare's treatment of Tapia is evidence of a prior custom or practice because things "don't happen in solitude." Ex. 4 at 188:7-189:18. But this *ipse dixit* argument is exactly the type of testimony that is routinely excluded as unreliable. *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

RN supervisors." Ex. 5 at 48:10-19. But Nurse Panosky bases her "custom and established practices" theory solely on Tapia's care:

> Q    And this is all based on your review of
> Mr. Tapia's records, right?
>      A    This is based on this review right here, yes.
>      Q    Are you aware of any other inmates upon which
> LPNs have acted outside of their scope of practice at
> Pierce County?
>      A    I -- I'm sorry, I interrupted.  I didn't hear
> the last part of that.
>      Q    Are you aware of any inmates that LPNs have
> acted outside of their scope of practice while treating
> those inmates at the Pierce County jail?
>      A    I know that there -- I don't have names of
> people that have done that at the Pierce County jail.

*Id.* at 51:25-52:12. This opinion is wholly insufficient to establish a practice or custom. *Trevino*, 99 F.3d at 918. And it is likely to confuse or mislead a jury.

➤    **Dr. Glindmeyer**—Dr. Glindmeyer does not identify any potential NaphCare established practices or customs in her report that resulted in the denial of Tapia's constitutional right to adequate medical care and treatment and subjected him to inhumane conditions of confinement. Accordingly, Dr. Glindmeyer cannot offer any testimony regarding this topic.

➤    **Dr. Jimenez**—Dr. Jimenez does not identify any potential NaphCare established practices or customs in his report that resulted in the denial of Tapia's constitutional right to adequate medical care and treatment and subjected him to inhumane conditions of confinement. Accordingly, Dr. Jimenez cannot offer any testimony regarding this topic.

NAPHCARE'S MOTION TO EXCLUDE PLAINTIFF'S
LIABILITY EXPERTS (NO. 2:22-CV-01141) – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

* * *

The Court should take Tapia's experts at their word, and Tapia's experts should be precluded from offering any testimony regarding NaphCare maintaining any alleged constitutionally deficient policy, custom, or practice. Even assuming the testimony is relevant or reliable, it would invite a jury to impermissibly hold NaphCare vicariously liable for alleged (and wholly unsubstantiated) employee negligence.

**B.    The Court should exclude any unreliable expert testimony.**

Expert testimony is not reliable when it consists of "unsubstantiated speculation and subjective beliefs." *Kesler*, 2022 WL 298775, at *1 (citing *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997)); "[A]n expert must explain the methodology and principles supporting the opinion and the opinion must amount to more than a bottom line." *Microsoft Corp. v. Motorola, Inc.*, 2013 WL 4008822, at *6 (W.D. Wash. Aug. 5, 2013) (quotation marks omitted). "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Domingo*, 289 F.3d at 607 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see Laux v. Mentor Worldwide, LLC*, 295 F. Supp. 3d 1094, 1102–03 (C.D. Cal. Nov. 8, 2017) (excluding a medical expert from providing his opinion where his expert report failed to explain his methodology and was based simply on the medical doctor's "because I said so" opinion, without facts, data, or reliable principles and methods to support the conclusion).

➢    **Dr. Jimenez**—Dr. Jimenez's report consists of a brief case summary followed by three "professional opinions" that are completely unsubstantiated by any medical reasoning and that suddenly and suspiciously change font. The Court should exclude this report as unreliable. Experts must "explain precisely how they

went about reaching their conclusions and point to some objective source." *Innovative Sols. Int'l, Inc. v. Houlihan Trading Co.*, 2023 WL 8019459, at *2 (W.D. Wash. Nov. 20, 2023) (quoting *Daubert II*, 43 F.3d at 1319). A court may not simply "tak[e] the expert's word for it." *Id.*; *see Daubert II*, 43 F.3d at 1319 ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough.").

During his deposition, Dr. Jimenez opined—based on nothing but his own experience—that Tapia's PCD caused mental changes in Tapia in the days prior to Tapia's hospitalization, statements in direct contradiction of another of Plaintiff's experts. *See* Ex. 4 at 59:23-61:23. None of this testimony was disclosed in Dr. Jimenez's report. And the experiences Dr. Jimenez described during his deposition are extremely dissimilar to Tapia's case.

> How many patients have you treated in your career who had DVT who were unable to verbalize that they were in pain if they were, in fact, having pain?
>
> A    I would say hundreds.
>
> Q    Okay.  Can you tell me about some of those patients?
>
> A    Well, most of those patients are intubated or sedated in a hospital on a ventilator, and you know, a nurse or a resident or a provider notices that a patient's leg is swollen, leg is discolored. You get an ultrasound.  It confirms -- it confirms a DVT, and then the patient is anticoagulated.

