1

2

3

4

5                                                                    U.S. District Judge Kymberly K. Evanson

6                                  UNITED STATES DISTRICT COURT
                            FOR THE WESTERN DISTRICT OF WASHINGTON
7                                             AT SEATTLE

8    JAVIER TAPIA,

9                                                      NO.  2:22-cv-01141-KKE
                                          Plaintiff,

10           vs.

11                                                     DEFENDANT PIERCE COUNTY'S
     NAPHCARE, INC., an Alabama Corporation;          MOTION FOR SUMMARY JUDGMENT
12   PIERCE COUNTY, a political subdivision of
     the State of Washington,                         NOTED DATE FOR CONSIDERATION:
13                                                     MONDAY, DECEMBER 23, 2024

14                                      Defendants.    **ORAL ARGUMENT REQUESTED**

15                            I.      **INTRODUCTION**

16           Plaintiff Javier Tapia was booked into Pierce County Jail on June 16, 2018.  Dkt. 18-1 at

17   4.  Tapia alleges negligence, gross negligence, medical negligence, and violation of his Fourteenth

18   Amendment rights by maintaining unconstitutional policies, practices and customs that resulted in

19   the denial of his constitutional right to adequate medical care and treatment against Defendant

20   Pierce County.  Tapia's claims arise from his diagnosis of Phlegmesia Cerula Dolens, and the

21   subsequent amputation of his lower leg below the knee.

22                          II.      **STATEMENT OF THE CASE**

23   **A.  FACTUAL BACKGROUND**

24           Beginning in September 2018, Tapia had three different reports documenting behavioral

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 1
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main:  (253) 798-6732 / Fax:  (253) 798-6713

incidents.  Cowger Dec. Ex. 1, Tapia Dep., Ex. 125 at 000043-000044.  Tapia was moved to a different housing unit in the jail at his request on September 16, 2018.  *Id.* at 000050.  On September 17, 2018, Tapia was observed by Corrections staff getting off his bunk and rolling and flailing around on the floor of his cell.  *Id.* at 000049.  In his own deposition Tapia described this as a tantrum.  Ex. 1, Tapia Dep. 176:14-177:8.  Following that encounter, the next day, September 18, 2018, Mental Health Provider and Pierce County employee Darren Nealis attempted an evaluation, observed Tapia walking in his cell, and Tapia was able to meet Nealis at the cell door.  Cowger Dec. Ex. 2, Carrillo Dep., Ex. 1 at 000224-000225.  The following day, September 19, Nealis again contacted Tapia, at which time Nealis referred Tapia to NaphCare medical staff for a medical assessment.  *Id.*

Tapia was seen by NaphCare employee and Licensed Practical Nurse Cameron Carrillo roughly an hour after referral by Nealis.  *Id.*  Tapia "did not appear in distress" and stated he "did not have any medical concern."  *Id.*  In his deposition, Carrillo described verbal interaction with Tapia and explained that Tapia described his frustration about his restrictive housing.  Ex. 2, Carrillo Dep. 28:4-29:13.  This assessment was documented within Tapia's medical chart, used by both medical and mental health staff.  *Id.* Ex. 1 at 000224.

Pierce County Mental Health Providers Duane Prather, Darren Nealis and Jesus Perez attempted mental health evaluations of Tapia on September 20, September 26, and September 28, 2018.  *Id.* at 000223-000224.  Tapia did not notify Prather, Nealis, or Perez on those dates that he was in pain, or that he needed medical attention.  *Id.*  Additionally, he was not noted to be exhibiting any symptoms of being in pain.  *Id.*  On September 29, 2018, NaphCare employee Elizabeth Warren assessed Tapia and took his vitals.  *Id.* at 000223.  It was again a Pierce County employee, this time a corrections Sergeant, that requested NaphCare medical staff examine Tapia.  *Id.*  His vitals were unremarkable, he accepted a nutrition drink, and she observed him drinking

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 2
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main:  (253) 798-6732 / Fax:  (253) 798-6713

1  some of it.  *Id.*  The behavior logs indicate that Tapia was accepting some meals, which required

2  Tapia to walk across the cell to the cuff port.  He appeared up and walking on September 29, 2018.

3  Cowger Dec. Ex. 1, Tapia Dep., Ex. 125 at 000042; Dkt. 101-26.

4      Tapia did not notify any Pierce County or NaphCare employee of his blood clot, of pain,

5  or of any issues with his leg until October 1, 2018, when a NaphCare nurse was again requested

6  to check on Tapia by a Corrections Deputy, after the Deputy noticed Tapia's toes were discolored.

7  Cowger Dec. Ex. 2, Carrillo Dep., Ex. 1 at 000223.  Following this initial notice of Tapia's

8  condition by a Pierce County employee, he was immediately seen by a NaphCare nurse, and then

9  sent immediately to the Tacoma General Hospital Emergency Room for treatment.  *Id.*

10     Upon arriving at Tacoma General Hospital, about 90 minutes after corrections staff first

11  noticed discoloration in his foot, he was able to communicate with doctors and relayed that he just

12  notified jail staff that day of his foot pain.  Cowger Dec. Ex. 3, Garcia Dep., Ex. 116 at 000089.

13  Tapia was subsequently diagnosed with Phlegmesia Cerula Dolens ("PCD").  *Id*. at 000091.  PCD

14  is extremely rare "condition that is caused by complete or near complete occlusion of all the veins

15  of an extremity," and only seen by experienced vascular surgeons a handful of times during their

16  careers.  Cowger Dec. Ex. 9, Jimenez Dep. 26:19-25.

17     After evaluation at Tacoma General Hospital, Tapia's doctors indicated there was "[n]o

18  clear indication for psychiatric intervention" and he was not diagnosed with any psychiatric or

19  mental health condition.  Cowger Dec. Ex. 4, Labine Dep., Ex. 110 at 000049.  Following his

20  treatment at Tacoma General Hospital, Tapia had no mental health issues necessitating treatment.

21     Tapia's expert Dr. Johnny Edwards Bates testified that he could not say with a reasonable

22  degree of medical certainty that Tapia had a deep vein thrombosis ("DVT") or PCD at any time

23  between September 18 and 29, 2018.  Cowger Dec. Ex. 5, Bates Dep. 82:6-14, 112:14-21, 142:2-

24  11.  He also could not say to a reasonable degree of medical certainty what diagnosable mental

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 3
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main:  (253) 798-6732 / Fax:  (253) 798-6713

health condition Tapia had between September 18 and October 1, 2018. *Id.* at 229:18-21. Nor could he say what mental health treatment Tapia should have received at the Pierce County Jail. *Id.* at 231:11-13. Additionally, Dr. Bates could not identify any situation involving the treatment of any other inmates that he relied on when providing opinions in this case. *Id.* at 231:4-10, 315:6-21.

