# EXHIBIT 11

# Deposition of Darren Nealis

# Tapia v. Naphcare, Inc., et al.

# September 15, 2023



**206.287.9066 I 800.846.6989**

1325 Fourth Avenue, Suite 1840, Seattle, Washington 98101

www.buellrealtime.com

email: info@buellrealtime.com



Tapia v. Naphcare, Inc., et al.                                    Darren Nealis

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE
_____

JAVIER TAPIA,            )
                         )
     Plaintiff,          )
                         )
v.                       ) No. C22-1141-JCC
                         )
NAPHCARE, INC., et al,   )
                         )
     Defendants.         )
_____  )


VIDEOTAPED VIDEOCONFERENCE DEPOSITION
UPON ORAL EXAMINATION

OF

DARREN NEALIS
_____
TAKEN REMOTELY VIA VIDEOCONFERENCE
OLYMPIA, WASHINGTON




DATE TAKEN:  September 15, 2023
REPORTED BY:  Evelyn M. Adrean, RPR, FPR, CCR 22009424

---

Page 2

1
2          A P P E A R A N C E S :
3
     FOR PLAINTIFF:
4    RYAN D. DREVESKRACHT, ESQUIRE
     CORINNE SEBREN, ESQUIRE
5    Galanda Broadman, PLLC
     8606 35th Avenue NE, Suite L1
6    Seattle, Washington 98115
     206-557-7509
7    ryan@galandabroadman.com
     corinne@balandabroadman.com
8
9
     FOR DEFENDANT NAPHCARE:
10
     JACOB DEAN, ESQUIRE
11   Perkins Coie, LLP
     1888 Century Park East
12   Los Angeles, California 90067-1721
     310-788-3289
13   jacobdean@perkinscoie.com
14
15   FOR DEFENDANT PIERCE COUNTY:
16   KRISTAL M. COWGER, ESQUIRE
     Pierce County Prosecutor's Office
17   930 Tacoma Avenue South, Room 946
     Tacoma, Washington 98402-2171
18   253-798-4265
     kristalcowger@piercecountywa.gov
19
20          * * * * *
21
22
23   ALSO PRESENT:  Michael Hehenkamp, Videographer
24
25

---

Page 3

1          DEPOSITION OF DARREN NEALIS
2               EXAMINATION INDEX
3    EXAMINATION BY                      PAGE
4    Mr. Dreveskracht                      6
5    Mr. Dean                             60
6    Ms. Cowger                           64
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

---

Page 4

1               EXHIBIT INDEX
2    EXHIBITS FOR IDENTIFICATION            PAGE
3    1  Mental Health Housing Policy          22
4    2  Mental Health Services Policy and Procedures
        Manual - General Guidelines           25
5
     3  Basic Mental Health Services          28
6
     6  Kite Request No. 333218               32
7
     7  9/29/18 Observation Report            34
8
     8  8/15/19 Behavior Log                  35
9
     12 Sick Calls                            32
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1 (Pages 1 to 4)

Tapia v. Naphcare, Inc., et al.                                              Darren Nealis

---

Page 29

1      A. Well, I mean, even if we weren't able to
2  provide the full assessment for whatever reason, you
3  know, we would still put a plan like, you know, try to
4  meet with them again.  So -- so not necessarily, you
5  know, you'd still formulate what the next step would be
6  even if you hadn't been able to do the assessment.
7      **Q. Okay.  That makes sense.  Down here on No. 9 it
8  says: "Mental health services are coordinated with the
9  medical clinic staff to provide appropriate psychiatric
10 treatment to mentally ill inmates with medical
11 conditions."  Can you walk me through how that might
12 happen?  Like what is the medical clinic staff typically
13 involved in generating a patient's stabilization plan or
14 medical staff, mental health staff provide care separate
15 and independent of each other?  How would that work?**
16     MR. DEAN:  Objection to form.
17     MS. COWGER:  Join.
18     A. The mental health staff would typically
19 collaborate with the medical staff just by going and
20 doing -- making a referral or asking them -- like, in
21 the case of trying to refer someone for psychiatric
22 meds, we would go and, you know, refer and indicate, oh,
23 can we get this person in sooner, they want to get back
24 on their psychotropic medications; or hey, this looked,
25 you know, look like they might need to be seen by the

---

Page 30

1  nurse, can we have someone go see her.  So the
2  collaboration was mostly verbal, you know, and then we
3  would document typically that we -- we had the
4  interaction.
5      **Q. Okay.  So it sounds like it was more informal;
6  is that fair to say?**
7      MS. COWGER:  Objection.  Form.
8      A. Well I think it was -- it was just -- there
9  wasn't a paper form or an electronic form, it was
10 typically the -- you would talk to the nurses station
11 and have the interaction.
12     **Q. Okay.**
13     A. So it was still formal, but it was not a form
14 based.
15     **Q. Gotcha.  It wasn't documented?**
16     MS. COWGER:  Objection.  Form.
17     A. It was -- it was just supposed to be documented
18 in your note that you made a referral.
19     **Q. Okay.  And do you recall whether in regard to
20 Mr. Tapia you did that, you walked to the nurses station
21 and made a referral?**
22     A. Yes.
23     **Q. So you did?**
24     A. I did in at least one situation refer him to
25 medical after seeing him.

