# EXHIBIT 5

Case 2:22-cv-01141-KKE    Document 183-5    Filed 12/16/24    Page 1 of 18

Case 2:22-cv-01141-KKE   Document 183-5   Filed 12/16/24   Page 2 of 18

Tapia v. Naphcare, Inc., et al.                                    Debra Ricci

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

JAVIER TAPIA,

    Plaintiff,

  v.                                   No. C22-1141-JCC

NAPHCARE, INC., et al,

    Defendants.

VIDEOTAPED VIDEOCONFERENCE

DEPOSITION UPON ORAL EXAMINATION

OF

DEBRA RICCI

[Witness Located in Seattle, Washington
with All Parties Appearing via Zoom.]

DATE TAKEN: Friday September 29, 2023, 10:00 a.m.

REPORTED BY: Danielle Schemm CCR 3395

BUELL REALTIME REPORTING, LLC
206.287.9066 I 800.846.6989

Tapia v. Naphcare, Inc., et al.                                      Debra Ricci

Page 2

```
 1              A P P E A R A N C E S
 2  APPEARING FOR PLAINTIFF TAPIA:
 3              RYAN DREVESKRACHT, ATTORNEY AT LAW
                Galanda Broadman, PLLC
 4              8606 35th Avenue Northeast, Apt Lw1
                Seattle, Washington 98115
 5              ryan@galandabroadman.com
                206.909.3842
 6
 7
    APPEARING FOR DEPONENT AND DEFENDANT NAPHCARE, INC.:
 8
                JULIANA BENNINGTON, ATTORNEY AT LAW
 9              JACOB DEAN, ATTORNEY AT LAW
                Perkins Coie LLP
10              1201 3rd Avenue Suite 4900
                Seattle, Washington 98101-3095
11              jbennington@perkinscoie.com
                jacobdean@perkinscoie.com
12              206.359.3268
                310.788.3289
13
14  APPEARING FOR DEFENDANT PIERCE COUNTY:
15              KRISTAL COWGER, ATTORNEY AT LAW
                Pierce County Prosecuting Attorney
16              930 Tacoma Avenue South, Rm 946
                Tacoma, Washington 98402
17              kristal.cowger@piercecountywa.gov
                253.798.4265
18
19
    ALSO PRESENT:   CECIL W GRANT, VIDEOGRAPHER
20                  DANI SCHEMM, CERTIFIED COURT REPORTER
21
22
23
24
25
```

BUELL REALTIME REPORTING, LLC
206.287.9066  l  800.846.6989

Tapia v. Naphcare, Inc., et al.                                Debra Ricci

Page 14

1   Anything else?
2       A   I can answer kites, medical kites.
3       Q   Okay.  And in the state of Washington as an LPN,
4   you can only perform tasks under the direction of a
5   physician or an RN; is that correct?
6       A   Yes.
7       Q   I'm going to show you an exhibit that's been
8   premarked as Exhibit No. 1.  Can you see that?
9               (Deposition Exhibit No. 1 was marked for
10              identification.)
11      A   Uh-huh.
12      Q   Okay.  Are you familiar with this document?
13      A   Am I familiar with his document or the document?
14      Q   With this document.
15      MS. BENNINGTON:  So Counsel, just to let you know, we
16  have all of your exhibits downloaded on her computer, so
17  she just opened up the PDF and is scrolling through it.
18      MR. DREVESKRACHT:  Okay.
19      A   That particular document, no.
20      Q   [BY: MR. DREVESKRACHT] Okay.  You've never seen
21  this before?
22      A   I don't recall seeing it.
23      Q   Okay.  So it looks like this is a Naphcare
24  printout of a medical record titled Treatment
25  Administration.