Ex. 6 at 119:10-22.

NAPHCARE'S MOTION TO EXCLUDE PLAINTIFF'S
LIABILITY EXPERTS (NO. 2:22-CV-01141) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   When an expert relies "solely or primarily on [his or her own] experience,

2   then the witness must explain how that experience leads to the conclusion reached,

3   why that experience is a sufficient basis for the opinion, and how that experience is

4   reliably applied to the facts." Fed. R. Evid. 702 advisory comm. notes to 2000

5   amendment. Dr. Jimenez failed to adequately explain how his conclusions were sup-

6   ported, either by his own experiences or the medical literature.

7   ➢   **Nurse Panosky**—Inexplicably, Nurse Panosky based her conclusions

8   about the standard of care on *California law*.

9
10
11          THE WITNESS:  Under the word
12   Assessment under the law, under the California
13   statute, under Standard 1.a, Assessment, the
14   licensed practical nurse makes basic
15   observations, gathers data and assists in
16   identification of needs and problems relevant
17   to the client, collects specific data as
18   directed and communicates outcome of the data
19   collection process in a timely fashion to the
20   appropriate supervising person.  That is what
     is listed for what an LPN can do.

     BY MR. DEAN:
          Q    That was for California?
          A    Yes.

21

22   Ex. 5 at 79:10-23. The events of this case took place in *Washington*. The Court

23   should exclude an expert's testimony about the standard of care when it conflicts

24   with local law. *See Allen v. Am. Cap. Ltd.*, 287 F. Supp. 3d 763, 802 (D. Ariz. 2017).

25   Nurse Panosky's testimony does just that—it is in direct contrast to an advisory

26   opinion issued by the Washington State Board of Nursing.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Nurse Panosky's testimony also weighs the evidence—impermissibly assum-

2  ing the role of the jury. Nurse Panosky claims that a head-to-toe exam should have

3  been performed on Tapia on September 19, 2018, because Tapia was nonresponsive.

4  But Nurse Panosky discounts NaphCare's progress notes and LPN Carrillo's depo-

5  sition testimony confirming that Tapia *was* responsive on September 19, 2018.

6  Nurse Panosky's unsubstantiated view must be that LPN Carrillo was lying when,

7  under oath, he testified that Tapia was responsive. *See* Ex. 5 at 58:17-23, 60:8-9,

8  60:23-61:2, 61:7-9, 63:25-65:11, 66:2-68:23, 76:3-8, 83:2-24.

9

10       Q     Marked as Exhibit 154 is a copy of NaphCare's
         notes.  If you go to Cameron Carrillo on 9/19, you look,
11       it's highlighted.  It says, States he does not have any
         medical concern at this time, but is upset about being in
12       3SC.  Do you see that?
13       A     Yes.
14       Q     Where is that in your report?
15       A     That's not written in my report.
16       Q     Why is that not written in your report?
17       A     Because I don't understand how, if somebody's
         nonresponsive, they can state something.  Those two don't
18       go hand-in-hand.

19

20  *Id.* at 66:9-20. "When an expert undertakes to tell the jury what result to reach, this

21  does not aid the jury in making a decision, but rather attempts to substitute the ex-

22  pert's judgment for the jury's." *United States v. Duncan,* 42 F.3d 97, 101 (2d Cir.

23  1994); *see Microsoft Corp.*, 2013 WL 4008822, at *10.

24    Finally, Nurse Panosky must be barred from opining "if it wasn't documented,

25  it wasn't done" or the like. *See* Ex. 5 at 103:21-22; Ex. 8 at 2. The statement is an

26  incorrect statement of the law of evidence and invades the province of the Court to

NAPHCARE'S MOTION TO EXCLUDE PLAINTIFF'S
LIABILITY EXPERTS (NO. 2:22-CV-01141) – 15

1  instruct the jury regarding presumptions and the rules of evidence. *See Kaseburg v.*

2  *Port of Seattle*, 2016 WL 4440959, at *9 (W.D. Wash. Aug. 23, 2016) (citing *Na-*

3  *tionwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-59 (9th Cir.

4  2008)). Therefore, it is "not only superfluous but also mischievous." *Nationwide*

5  *Transp. Fin.*, 523 F.3d at 1059 (quoting *U.S. v. Brodie*, 858 F.2d 492, 497 (9th Cir.

6  1988)).

7  ➢ **Dr. Bates**—By his own admission, Dr. Bates has never encountered

8  PCD.

9      Q.    So you have never seen PCD prior

10  to Mr. Tapia's case?