Throughout the record it was established that Tapia encountered staff or other inmates three times per day or more. Cowger Dec. Ex. 1, Tapia Dep. Ex. 125; Cowger Dec. Ex. 2, Carrillo Dep. Ex. 1; Cowger Dec. Ex. 6, Glindmeyer Dep Ex. 163. Tapia's expert Dr. Daphne Glindmeyer agreed that Tapia was housed in administrative segregation. Cowger Dec. Ex. 6, Glindmeyer Dep. 25:20-26:5. National Commission on Correctional Healthcare ("NCCHC") standards for Mental Health in Jails, Standard MH-E-07 Segregated Inmates states that "monitoring of segregated inmates is based on the degree of isolation." Cowger Dec. Ex. 7 at 86. The standard defines "segregated" and "extreme isolation". *Id.* at 87. "Extreme Isolation" refers to situations in which inmates encounter staff or other inmates fewer than three times per day." *Id.* Since the record is clear Tapia encountered staff three times per day or more, it cannot be disputed that he fit the definition of a "segregated" inmate, and based on that degree of isolation would be "monitored 3 days a week by medical or qualified mental health professionals." Cowger Dec. Ex. 7 at 86-87.

NCCHC standard MH-G-02 Mental Health Programs and Units provides recommendations for "acute mental health residential units" and "nonacute mental health residential units" with specific definitions for each. Cowger Dec. Ex. 8 at 104-105. Acute care residential units "are for those who are psychotic, clinically unstable (including acutely suicidal or at imminent risk of self harm), or waiting for placement into an inpatient psychiatric setting." *Id.* at 105. Nonacute care units "are short-term or permanent housing areas that provide services for those who are chronically mentally ill or experiencing situational stresses." *Id.* Only those in

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 4
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main: (253) 798-6732 / Fax: (253) 798-6713

acute mental health residential units require daily patient evaluation by mental health staff. *Id.* at 104. Dr. Glindmeyer testified that Tapia was in fact seen by mental health staff in the Pierce County Jail three times per week while housed in the mental health unit, which is in line with NCCHC standards as well as Pierce County Jail Mental Health policies. Cowger Dec. Ex. 6, Glindmeyer Dep. 14:13-15:5, 31:10-19. Dr. Glindmeyer also testified that she could not provide any reason that Tapia should have received mental health care between June 16 and September 17, 2018. Cowger Dec. Ex. 6, Glindmeyer Dep. 79:1-6. Additionally, Dr. Glindmeyer testified that even though she opined that Tapia experienced a delirium, she could not say to a reasonable degree of medical certainty if the delirium was related to the DVT or PCD specifically. *Id.* 61:17-62:1. Dr. Glindmeyer could not identify any other situations involving the care of other inmates she relied on when providing her opinions in this case. *Id.* 84:19-23.

**B. UNDISPUTED MATERIAL FACTS**

The record shows the following material facts are undisputed. Together, they are sufficient for the Court to resolve Tapia's claims in Pierce County's favor as a matter of law.

➢ Pierce County trained its employees to follow its policies, which met national standards.

➢ Tapia had not developed PCD when he was assessed by Pierce County mental health employees on September 20, September 26, and September 28.

➢ Even if Tapia was referred to a higher level of mental health care, it would have been impossible to detect Tapia's impending and extremely rare vascular disease.

➢ Tapia was not diagnosed with any mental health condition upon admission to Tacoma General Hospital, or at any time during his stay at Tacoma General Hospital.

➢ Pierce County conducted due diligence when contracting with NaphCare.

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 5
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main: (253) 798-6732 / Fax: (253) 798-6713

➢ No communication breakdown between Pierce County and NaphCare caused Tapia's injuries.

➢ Pierce County's agreement with NaphCare contains a requirement to maintain communication between NaphCare employees and Pierce County's mental health professionals.

➢ Pierce County contracted with NaphCare to provide staffing levels at the Pierce County Jail that are consistent with those of similar jails around the country. During the relevant month of Tapia's incarceration, NaphCare provided *more* staffing than its contract required.

➢ NaphCare trained its employees to follow its policies, which reflect national standards.

➢ Tapia had not developed PCD at the time RN Elizabeth Warren assessed him on September 29, 2018, or at any time before.

➢ Even if RN Elizabeth Warren had conducted a "head-to-toe exam" or immediately referred Tapia to higher-level care, it would have been impossible to detect Tapia's impending and extremely rare vascular disease.

### III.    ARGUMENT

#### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett,* 477 U.S. 317, 322-23 (1986). The nonmoving party must meet such a showing with specific facts beyond the pleadings that establish a genuine issue of material fact for trial. Fed. R. Civ. P. 56(c). Courts view the evidence in the

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 6
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main:  (253) 798-6732 / Fax:  (253) 798-6713

light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 122, 150-51 (2000). Summary judgment should be entered against a party who fails to establish an element essential to that party's case, as complete failure of proof concerning an essential element, necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 322-23.

"Material facts" affect the outcome of a case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). They are established through evidence sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* "[T]he mere existence of *some* alleged factual dispute ... will not defeat a motion for summary judgment." *Id.* This is because the existence of irrelevant unnecessary factual disputes does not create a genuine issue of material fact for trial. *Id.* Unsupported conclusory allegations and self-serving testimony are similarly incapable of creating triable issues capable of surviving otherwise warranted entry of summary judgment. *McKnight v. Northern Nevada Correctional Center, et. al.,* No. 3:09-cv-00757-LRH-VPC, 2012 WL 984263 (D.Nev. February 7, 2012)(*citing Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989); *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002)).

## B. TAPIA'S NEGLIGENCE CLAM FAILS AS A MATTER OF LAW

In his Second Amended Complaint, Tapia brought a negligence claim against Pierce County and a corporate negligence claim against NaphCare. Dkt. 18-1 at 19-21 (negligence claim against the County), *id.* at 21-22 (corporate negligence claim against NaphCare). The Court dismissed Tapia's corporate negligence claim after concluding that it "fails as a matter of law." Dkt. 31 at 4. Tapia has no surviving negligence claim against NaphCare or its employees.[1] Dkt.

---

[1] At one point during this longstanding litigation, Tapia also brought "simple and/or medical negligence claims" against "NaphCare and its personnel." Dkt. 31 at 6 n.6 (citing Dkt. 2-1, 1-2, 18-1). As this Court observed, however, Tapia voluntarily "dropped" those claims long ago. *Id.*

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 7
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main: (253) 798-6732 / Fax: (253) 798-6713

31 at 5.  After years of pretrial litigation and discovery, the undisputed record reveals that Tapia has failed to satisfy his burden under Rule 56 to show sufficient evidence supporting necessary elements of his Washington state law negligence claim against Pierce County.  For that reason, Pierce County is entitled to summary judgment on Tapia's only remaining negligence claim.