---

Page 31

1      **Q. And do you recall who you made that referral
2  to?**
3      A. No.
4      **Q. And do you recall whether or not you documented
5  that referral?**
6      A. I -- I believe I did.  I believe I did document
7  that I made a referral to medical.
8      **Q. And did you document what you told medical?**
9      A. No.
10     **Q. And did you recall what you told medical?**
11     A. I don't recall.  I -- typically, it would have
12 just been whatever I was observing.  And -- and in his
13 case, I wasn't getting, you know, verbal responses from
14 him, so I -- I would have told them that.
15     **Q. So you thought that it might be a medical
16 issue; is that correct?**
17     MS. COWGER:  Objection.  Form.
18     MR. DEAN:  Join.
19     A. I wasn't sure, but I knew it was possible.
20     **Q. All right.  So after making a -- a mental
21 health -- or excuse me.  After making a referral to
22 medical, what sort of documentation -- documentation are
23 you required to put in the chart note, if anything?  Do
24 you recall?**
25     MS. COWGER:  Objection.  Form.

---

Page 32

1      MR. DEAN:  Join.
2      A. Whatever you observe during the interaction and
3  then the fact that you made the referral.
4      **Q. Okay.  I'm showing you now what's been
5  premarked as Exhibit 6.  Do you see that?**
6      A. Yes.
7      **Q. And it looks like Mr. Tapia made a -- a
8  kite request to see medical on September 13th at
9  9:07 a.m.; is that correct?**
10     A. Yes.
11     **Q. And it looks like at 1:44 a.m. the next
12 morning, he was informed that he was scheduled to see a
13 sick call nurse.  Do you see that?**
14     A. Yes.
15     **Q. And then showing you now what's been pre-marked
16 Exhibit 12.  Do you see that?**
17     A. Yes.
18     **Q. And it looks like this says that -- canceled by
19 Jesus Perez on 9/14/2018.  Do you see that?**
20     A. Yes.
21     **Q. Okay.  Would it -- would it be typical that a
22 mental health provider would cancel a sick call for an
23 inmate in the fall of 2018?**
24     MS. COWGER:  Objection.  Form.
25     A. I don't recall -- I don't recall that.  When I

BUELL REALTIME REPORTING, LLC
206.287.9066  |  800.846.6989

Tapia v. Naphcare, Inc., et al.                                        Darren Nealis

Page 65

1      A.  That's correct.  And -- and we would also
2   discuss with each other even if something came up after
3   the morning meeting that needed to be addressed, you
4   know.  But the -- the daily morning meeting was the time
5   set aside for that.
6      **Q.  And was the mental health manager part of those**
7   **meetings?**
8      A.  Yes.
9         MS. COWGER:  I don't have anything further.
10         MR. DREVESKRACHT:  Nothing from me.
11         THE VIDEOGRAPHER:  Here marks the end of
12   Media Unit No. 3 and concludes the deposition of Darren
13   Nealis.  We are going off the record at 10:56 a.m.
14   Thank you.
15         THE REPORTER:  Ryan, did you want to order
16   the transcript?
17         MR. DREVESKRACHT:  We'll take just a PDF.
18   We don't -- If there were any exhibits, we don't need
19   them.
20         MR. DEAN:  We'll take the transcript and
21   exhibits, please.
22         MS. COWGER:  Same here, please.
23         (Reading and signing was not requested
24          pursuant to FRCP Rule 30(e).
25         (Deposition concluded at 10:56 a.m.)

Page 66

1             C E R T I F I C A T E
2
3   STATE OF WASHINGTON
4   COUNTY OF WHATCOM
5
6
7      I, Evelyn M. Adrean, RPR, a Certified Shorthand
8   Reporter in and for the State of Washington, do hereby
9   certify that the foregoing transcript of the deposition
10   of DARREN NEALIS, having been duly sworn on
11   SEPTEMBER 15, 2023, is true and accurate to the best of
12   my knowledge, skill, and ability.  Reading and signing
13   was not requested pursuant to FRCP Rule 30(e).
14         IN WITNESS WHEREOF, I have hereunto set my hand
15   and seal this 19th day of September 2023.
16
17
18
19   _____
         EVELYN M. ADREAN, CCR, RPR
20
21
22
23
24