Tapia v. Naphcare, Inc., et al.                               Debra Ricci

Page 15

```
 1       A    Okay.
 2       Q    Is that correct?
 3       A    I -- yeah, I can see the treatments on there.
 4       Q    Okay.  And I'm going down to the third page.  It's
 5   marked Bates stamped 898.  And it looks like there's an
 6   entry that you made --
 7       A    On --
 8       Q    -- on October 1st, 2018 --
 9       A    Uh-huh.
10       Q    -- at 7:13 a.m., is that correct?
11       MS. BENNINGTON:  Objection.  Mischaracterizes the
12   evidence.
13       A    I see it, yes.
14       Q    [BY: MR. DREVESKRACHT] Okay.  Did you make this
15   entry?
16       A    Yes.
17       Q    Okay.  And did you make it at 7:13 a.m.?
18       MS. BENNINGTON:  Objection.  Mischaracterizes the
19   evidence.
20       A    Yes.
21       Q    [BY: MR. DREVESKRACHT] Okay.  And do you recall
22   the name of the physician or RN you were working under on
23   October 1st, 2018 when you made this entry?
24       A    No.
25       MS. BENNINGTON:  Objection.
```

Case 2:22-cv-01141-KKE   Document 183-5   Filed 12/16/24   Page 6 of 18

Tapia v. Naphcare, Inc., et al.                                  Debra Ricci

Page 16

1    THE WITNESS:  Oh, sorry.
2    MR. DREVESKRACHT:  Juliana, did you want to say what
3    the objection is for?
4    MS. BENNINGTON:  Calls for speculation.
5    Q    [BY: MR. DREVESKRACHT] Okay.  Now I'm going to
6    show you what's been previously marked as Exhibit 2.  Are
7    you familiar with this document?
8            (Deposition Exhibit No. 2 was marked for
9             identification.)
10   A    Yes.
11   Q    And can you describe for me what it is?
12   A    It's a refusal.  When -- it's a refusal.
13   Q    Okay.  And you -- so you entered medication
14   refusal for Mr. Tapia's refusal of vital signs on
15   October 1st; is that correct?
16   A    Yes.
17   Q    And from what I understand, Mr. Tapia was in a
18   single cell with a closed door and a small window where
19   you could look in and a port that could be opened up by
20   corrections staff; is that correct?
21   A    Yes.
22   MS. BENNINGTON:  Objection.
23   Q    [BY: MR. DREVESKRACHT] And do you recall when you
24   attempted to take Mr. Tapia's vitals, did you speak to him
25   through the door or through the port that could be opened

Case 2:22-cv-01141-KKE   Document 183-5   Filed 12/16/24   Page 7 of 18

Tapia v. Naphcare, Inc., et al.                                    Debra Ricci

Page 17

1   up by corrections staff?
2       A   I don't recall speaking to Mr. Tapia.
3       Q   Okay.  Did you not speak to Mr. Tapia?
4       A   I must have if I got the refusal.
5       Q   I'm going to show you what's been previously
6   marked Exhibit 4.  Are you familiar with this document?
7               (Deposition Exhibit No. 4 was marked for
8               identification.)
9       A   Let me see.  I'm familiar with that format, yes.
10      Q   Okay.  And have you seen this one before?
11      A   Yes.
12      Q   This is a behavioral log for Mr. Tapia.
13      A   Yes.
14      Q   Okay.  And it looks like on September 30th, so the
15  day before you made your entry, there's an entry by --
16  looks like I. Concepcion Poo.  Do you know who that is?
17      A   She was a mental health provider.
18      Q   Okay.
19      A   I mean a mental health -- mental health
20  professional.
21      Q   Okay.  And she wrote in here that the inmate
22  appeared to be sleeping and did not respond to MHP knocks
23  on door or calling of name.  Do you see that?
24      A   Yes.
25      Q   Is that how Mr. Tapia appeared when you attempted

Tapia v. Naphcare, Inc., et al.                              Debra Ricci

Page 18

```
1    to take his vitals as well on October 1st?
2        A    I don't recall.
3        Q    Do you recall whether Mr. Tapia was sleeping or
4    whether he responded to your attempts to take his vitals
5    on October 1st?
6        A    No, I don't recall.
7        Q    Okay.  Do you recall whether Mr. Tapia was
8    nonverbal when you attempted to take his vitals?
9        A    No.
10       Q    Okay.  Going back to Exhibit 2 here, down here
11   there's -- on the bottom, there's a check where it says,
12   "Patient denied to sign acknowledging medication refusal."
13           Do you see that?
14       A    Yes.
15       Q    And then there's a witness signature that's blank;
16   is that correct?
17       A    Yes.
18       Q    Do you know why that witness signature is blank?
19       A    Well, when the inmate refuses to sign the refusal,
20   then he doesn't sign it, and the witness is generally the
21   corrections officer, and they most of the time don't want
22   to sign it either.
23       Q    Okay.  Did you notify your supervising physician
24   or RN about Mr. Tapia's nonresponse to your attempt to
25   take his vitals?
```