11      A.    That's correct.

12

13  Ex. 4 at 15:9-11. He is not an expert on the subject, as NaphCare's vascular expert

14  explained in his rebuttal report. Ex. 10 at 4 ("In my opinion, Dr. Bates is not qualified

15  to comment on PCD…. [H]e does not know what he is talking about when it comes

16  to managing patients with PCD."). Insofar as an expert "testif[ies] on matters for

17  which he is not qualified," the testimony should be excluded. *Est. of W. Scott Creach*

18  *v. Spokane County*, 2013 WL 12177096, at *3 (E.D. Wash. Apr. 30, 2013).

19      Like Nurse Panosky, he must also be barred from invading the Court's role

20  and testifying that "if it is not documented, it didn't happen." Ex. 11 at 3. The state-

21  ment will only confuse a jury regarding what presumptions they may make as it is

22  an incorrect statement regarding the rules of evidence and the burden of produc-

23  tion—both of which only the Court should instruct the jury. *See Nationwide Transp.*

24  *Fin.*, 523 F.3d at 1058-59.

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## C.  The Court should exclude any testimony violating Rules 26 and 37.

Under Rules 26(a)(2)(B) and 37(c)(1), the Court should exclude expert testimony disclosed after the Court's scheduling order deadline when the testimony "goes beyond the opinions stated in [an expert's initial] Rule 26 report." *Brumley v. Pfizer, Inc.*, 200 F.R.D. 596, 597 (S.D. Tex. 2001). Courts have excluded such testimony even "when a litigant's entire cause of action or defense has been precluded" as a result. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

➤  **Dr. Bates**—Dr. Bates initially opined that NaphCare had an established practice of "[a]llowing LPNs to act outside of their scope of practice by conducting medical evaluations without adequate supervision." Ex. 3 at 9. Dr. Bates ***retracted key assertions*** when pressed during his deposition. For example, he conceded that LPN Carrillo acted within his scope of practice when saw Tapia on September 19, 2018.

```
        Q.   So you would agree with me that
Mr. Tapia -- or Mr. Carrillo was acting within
his scope of practice when he went to go see
Mr. Tapia and then he reported it to the clinic
RN, correct?
        A.   In this --
             MS. SEBREN:  Object to the form.
        A.   In this regard, yes.

    ...
```

NAPHCARE'S MOTION TO EXCLUDE PLAINTIFF'S
LIABILITY EXPERTS (NO. 2:22-CV-01141) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1                             Your statement or your testimony

2    is essentially that even though LPN Carrillo

3    acted within the scope as an LPN, he was

4    negligent in how he performed the exam of

5    Mr. -- or assessment of Mr. Tapia, correct?

                   A.    Correct.

6                       Q.    And, again, even though Mr.

7    Tapia -- or Mr. Carrillo was acting within his

8    scope and reporting his findings to the clinic

9    RN, you believe the clinic RN was negligent in

10   not doing anything further?

                   A.    That's correct.

11   Ex. 4 at 111:6-112:6.

12          Recognizing that this testimony is fatal to Tapia's claim, Dr. Bates later sub-

13   mitted a rebuttal report that appears to try and unwind **his sworn deposition testi-**

14   **mony confirming LPN Carrillo acted within his scope of practice when inter-**

15   **acting with Tapia on September 19, 2018**. Essentially, Dr. Bates now takes the

16   position that LPN Carrillo did not act within his scope of practice because "if it is

17   not documented, it didn't happen." Ex. 11 at 3. Such flip-flopping is the hallmark of

18   unreliability. Dr. Bates conceded that NaphCare's employees acted within their

19   scope of practice when interacting with Tapia and should not be allowed to testify

20   otherwise.

21                               **VI.    CONCLUSION**

22          The Court should exclude Tapia's expert testimony as irrelevant, unreliable,

23   and misleading to the extent that Tapia seeks to use the testimony to establish

24   NaphCare's liability under § 1983. To the extent that Tapia's experts violated the

25   Court's scheduling order, the Court should exclude the testimony under Rules 26

26   and 37.

NAPHCARE'S MOTION TO EXCLUDE PLAINTIFF'S
LIABILITY EXPERTS (NO. 2:22-CV-01141) – 18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    RESPECTFULLY SUBMITTED this 10th day of June, 2024.

2

3    I certify that this memorandum con-
tains 4,200 words, in compliance with
the Local Civil Rules.

                 *s/ David A. Perez*

4                     David A. Perez, WSBA No. 43959
Juliana Bennington, WSBA No. 60357
**Perkins Coie LLP**

5                     1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099

6                     Telephone: 206.359.8000
Facsimile: 206.359.9000
Email:  Dperez@perkinscoie.com

7                              JBennington@perkinscoie.com

8                     Jacob Dean *(Admitted Pro Hac Vice)*
**Perkins Coie LLP**

9                     1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721

10                   Telephone: 310.788.3365
Facsimile: 310.788.3399

11                   Email: JacobDean@perkinscoie.com

12

13                   *Attorneys for Defendant NaphCare,
Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26