In Washington, a plaintiff cannot succeed under a negligence theory without establishing the four key elements of the claim: duty, breach, causation, and damages.  *See Stanley v. United States*, 2023 WL 6458870, at *8 (W.D. Wash. Oct. 4, 2023); *Gonzalez v. Dammeier Cnty. of Pierce*, 21 Wash. App. 2d 1056, 2022 WL 1155744, at *5 (2022).  Pierce County, of course, "owe[s] inmates an affirmative duty to ensure their health, welfare, and safety." *Gonzalez*, 2022 WL 1155744, at *4.  And the Court has concluded that "this is a nondelegable duty, [so] the principal remains liable for the torts of an independent contractor."  Dkt. 31 at 5 n.4 (citing *Gonzalez*, 2022 WL 1155744, at *5).  But the undisputed record reveals that Taipa lacks sufficient evidence to support his arguments that either Pierce County or its independent contractor NaphCare breached this duty.  Pierce County does not dispute that Tapia "had to have his leg amputated just below the knee."  Dkt. 18-1 at 20-21.  But Tapia cannot show that Pierce County or NaphCare caused his below-the-knee amputation.

As discussed in NaphCare's summary judgment briefing—*see generally* Dkts. 100, 105—Tapia developed a rare and deadly vascular condition, (PCD), while incarcerated at the Pierce County Jail.  Not even Tapia knew before the events of this case that he is genetically predisposed to blood clotting disorders.  Cowger Dec. Ex. 9, Jimenez Dep. 144:23-145:19 (discussing diagnosis dated October 17, 2018); Cowger Dec. Ex. 10 (diagnosis).  It is undisputed that, for those suffering from PCD, "amputation rates have been reported to be as high as 50% and mortality between 25-40%."  Cowger Dec. Ex. 9, Jimenez Dep. Ex. 155 at 6.  PCD caused Tapia's injuries, not any negligence by Pierce County or NaphCare.  Because Tapia cannot establish a "genuine dispute as

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 8
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main:  (253) 798-6732 / Fax:  (253) 798-6713

to any material fact" for two necessary elements of his negligence claim—breach and causation—Pierce County "is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> **1.    Tapia lacks evidence to support a negligence claim against Pierce County.**

Tapia alleges Pierce County was negligent.  Dkt. 18-1 at 19-20.  However, Tapia has not identified sufficient evidence to create a dispute of material fact on any allegation of negligence, as he cannot show breach or causation.

> **a.    There is not sufficient evidence of a failure to train on the part of Pierce County.**

Tapia claims that Pierce County failed to train its employees to follow "policies[] and procedures on the assessment of persons with apparent medical and psychiatric needs."  Dkt. 18-1 at 19.  No evidence supports this claim.  Tapia's failure-to-train claim under § 1983 against Pierce County was dismissed, and the Court observed that "the Second Amended Complaint is threadbare on this issue" because "[i]t fails to allege how or why [training] was deficient."  Dkt. 31 at 7.  Discovery has closed, and Tapia has failed to uncover any evidence supporting this claim. *Cf. Gurno v. Town of LaConner*, 65 Wash. App. 218, 229 (1992), opinion corrected (June 29, 1992) (upholding directed verdict in favor of municipality on the plaintiff's negligent training claim after plaintiff "failed to present any evidence as to the standard of care for training").  Tapia cannot show a breach of the duty to train, let alone that such a breach caused his injury.

> **b.    There is insufficient evidence of a failure to conduct due diligence.**

Tapia claims, without a scrap of evidence, that Pierce County "contracted with NaphCare without conducting any due diligence whatsoever."  Dkt. 18-1 at 19-20.  In view of Tapia's failure to produce any evidence supporting this argument, the Court should grant summary judgment for Pierce County.  *See Roosma v. Pierce Cnty.*, No. 3:16-CV-05499-RJB, 2018 WL 993899, at *7

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main:  (253) 798-6732 / Fax:  (253) 798-6713

(W.D. Wash. Feb. 21, 2018) (granting Pierce County's motion for summary judgment because "Plaintiffs have made no showing, with admissible evidence that Pierce County Defendants failed to exercise due diligence when executing the … contract.").

At any rate, Tapia's claim that Pierce County was negligent merely by contracting with NaphCare is frivolous. *See Stevens v. Pierce Cnty.*, No. C22-5862 BHS, 2023 WL 5177915, at *3 (W.D. Wash. Aug. 11, 2023) (granting NaphCare's motion to strike plaintiff's allegations that "NaphCare is nationally infamous for its poor healthcare"). NaphCare has been an industry leader in correctional health care for more than thirty years. Local governments throughout Washington and the country—including in Alabama, Georgia, North Carolina, Ohio, and many more locations—trust NaphCare to provide healthcare services to incarcerated individuals. *See* NaphCare, Local Government, https://www.naphcare.com/local-government.

### c.    There is insufficient evidence of a communication breakdown.

Tapia further claims that Pierce County and NaphCare were negligent because their "employees failed [to] pass on vital lifesaving information from one institution or person to another." Dkt. 18-1 at 20. As discussed in NaphCare's motion for summary judgment briefing— Dkt. 100 at 28-29; Dkt. 105 at 12-13—Tapia has failed to produce any evidence of miscommunication. Pierce County and NaphCare, by contrast, have produced ample evidence of effective communication between the two entities.

The following examples of communication between NaphCare and Pierce County show there can be no material fact dispute on this point:

➤ On September 19, 2018, twelve days before Tapia was hospitalized, a Pierce County mental health professional, Darren Nealis, verbally informed NaphCare's nursing staff of his recent interactions with Tapia. Cowger Dec. Ex. 11, Nealis Dep. 30:8-25. Without delay, a NaphCare RN sent LPN Carrillo to Tapia's cell to "check on a patient who was

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 10
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main: (253) 798-6732 / Fax: (253) 798-6713

nonresponsive" and "to collect the data."  Cowger Dec. Ex. 2, Carrillo Dep. 21:5-12, 25:7-12; Ex. 11, Nealis Dep. 30:8-25.

➤ After interacting with Tapia, LPN Carrillo returned to NaphCare's clinic and reported his observations to the RN on duty and he logged his observations in TechCare, NaphCare's Electronic Health Records system.  Cowger Dec. Ex. 2, Carrillo Dep. 40:20-21, 41:8-10. LPN Carrillo noted that Tapia did "not appear to be in distress." *Id.,* Carrillo Dep. Ex. 1 at 000224.