124223df-90c6-4421-a7be-63b0f1f9ae2e

Case 2:22-cv-01141-KKE   Document 183-5   Filed 12/16/24   Page 9 of 18

Tapia v. Naphcare, Inc., et al.                                    Debra Ricci

Page 19

1   MS. BENNINGTON:  Objection.  Mischaracterizes the
2   evidence.
3       A   He obviously responded because I have the refusal.
4       Q   [BY: MR. DREVESKRACHT] Yeah.  My question was:
5   Did you notify your supervising physician or RN about
6   that?
7       A   I don't recall.
8       Q   I'm showing you now what's been premarked as
9   Exhibit 3.  Are you familiar with this document?
10          (Deposition Exhibit No. 3 was marked for
11          identification.)
12      A   That particular document, no, but I know it's --
13  where it comes from.
14      Q   Okay.  Where does it come from?
15      A   It comes from the -- the policies and procedures.
16      Q   Okay.  And as a LPN working for Naphcare, are you
17  mandated to comply with Naphcare's policies and
18  procedures?
19      A   Yes.
20      Q   And in all your acts and omissions with Mr. Tapia
21  on October 1st, did you?
22      A   Yes.
23      Q   I'm showing you again what's been premarked
24  Exhibit 1, and it says here "Informed consent and right to
25  refuse," and it says that it was -- this policy was

Tapia v. Naphcare, Inc., et al.                                    Debra Ricci

Page 21

1  when you filled out the -- what's been previously marked
2  as Exhibit 2, correct?
3      A   I didn't obtain?  No, I didn't.
4      Q   Okay.  Why not?
5      A   Well, if I asked the corrections officers and they
6  say no, then I don't have anybody else to ask -- ask for a
7  witness.
8      Q   Okay.  Do you recall asking a corrections officer?
9      A   No.
10     Q   So sitting here today, you can't tell me whether
11 you did or did not ask a corrections officer to sign as a
12 witness, correct?
13     A   My general practice is when the inmate refuses his
14 medication or his treatments, then I ask the corrections
15 officer.  And if the inmate won't sign and the corrections
16 officer won't sign, then -- then I have to go with that.
17     Q   Okay.  But you don't recall, sitting here today,
18 whether you asked the corrections officer to sign; is that
19 correct?
20     A   No.
21     Q   "No" you don't remember?
22     A   No, I don't remember.
23     Q   Okay.  And then I'm looking here at Subsection E
24 of the same policy, and it says, "Refusals of medical
25 treatment for serious conditions will be communicated by

Tapia v. Naphcare, Inc., et al.                                   Debra Ricci

Page 22

1  the facility's medical" -- excuse me.  "Refusals of
2  medical treatment for serious conditions will be
3  communicated to the facility's medical director."
4       Do you see that?
5   A   Yes.
6   Q   And did you notify Pierce County Jail's medical
7  director of Mr. Tapia's alleged refusal?
8   A   I don't recall.
9       MS. BENNINGTON:  Objection.
10  Q   [BY: MR. DREVESKRACHT] Did you believe at the time
11 that Mr. Tapia's condition was serious?
12  A   I don't recall Mr. Tapia.
13  Q   Okay.  Is it within the scope of your practice to
14 make the determination of whether or not to notify Pierce
15 County's medical director of Mr. Tapia's alleged refusal
16 or was that a determination to be made by a higher
17 level -- excuse me --
18      MS. BENNINGTON:  Objection.
19  Q   -- higher level provider?
20      MS. BENNINGTON:  Objection.
21      MS. COWGER:  Join.
22      MS. BENNINGTON:  You can answer if you understood the
23 question.
24  A   I have the ability to contact the provider or I
25 contact the charge nurse.