➤ Darren Nealis—the Pierce County employee who initially requested NaphCare's assistance—accessed Tapia's medical records in TechCare while LPN Carrillo was entering his note.  Duane Prather, a mental health evaluation specialist employed by Pierce County, logged into NaphCare's medical record system the next day and reviewed Tapia's records.  Dkt. 101-32 at 3; Cowger Dec. Ex. 2, Carrillo Dep. Ex. 1 at 000224.

➤ On September 29, two days before Tapia was hospitalized, an officer employed by Pierce County requested NaphCare see Tapia because it was unclear whether Tapia was eating his meals.  Cowger Dec. Ex. 2, Carrillo Dep. Ex. 1 at 000223; Cowger Dec. Ex. 12, Warren Dep. 59:17-20, 110:24-111:11.

➤ In response, a NaphCare employee, RN Elizabeth Warren, visited Tapia's cell and assessed him.  Because of the Pierce County officer's report, she checked to determine whether Tapia's "vitals show[ed] a person who hasn't eaten or drank in 72 hours."  Cowger Dec. Ex. 12, Warren Dep. 70:14-18.

➤ During the assessment, RN Warren found that "his vitals were perfect" and he was in "no distress."  Cowger Dec. Ex. 12, Warren Dep. 118:17-19, 130:2-5.  She then brought him an Ensure and watched him drink half of it.  *Id.* 116:3-23.  Despite assessing Tapia as normal, RN Warren scheduled Tapia to visit with the jail's doctor—who is employed by

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 11
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main: (253) 798-6732 / Fax: (253) 798-6713

Pierce County—on the next business day. *Id.* at 123:3-15, Ex. 14; Cowger Dec. Ex. 13, Perez Dep. Ex. 1.

➢ On October 1, at 9:51 a.m., a Pierce County deputy observed that Tapia's foot was "a purple/black color." Cowger Dec. Ex. 12, Warren Dep. Ex. 16 at 000042. The officer "immediately" called the jail's clinic—which is operated by NaphCare—and was instructed to transport Tapia there in a wheelchair. *Id.*; *see also* Cowger Dec. Ex. 2, Carrillo Dep. Ex. 1 at 000223.

➢ At 10:13 a.m., NaphCare's clinic RN took Tapia's vitals and, one minute later, created an ER referral form for Tapia. Cowger Dec. Ex. 12, Warren Dep. Ex. 2; 000611-000613. Within fifteen minutes, she had also called the Tacoma General emergency room to inform them of Tapia's imminent arrival to ensure continuity of care. Cowger Dec. Ex. 15 at 100637.

➢ By 11:20 a.m., roughly ninety minutes after Pierce County deputies discovered Tapia's discolored foot, Tapia was in the emergency room. *Id.* at 100631.

In light of this uncontested evidence, there can be no dispute of material fact about a lack of effective communication between Pierce County and NaphCare. In other words, there is no evidence that the entities breached their duty to ensure Tapia's health, welfare, and safety by miscommunicating. *See Pittman v. Virgina Mason Health Sys.*, 21 Wash. App. 2d 1059, 2022 WL 1184056, at *3 (2022) ("A defendant health care provider can obtain summary judgment dismissal of a medical negligence claim by demonstrating the plaintiff lacks evidence of breach."). On the contrary, the record shows their effective communication saved Tapia's life.

Even if Tapia could point to some evidence of a communication breakdown between Pierce County and NaphCare, the Court should nonetheless grant summary judgment in favor of Pierce County on this issue. Tapia has presented no evidence that any breakdown in communication

caused his injuries.  *See Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wash. 2d 468, 478 (1998) ("[W]here the facts are not in dispute, legal causation is for the court to decide as a matter of law."). Tapia's expert on vascular disease acknowledged that Tapia's foot could have become discolored after his PCD developed "within a rapid amount of time … probably within hours."  Cowger Dec. Ex. 9, Jimenez Dep. 37:1-2.  Tapia's expert also acknowledged that the PCD could have developed merely 12 hours before Tapia's hospitalization.  At most, it developed 72 hours before hospitalization.  *Id.* at. 166:6-9.  Tapia can point to no breakdown of communication between NaphCare and Pierce County in that timeframe.  As discussed, the undisputed evidence shows that RN Warren timely responded to Pierce County's request for a nurse to visit Tapia regarding his food intake.  RN Warren, in turn, assessed Tapia and scheduled an appointment for the next day with Pierce County's medical doctor.  And when Pierce County employees discovered Tapia's discolored foot, they immediately called NaphCare staff—resulting in Tapia's hospitalization roughly 90 minutes later.  Even assuming there was a breakdown of communication sometime before that timeframe (there was not), it was not the cause of any of Tapia's injuries.

> **d.    There is not sufficient evidence that a failure by Pierce County mental health employees to properly assess or treat Tapia caused his amputation.**

Tapia claims that Pierce County "failed to properly assess and treat Tapia", Dkt. 18-1 at ¶ 67, and this failure resulted in the amputation of his lower leg, *id.* at ¶ 68.  Tapia does not dispute that doctors had to perform the amputation to save his life from complications stemming from PCD.

As discussed, according to Tapia's expert on vascular diseases, Tapia's PCD developed— at most—72 hours before his hospitalization.  Cowger Dec. Ex. 9, Jimenez Dep. 166:6-9.  In that timeframe, RN Warren saw Tapia in his cell after receiving a report from Pierce County that Tapia had been missing some meals.  RN Warren's assessment is discussed in further detail below, but

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 13
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main:  (253) 798-6732 / Fax:  (253) 798-6713

the undisputed record shows that Pierce County employees referred Tapia to be assessed by NaphCare staff, thereby not ignoring him at all. Additionally, Tapia was not diagnosed with any mental health condition upon his admission to Tacoma General Hospital, nor at any time during his stay and course of treatment there.

As discussed more fully below, even assuming Pierce County mental health employees immediately referred Tapia to higher-level of mental health care in addition to Pierce County employees referring him to be assessment by medical, there is no evidence suggesting that this would have revealed or prevented Tapia's impending PCD. Thus, even assuming a Pierce County mental health employee was negligent during a mental health assessment of Tapia—something Pierce County strenuously contests—it did not cause Tapia's amputation.

**e.    There is no evidence of inadequate Pierce County staffing.**

Tapia has alleged Pierce County "failed to ensure adequate and proper staffing at the Jail." Dkt. 18-1 at 20. Again, discovery has closed, and Tapia has failed to uncover any evidence that Pierce County had inadequate staffing in the jail. Even if there was inadequate staffing of Pierce County employees in the jail (which there was not), it was not the cause of Tapia's injury.