BUELL REALTIME REPORTING, LLC
206.287.9066  l  800.846.6989

124223df-90c6-4421-a7be-63b0f1f9ae2e

Tapia v. Naphcare, Inc., et al.                                    Debra Ricci

Page 23

1   Q   [BY: MR. DREVESKRACHT] Okay.  And did you contact
2   either in regard to Mr. Tapia?
3   A   I don't recall.
4   Q   If you did, would it have been somewhere in his
5   medical record?
6       MS. BENNINGTON:  Objection.
7   A   Yes, usually I would do that.
8   Q   [BY: MR. DREVESKRACHT] Okay.
9   A   I would chart it, yes.
10  Q   So if it's not in his medical record, more likely
11  than not you didn't contact a higher level provider; is
12  that fair to say?
13  A   Yes.
14  Q   Subsection G here, it says that, "A psychiatric
15  evaluation will be requested for all patients who have or
16  have had a mental health diagnosis and refuse treatment."
17      Do you see that?
18  A   Yes.
19  Q   And did you request a psychiatric evaluation for
20  Mr. Tapia?
21      MS. BENNINGTON:  Objection.  You can answer.
22  A   I don't recall.
23  Q   [BY: MR. DREVESKRACHT] So you don't recall whether
24  you did or did not?
25  A   No.

Tapia v. Naphcare, Inc., et al.                                    Debra Ricci

Page 24

1  Q    And if you did, would it more likely than not be
2  in his medical records somewhere?
3  A    The way you do that is you set them up with an
4  appointment with the mental health.
5  Q    And would that be documented in his medical
6  records somewhere?
7  A    Yes.
8  Q    So if it's not, it's fair -- it'd be fair to
9  assume, more likely than not, that you did not make a
10 request for psychiatric evaluation; is that fair to say?
11 A    Yes.
12 Q    I'm showing you again what's been premarked
13 Exhibit 4.  This is Mr. Tapia's behavioral -- a printout
14 of his behavioral log.
15 A    Uh-huh.
16 Q    Is this something that you would have had access
17 to prior to your attempted interaction with him on
18 October 1st?
19 A    Do I have access to it?  Yes.
20 Q    Is this something that you would have reviewed
21 prior to your interaction with him or attempted
22 interaction with him on October 1st?
23 MS. BENNINGTON:  Objection.  Mischaracterizes the
24 evidence.  You can answer.
25 A    No.

124223df-90c6-4421-a7be-63b0f1f9ae2e

Tapia v. Naphcare, Inc., et al.                                      Debra Ricci

Page 26

```
 1   what's been premarked Exhibit 6.
 2           Are you familiar with this document?
 3               (Deposition Exhibit No. 6 was marked for
 4               identification.)
 5      A    I'm familiar with the format, yes.
 6      Q    Okay.  And it looks like then the -- the next day
 7   on the 14th, someone by the name of Jesus Perez cancelled
 8   the appointment for Mr. Tapia; is that correct?
 9      A    Yes.
10      Q    And that would have cancelled the -- what we were
11   just looking at here, the appointment to see a sick call
12   nurse; is that correct?
13           MS. BENNINGTON:  Objection.
14           MS. COWGER:  Join.
15      A    It appears that's what happened.
16      Q    [BY: MR. DREVESKRACHT] And then it looks like on
17   the 29th, September 29th, 2018, mental health put in
18   another request to have Mr. Tapia medically evaluated to
19   rule out any medical issues; is that correct?
20           MS. BENNINGTON:  Objection.
21      A    Yes.
22      Q    [BY: MR. DREVESKRACHT] And it indicates here that
23   this was completed on October 1st, 2018, correct?
24      A    Yes.
25      Q    And do you know why it indicates that that was
```