**2.    Tapia lacks evidence to support a negligence claim against NaphCare.**

Tapia claims Pierce County should be held liable for the alleged negligence of NaphCare. Dkt. 18-1 at 19-21. He advances several theories to explain how NaphCare was negligent. But, after years of discovery, Tapia cannot point to sufficient evidence to create a material fact dispute under any of these theories. He fails to show breach and causation for each one of them.

**a.    There is insufficient evidence of a failure to train.**

Tapia claims that Pierce County should be held liable for NaphCare's alleged failure to train its employees to follow "policies[] and procedures on the assessment of persons with apparent medical and psychiatric needs." Dkt. 18-1 at 19. Not a scintilla of evidence supports this claim.

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 14
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main: (253) 798-6732 / Fax: (253) 798-6713

1    Indeed, when dismissing Tapia's failure-to-train claim under § 1983 against both Pierce County

2    and NaphCare, the Court observed that "the Second Amended Complaint is threadbare on this

3    issue" because "[i]t fails to allege how or why [NaphCare's training] was deficient." Dkt. 31 at 7.

4    More than a year has elapsed since the Court made those observations. Despite significant

5    discovery, Tapia has failed to uncover any evidence supporting this claim. *Gurno*, 65 Wash. App.

6    at 229. NaphCare, by contrast, has produced significant evidence showing that its policies mirror

7    national standards and that its employees are trained to implement those standards. *See, e.g.,* Dkt.

8    101-9 (NaphCare's policy manual), 101-11 (NaphCare training materials providing mental health

9    screening tips for RNs & LPNs); Dkt. 101-12 (Health Assessment Questions); *see also* Dkt. 100

10    at 3-4 (NaphCare's MSJ discussing its policies and training). Tapia cannot show a breach of the

11    duty to train, let alone that such a breach caused his injury.

12    **b.  There is insufficient evidence of a failure to treat medical needs that caused his amputation.**

13    Tapia claims that NaphCare "failed to adequately treat [his] medical needs," Dkt. 18-1 at

14    ¶ 61, and this failure resulted in the amputation of his lower leg, Dkt. 18-1 at ¶ 68. Tapia does not

15    dispute that doctors had to perform the amputation to save his life from complications stemming

16    from PCD. But, according to Tapia, NaphCare was grossly negligent because its employees failed

17    to anticipate and address his extremely rare vascular condition in advance. *See* Dkt. 18-1 at ¶ 61

18    ("[B]ecause [Tapia's] obvious medical needs related to his blood clot condition were entirely

19    ignored, Pierce County and NaphCare were grossly negligent."). "Gross negligence" is

20    "negligence substantially and appreciably greater than ordinary negligence." *Swank v. Valley*

21    *Christian Sch.*, 188 Wash. 2d 663, 684 (2017). "Stated more fully, it is the failure to exercise

22    slight care, meaning not the total absence of care but care substantially or appreciably less than the

23    quantum of care inhering in ordinary negligence." *Id.* (emphasis added) (cleaned up). "In

24

determining the degree of negligence, the law must necessarily look to the hazards of the situation confronting the actor." *Nist v. Tudor,* 67 Wash. 2d 322, 331 (1965).

As discussed, according to Tapia's expert on vascular diseases, Tapia's PCD developed—at most—72 hours before his hospitalization. Cowger Dec. Ex. 9, Jimenez Dep. 166:6-9. In that timeframe, RN Warren saw Tapia in his cell after receiving a report from Pierce County that Tapia had been missing some meals. During the assessment, RN Warren found that "his vitals were perfect" and he was in "no distress." Cowger Dec. Ex. 12, Warren Dep. 118:17-19, 130:2-5. She nonetheless scheduled Tapia to visit with the jail's doctor on the next business day. *Id.* at 123:3-15, Ex. 14; Cowger Dec. Ex. 13, Perez Dep. Ex. 1. She asked Tapia if he would drink an Ensure if she walked back across the jail to retrieve one for him. Cowger Dec. Ex. 12, Warren Dep. 116:3-23. After Tapia indicated yes, *id.*, RN Warren left and returned with the Ensure. She watched him drink half of it. *Id.*

Tapia's experts criticize RN Warren's assessment of Tapia—contending that it fell below the standard of care.[2] According to RN Denise Panosky, RN Warren should have performed "a comprehensive head-to-toe assessment" because Tapia was "confused, unable to verbally respond, was decompensated, and way off his baseline." Cowger Dec. Ex. 16, Panosky Dep.Ex. 152 at 16 (internal quotation marks omitted). And RN Warren should have "immediately" referred Tapia to a higher level of care. *Id.* (emphasis omitted). Another of Tapia's experts, Dr. Bates, agreed that Tapia's alleged mental status change warranted a more thorough examination and immediate higher-level medical care. Cowger Dec. Ex. 5, Bates Dep. 160:8-9, Ex. 135 at 9.

These criticisms are insufficient to support a finding of gross negligence. The undisputed facts show RN Warren did not fail "to exercise slight care." *Swank,* 188 Wash. 2d at 684 (emphasis

---

[2] RN Denise Panosky based her considerations on California standards of care, not Washington standards. Panosky Dep. at 79:10-23.

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 16
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main: (253) 798-6732 / Fax: (253) 798-6713

added).  She assessed Tapia.  She took his vitals.  She scheduled him for an appointment with the doctor on the next business day.  She walked across the jail and back to retrieve a dietary supplement drink for him.  And she watched him drink it.  RN Warren's failure to identify Tapia's rare vascular condition, which had not yet manifested as PCD, does not amount to gross negligence.

Even assuming that RN Warren was grossly negligent, this claim fails as a matter of law on causation grounds.  *See Schooley*, 134 Wash. 2d at 478; *Pittman*, 2022 WL 1184056, at *3.  The undisputed record shows (1) Tapia had not developed PCD by the time RN Warren conducted her assessment and (2) even a "head-to-toe exam" or a referral to higher-level care could not have revealed that Tapia would soon develop PCD.  Importantly, none of Tapia's experts took a position on whether Tapia's PCD had developed by the time RN Warren conducted her assessment.  Panosky acknowledged that she has no expertise on the subject.  Cowger Dec. Ex. 16, Panosky Dep. 13:10-12, 95:10-13, 97:13-15 ("I would not give my opinion on when it started, no.  That's not my realm and my opinion.").  Dr. Bates expressly conceded that, even if she had done a more thorough exam, he could not say with medical certainty that the exam would have revealed anything.  Cowger Dec. Ex. 5, Bates Dep. 172:13-15 ("Q. But you don't know whether that would have revealed anything, right? A. No.").  Although Tapia's expert on vascular disease testified that it was at least possible that Tapia's PCD could have developed by then, he did not take a position on whether it definitively had developed at that point.  Cowger Dec. Ex. 9, Jimenez Dep. 156:20-22.  Mere "speculation" is not enough to create a genuine issue of material fact.  *Hungerford v. State Dep't of Corr.*, 135 Wash. App. 240, 254, 139 P.3d 1131, 1138 (2006), as amended (Oct. 3, 2006).