Tapia v. Naphcare, Inc., et al.                                    Debra Ricci

Page 29

1     THE WITNESS:  Say it again.
2     MR. DREVESKRACHT:  I'll have the court reporter read
3  it back, and then if you want me to rephrase it, I will.
4     COURT REPORTER:  Question:  And did all of your acts
5  and omissions comport with Naphcare's policies and
6  established practices in regard to your interactions with
7  Mr. Tapia?
8     MS. BENNINGTON:  Objection.  You can answer if you
9  can.
10    A    Yes.
11    MR. DREVESKRACHT:  All right.  Thank you for your
12 time.  I don't have any further questions.  Counsel may
13 have some follow up.
14    THE WITNESS:  Thank you.  We can unmute?
15    MS. BENNINGTON:  Leave yourself on.
16        Kristal, do you have anything?
17    MS. COWGER:  I don't have anything.
18    MS. BENNINGTON:  Thank you.  Okay.  I would just like
19 to take a 5-minute break, if that's okay?
20    MR. DREVESKRACHT:  Okay.
21    MS. BENNINGTON:  Okay.
22    MR. DREVESKRACHT:  So we'll be back at 10:40?
23    MS. BENNINGTON:  Yes.
24    VIDEOGRAPHER:  We are going off the record.  The time
25 is now 10:35 a.m.

Tapia v. Naphcare, Inc., et al.                              Debra Ricci

Page 34

```
 1      Q   Okay.  Down a little further, Ryan had walked you
 2   through these two sections.  Section E says, "Refusal of
 3   medical treatment for serious conditions will be
 4   communicated to the facility's medical director."
 5          Do you consider refusal of taking vitals to be a
 6   refusal of medical treatment?
 7      A   No.
 8      Q   Okay.  So you would not have, under this policy,
 9   been required to communicate to the facility's director a
10   refusal to have vitals taken, correct?
11      A   Say that again.
12      Q   So you -- under this policy, you would not have
13   been required to tell the facility's medical director if a
14   patient refused vitals.
15      A   I would not be required.
16      Q   Okay.  And then down below, Section G says, "A
17   psychiatric evaluation will be requested for all patients
18   who have had a mental health diagnosis and refuse
19   treatment."
20          So again, do you consider taking vitals to be
21   treatment?
22      A   No.
23      Q   So you would not have had to request a medical --
24   sorry.  Let me rephrase.
25          So you would -- under this policy, you would not
```

Case 2:22-cv-01141-KKE   Document 183-5   Filed 12/16/24   Page 17 of 18

Tapia v. Naphcare, Inc., et al.                                Debra Ricci

Page 35

1  have been required to request a psychiatric evaluation
2  when a patient refuses to have their vitals taken?
3      A   I would not have.
4      Q   Okay. And then I'd like to show you Exhibit 7.
5  This was shown to you earlier as treatment records. As
6  you can see on the top, it's someone else's. Sorry.
7  Training records.
8      A   Uh-huh.
9      Q   At the top it's someone else's training record.
10     A   Okay.
11     Q   And then at the bottom of the first page, we
12 transition into yours.
13     A   Oh.
14     Q   What is the date -- the first date for you that
15 appears in this? The first line?
16     A   March 22nd, 2018.
17     Q   Did you have training by Naphcare before
18 March 22nd, 2018?
19     A   Yes.
20     Q   Okay. Let's go down to the very end. I guess
21 it's not completely in order so. Oh, we switched humans.
22 Okay. So there's also other entries. If you look through
23 all your entries, do you see any entries that are not in
24 2018 for you?
25     A   No.

Case 2:22-cv-01141-KKE   Document 183-5   Filed 12/16/24   Page 18 of 18

Tapia v. Naphcare, Inc., et al.                                    Debra Ricci

Page 38

1  no interest in the outcome of said litigation;
2              This certification does not apply to
3  reproduction of this transcript by any means not under my
4  direct supervision and control.
5              Reading and signing was requested pursuant
6  to FRCP Rule 30(e).
7              Signed and dated this 6th day of
8  October 2023.
9
10
11
12  _____
13  DANIELLE SCHEMM
    CERTIFIED COURT REPORTER
14  IN AND FOR THE STATE OF
    WASHINGTON, RESIDING AT
15  BELLINGHAM.  LICENSE EXPIRES
    JULY 16, 2024
16
17
18
19
20
21
22
23
24
25