The undisputed facts show that Tapia did not have PCD during RN Warren's assessment.  "PCD is a very painful condition, frequently described as 'agonizing.'"  Cowger Dec. Ex. 18,

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 17
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main:  (253) 798-6732 / Fax:  (253) 798-6713

Starnes Report at 9-10. "The term PCD literally means in Latin, "inflamed (phlegmasia), blue (cerulea) and painful (dolens)." *Id*. at 9. By the evening of October 1, Tapia's pain was an "8-9/10 in severity." Cowger Dec. Ex. 4, Labine Dep. Ex. 108 at 000029. By contrast, when RN Warren saw Tapia, he was in "no distress." Cowger Dec., Ex. 12, Warren Dep. 118:17-19, 130:2-5. Moreover, later in the evening of September 29, an officer saw Tapia at the window of his cell. Dkt. 101-26 ¶ 4. Even Dr. Bates acknowledged that Tapia "probably" could not walk to the window of his cell if he had PCD. Cowger Dec. Ex. 5, Bates Dep. 81:18-23.

NaphCare's expert in vascular diseases, Dr. Benjamin Starnes, explained in his report that, even if RN Warren had performed a blood screening of Tapia, it "would not have shown Mr. Tapia was at risk of PCD." Cowger Dec. Ex. 18, Starnes Report at 11. There "are only two blood conditions that are associated with massive venous thrombosis." *Id*. One is associated with a specific drug, intravenous heparin, which Tapia did not have access to during his incarceration. And the other blood condition, Essential Thrombocythemia, would have been revealed if "his platelet count was greater than 1 million." *Id*. Because Tapia's platelet count was "normal" on the day he was hospitalized, no blood screening would have revealed warning signs of his impending PCD. *Id*. None of Tapia's experts challenged these conclusions in a rebuttal report, nor could they.

In other words, even assuming RN Warren should have conducted a full-body exam or immediately referred Tapia to higher-level care, there is no evidence suggesting that this would have revealed or prevented Tapia's impending PCD. Thus, even assuming RN Warren was grossly negligent during her assessment of Tapia—something Pierce County strenuously contests—it did not cause Tapia's amputation.

///

///

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 18
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main: (253) 798-6732 / Fax: (253) 798-6713

1

2

### c.    There is zero evidence of inadequate NaphCare staffing and zero evidence that staffing levels caused Tapia's injury.

Tapia alleges that NaphCare "failed to ensure adequate and proper staffing at the Jail."

Dkt. 18-1 ¶ 63.  The undisputed record refutes this allegation.  As discussed in NaphCare's motion

for summary judgment, Pierce County's contract with NaphCare delineates the precise number of

staffing hours that NaphCare must provide to the Pierce County Jail.  Dkt. 100 at 5.  These hours

are consistent with those of other comparable detention centers around the country.  Cowger Dec.

Ex. 21, Crum Dep. Ex. 2 at 16 (comparing Pierce County with the Denver Sheriff Medical

Department).  Between September 16, 2018, and October 13, 2018, the relevant time period in this

case, NaphCare provided more staffing than the contract required—including an extra 452.03 RN

hours.  Cowger Dec. Ex. 19 at 400031; Ex. 20.

Even if there was insufficient medical staffing (which there was not), it was not the cause

of Tapia's injury.  Tapia was seen by a registered nurse daily and appropriate medical staff saw

him whenever a concern was raised to them.

### C.    TAPIA DOES NOT HAVE SUFFICIENT EVIDENCE TO SUPPORT A CLAIM ARISING UNDER § 1983 AGAINST DEFENDANT PIERCE COUNTY.

In addition to his negligence claim addressed above, Tapia also brought § 1983 claims

against Pierce County and NaphCare alleging violations of his rights under the Due Process Clause

of the Fourteenth Amendment while he was a pre-trial detainee in the Pierce County Jail.  He has

alleged Pierce County and NaphCare maintained "unconstitutional policies, practices, and customs

that resulted in the denial of Javier [Tapia]'s constitutional right to adequate medical care and

treatment and subjected him to inhumane conditions of confinement."[3]  Dkt. 18-1 ¶ 75.  As

outlined below, based on the undisputed material facts, Tapia cannot prove a claim against Pierce

---

[3] Tapia's § 1983 claims against Defendant NaphCare have been fully addressed in Defendant NaphCare's Motion for Summary Judgment.  *See* Dkt. 100.

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 19
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main:  (253) 798-6732 / Fax:  (253) 798-6713

County arising under § 1983.

Municipalities are "persons" under 42 U.S.C. § 1983 and thus may be liable for causing a constitutional deprivation. *Monell v. Dept. of Social Services,* 436 U.S. 658 (1978). However, a municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents – a *respondeat superior* theory. *Id.* at 694. Instead, it is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible. *Id.* To establish a § 1983 claim against a municipality, plaintiff must:

> (1)     identify a specific policy or custom; (2) demonstrate that the policy was sanctioned by the official or official responsible for making policy in that area of the city's business; (3) demonstrate a constitutional deprivation; and (4) establish a causal connection between the custom or policy and the constitutional deprivation. Lack of proof on any of the above elements would require dismissal of the action. (citations omitted).

*Baldwin v. City of Seattle,* 55 Wn.App. 241, 248 (1989); *see also City of St. Louis v. Praprotnick,* 485 U.S. 112, 123 (1988). Tapia must prove that the municipality maintained an unconstitutional policy, practice, or custom that was the moving force behind a deprivation of a constitutional right. *See Board of Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 404-408 (1997). To succeed under *Monell,* § 1983 Tapia must demonstrate that "a municipality's legislative body or authorized decisionmaker" has taken a deliberate action that deprives a plaintiff of a federally protected right. *Brown,* 520 U.S. at 405; *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480-81 (1986).

A policy is "'a deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Fairley v. Luman,* 281 F.3d 913, 918 (9th Cir. 2002) (per curiam) (citing *Oviatt v. Pearce,* 954 F.2d 1470, 1477 (9th Cir. 1992)) (quoting *Pembaur,* 475 U.S. at 483). "'The existence of a policy, without more, is insufficient to trigger local government liability under section 1983." *Oviatt,* 954 F.2d at 1477-78 (citing *City of Canton, Ohio v. Harris,* 489 U.S. 378,

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 20
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main: (253) 798-6732 / Fax: (253) 798-6713

388-89 (1989). "Under *City of Canton,* before a local government entity may be held liable for failing to act to preserve a constitutional right, plaintiff must demonstrate that the official policy "evidences a 'deliberate indifference'" to his constitutional rights." *Id.* (quoting *City of Canton,* 489 U.S. at 389). This occurs when the need for more or different action "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need." *City of Canton,* 489 U.S. at 390.

To establish a custom, Tapia must prove that Defendant's acts were undertaken pursuant to a practice "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell,* 436 U.S. at 691; *Thompson v. City of Los Angeles,* 885 F.2d 1439, 1444 (9th Cir. 1989). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted); *see also Meehan v. Los Angeles Cnty.*, 856 F.2d 102 (9th Cir. 1988) (two incidents not sufficient to establish custom); *Davis v. Ellensburg*, 869 F.2d 1230 (9th Cir. 1989) (manner of one arrest insufficient to establish policy).

"[M]ere negligence, or even gross negligence, is not enough for deliberate indifference." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 976 (9th Cir. 2011).

> [T]he plaintiff may not show merely that one employee was inadequately trained or supervised; "there must be a 'widespread practice.'" *Marsh v. County of San Diego,* 680 F.3d 1148, 1159 (9th Cir. 2012) (county prosecutor violated mother's substantive due process rights by releasing her child's autopsy photograph to the press without a legitimate governmental purpose, but *county could not be held liable* under section 1983 because, inter alia, *there was "no evidence that [the County's] prosecutors ... often photocopy and distribute autopsy photographs for illegitimate purposes without the consent of the family*") (citing *Davis*, 869 F.2d at 1235).

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 21
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main: (253) 798-6732 / Fax: (253) 798-6713

*Ismail v. Freeman*, 936 F.Supp.2d 1157, 1164 (C.D.Cal. 2012) (emphasis added).  *See also Praprotnick*, 485 U.S. at 127 (informal policy requires proof of a "widespread practice that, although not authorized by an ordinance or an express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law") (internal quotations and citations omitted).

### 1. Tapia Cannot Show An Underlying Constitutional Violation

Tapia has the burden of establishing a constitutional violation.  *Scott v. Henrich,* 39 F.3d 912, 916 (9th Cir. 1994).  To establish a constitutional injury, mere negligence is not sufficient, and plaintiff must prove "something akin to reckless disregard."  *Gordon v. Cnty. of Orange,* 888 F.3d 1118, 1125 (9th Cir. 2018).  To support such a claim against Pierce County, Tapia must show that **a Pierce County employee** treated him with reckless disregard.

Tapia cannot show that a Pierce County employee showed "reckless disregard" as to his right to receive adequate medical or mental health care, nor can he show that a Pierce County policy caused one of its employees to commit a constitutional violation.  *Gordon,* 888 F.3d at 1125; *City of Los Angeles v. Heller,* 475 U.S.796, 799 (1986).

### 2. Pierce County Did Not Have Unconstitutional Policies Practices or Customs

#### a. Pierce County Did Not Have Unconstitutional Policies

Tapia's experts have testified and agreed that Pierce County's official policies are not deficient and are in line with national standards.  Tapia's expert Dr. Bates identified no deficient official policies in his written report, nor could he identify any in his deposition.  Cowger Dec. Ex. 5, Bates Dep. 230:10-231:3, Ex. 135 at 8-9.  Tapia's expert Dr. Glindmeyer testified that Pierce County mental health policies required Tapia to be seen three times per week while housed in the mental health unit and in administrative segregation, which is in line with NCCHC standards.  Cowger Dec. Ex. 6, Glindmeyer Dep. 14:13-15:5, 31:10-19.  Dr. Glindmeyer could not identify a

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 22
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main: (253) 798-6732 / Fax: (253) 798-6713

specific Pierce County mental health policy and specific corresponding NCCHC standard that was not being met in the official policy.

Tapia's experts have broadly stated that Pierce County employees in this case were not following their own policies, but under *Monell,* Pierce County cannot be held vicariously liable for negligence or mistakes of employees. *Monell,* 436 U.S. at 691.

### b.  Pierce County Did Not Have Deficient Customs or Practices

Tapia has also alleged that Pierce County had unofficial customs or practices that caused Tapia's alleged constitutional violation.  Tapia must show that such practices or customs are "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell,* 436 U.S. at 691; *Thompson,* 885 F.2d at 1444.  Tapia cannot show a pattern of similar cases as required to support the existence of the alleged customs or practices.

Dr. Bates nor Dr. Glindmeyer could identify any other incidents that led to a similar constitutional violation and acknowledged that their opinions were based only on Tapia's care. Cowger Dec. Ex. 5, Bates Dep. 231:4-10, 315:6-21; Ex. 6, Glindmeyer Dep. 84:19-23.  Tapia cannot meet the standard required by *Monell* for this theory.  *Connick v. Thompson,* 563 U.S. 51, 61 (2011); *Trevino,* 99 F.3d at 918.

### i.    Refusing to send patients to the hospital

The evidence here shows that NaphCare provides the medical care to inmates in the jail, and Pierce County is ultimately responsible for any medical costs for inmates occurring outside the jail.  Cowger Dec. Ex. 22 at 400053.  There is no evidence that Pierce County encouraged NaphCare or rewarded NaphCare in any way related to sending or not sending inmates to the hospital when needed, or that Pierce County independently took any actions that impacted whether or not an inmate was sent to the hospital.

///

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 23
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main: (253) 798-6732 / Fax: (253) 798-6713

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### ii.    Not escalating the level of assessment

The evidence in this case shows Pierce County, on multiple occasions, referred Tapia to be seen by NaphCare medical staff based on the observations and concerns of Pierce County staff. The allegation that an individual mental health employee should have referred Tapia to a higher level of mental health care does not support that there was an unofficial practice or custom of doing the same with other inmates. Again, under *Monell,* Pierce County cannot be held vicariously liable for negligence or mistakes of individual employees. *Monell,* 436 U.S. at 691.

### iii.    Failure to communicate between Pierce County and NaphCare

It is not disputed that the agreement between Pierce County and NaphCare contains a requirement to maintain communication between NaphCare medical staff and Pierce County mental health staff "to ensure continuity of care." Cowger Dec. Ex. 19 at 400032; Ex. 22 at 400051. As outlined above related to Tapia's negligence claim against Pierce County, the undisputed facts show that Pierce County and NaphCare had effective communication related to Tapia's care.

### 3.    Tapia's Vascular Condition Was Rare And Not Patently Obvious

A single incident can be a basis for liability under *Monell* in the "rare" case when the "unconstitutional consequences" are "patently obvious". *Connick,* 563 U.S. at 64. The "rare" case of Tapia's development of PCD was not patently obvious to Pierce County policymakers as related to policies of the mental health unit or corrections staff—both nonmedical employees. Tapia's own expert Dr. Bates testified that Tapia's behavioral issues had nothing to do with his PCD. Cowger Dec. Ex. 5, Bates Dep. 57:22-58:8. Tapia's other expert opined the vascular condition did impact his mental state. Cowger Dec. Ex. 9, Jimenez Dep. 31:9-12. But, if Tapia's own experts cannot determine what happened at this stage, it would not have been obvious to Pierce County policymakers that such an alleged constitutional violation would occur. Once again, Pierce County

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 24
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main: (253) 798-6732 / Fax: (253) 798-6713

as a policymaker cannot be held liable for the alleged mistake of its employee under § 1983. *Monell,* 436 U.S. at 691.

**4.  A Pierce County Policy Did Not Cause Tapia's Injury.**

"In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury." *Harper v. City of Los Angeles,* 533 F.3d 1010, 1026 (2008).  "But-for" causation is not enough; proximate causation is required.  *Van Ort v. Estate of Stanewich,* 92 F.3d 831, 837 (9th Cir. 1996).  Tapia's injuries were caused by his own internal vascular medical condition, and underlying genetic predisposition, not by any Pierce County policy.

The undisputed facts here show that immediately upon noticing Tapia's foot was becoming discolored, corrections staff immediately requested NaphCare medical personnel examine Tapia. Cowger Dec. Ex. 2, Carrillo Dep. Ex. 1 at 000223.  In this case, even if policies of "refusing to admit patients in need of medical care to appropriate clinical settings" existed, such a policy was not followed in Tapia's, because Pierce County employees immediately sought medical attention for Tapia, so such a policy could not have caused Tapia's injuries.

Even if Pierce County had a policy of "not escalating the level of assessment for inmates exhibiting serious medical and mental health symptoms," such a policy did not cause Tapia's injury.  On multiple occasions Pierce County employees referred Tapia to been seen by medical staff.  When RN Warren visited Tapia on September 29th, she determined he was in no distress. Tapia was never diagnosed with a mental health condition and did not receive any treatment for a mental health condition at Tacoma General Hospital.

Tapia cannot show some deliberately indifferent policy or custom of Pierce County *was the cause of his injuries*.  *See, e.g., Dougherty v. City of Corvina,* 654 F.3d 892, 901 (9th Cir. 2011).

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 25
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main:  (253) 798-6732 / Fax:  (253) 798-6713

1

### 5. No Ratification by a Pierce County Policy Maker

2

"A municipality also can be liable for an isolated constitutional violation if the final policy

3

maker 'ratified' a subordinate's actions." *Christie v. Iopa,* 176 F.3d 1231, 1238 (9th Cir. 1999).

4

"[R]atfication requires, among other things, knowledge of the alleged constitutional violation."

5

*Id.* at 1239. Knowledge of the incident does not, "by itself, constitute ratification." *Id.* "[P]laintiff

6

must establish that the policymaker approved of the subordinate's act." *Id.* "[O]nly those

7

municipal officials who have 'final policy making authority' may by their actions subject the

8

government to § 1983 liability." *Praprotnik,* 485 U.S. at 123.

9

Tapia has not even attempted to show ratification by a final policy maker from Pierce

10

County, let alone identify a final policy maker from Pierce County. Even if Tapia could identify

11

a final policy maker, and show ratification, "ratification itself" does not create liability "after the

12

fact of [an] injury." *German v. Roberts,* 2017 WL 3407052, at *3 (W.D. Wash. Aug. 9,

13

2017)(emphasis added). "[E]vidence of ratification is merely a method of proving a preexisting

14

government 'policy, custom, or practice' that proximately cause[d] a plaintiff's constitutional

15

deprivation." *Id.* Tapia has not established a constitutional injury or that any Pierce County policy

16

was the cause of his injury, nor has he shown ratification.

17

### IV.    <u>CONCLUSION</u>

18

Pierce County respectfully requests the Court grant its Motion for Summary Judgment in

19

its favor on Tapia's negligence and § 1983 claims, and to dismiss Pierce County from the case.

20

I certify that this memorandum contains 8,082 words, in compliance with the Local Civil Rules.

21

DATED this 25th day of November, 2024.

22

MARY E. ROBNETT
Pierce County Prosecuting Attorney

23

24

s/ KRISTAL M. COWGER
KRISTAL M. COWGER, WSBA # 43079

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 26
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main: (253) 798-6732 / Fax: (253) 798-6713

Deputy Prosecuting Attorney / Civil
930 Tacoma Avenue South, Suite 946
Tacoma, WA 98402-2102
Ph: 253-798-4265 / Fax: 253-798-6713
kristal.cowger@piercecountywa.gov

## <u>CERTIFICATE OF SERVICE</u>

On November 25th, 2024, I hereby certify that I electronically filed the foregoing DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Juliana Lehua Bennington:** jbennington@perkinscoie.com, DocketSEA@perkinscoie.com, jhernandez@perkinscoie.com

- **Jacob Dean:** jacobdean@perkinscoie.com, DocketLA@perkinscoie.com, ldecosta@perkinscoie.com

- **Ryan David Dreveskracht:** ryan@galandabroadman.com, anamaria@galandabroadman.com, colleen-broberg-8038@ecf.pacerpro.com, colleen@galandabroadman.com

- **Corinne Sebren:** corinne@galandabroadman.com

- **Stephanie Olson:** solson@perkinscoie.com, jstarr@perkinscoie.com

- **David A. Perez:** dperez@perkinscoie.com, rhand@perkinscoie.com, DocketSEA@perkinscoie.com, jstarr@perkinscoie.com

s/ ELIZABETH BURLINGAME
ELIZABETH BURLINGAME
Legal Assistant
Pierce County Prosecutor's Office / Civil
930 Tacoma Avenue South, Suite 946
Tacoma, WA 98402-2102
Ph:  253-798-6082 / Fax:  253-798-6713
elizabeth.burlingame@piercecountywa.gov

DEFENDANT PIERCE COUNTY'S MOTION FOR SUMMARY JUDGMENT - 27
TAPIA - PC's Motion for Summary Judgment.docx
Cause No. 2:22-cv-01141-KKE

Pierce County Prosecuting Attorney/Civil Division
930 Tacoma Avenue South, Suite 946
Tacoma, Washington 98402-2102
Main:  (253) 798-6732 / Fax:  (253) 798-6713