UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAVIER TAPIA, | CASE NO. C22-1141-KKE |
| Plaintiff(s), | ORDER ON MOTIONS IN LIMINE |
| v. | |
| NAPHCARE INC., et al., | |
| Defendant(s). | |

The Court has scheduled a jury trial in this matter for March 24, 2025.  Dkt. No. 152.  The parties timely filed their motions in limine.  Dkt. No. 202.  During the pretrial conference on March 11, 2025, the Court ruled on these motions as stated on the record.  Dkt. No. 222.  This written order memorializes the Court's oral rulings from the pretrial conference.

## I.    BACKGROUND

Plaintiff Javier Tapia developed Phlegmasia Cerulea Dolens ("PCD") and subsequently had his leg amputated below the knee while incarcerated at Pierce County Jail.  Dkt. No. 104-2.  He filed suit against Pierce County and NaphCare, Inc. ("NaphCare"), a private company contracted to provide medical care to Pierce County Jail inmates.  Dkt. No. 1.  Tapia argues that he received inadequate medical care while detained, and that Defendants' denial or delay of care directly caused the amputation of his leg and violated his constitutional rights under 42 U.S.C. § 1983.  Dkt. No. 15.

On March 7, 2025, Pierce County filed a stipulated dismissal. Dkt. No. 209 at 1. NaphCare is now the sole defendant. *Id.*, Dkt. No. 211. Tapia's § 1983 claim against NaphCare proceeds under three *Monell* theories of liability or unofficial "widespread customs" that he contends violated his constitutional right to medical care. Dkt. No. 186 at 9–10. First, Tapia claims that NaphCare maintained a policy of LPNs working outside their nursing scope of practice. *Id.* Second, Tapia asserts that NaphCare had a policy of using medically untrained correctional officers to provide medical monitoring. *Id.* at 10. And lastly, Tapia contends that NaphCare had a policy of non-communication between mental health and medical providers, and a custom of a lack of oversight. *Id.* Tapia has waived economic damages, including lost and future wages. Dkt. No. 202 at 5. Tapia seeks damages for noneconomic losses and punitive damages. *Id.*

## II.   MOTIONS IN LIMINE

Parties may file motions in limine before or during trial "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). To resolve motions in limine, the Court is generally guided by Federal Rules of Evidence 401 and 403. Specifically, the Court considers whether evidence is relevant, meaning that it "has any tendency to make a fact more or less probable than it would be without the evidence" and that "the fact is of consequence in determining the action." Fed. R. Evid. 401. The Court may exclude even relevant evidence, however, if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The Court notes that the findings and conclusions in this order, like all rulings in limine, are preliminary and can be revisited at trial based on the facts and evidence as they are presented. *See, e.g.*, *Luce*, 469 U.S. at 41–42 (explaining that a ruling in limine "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the …

proffer" and that "even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling").

### III.   ANALYSIS

Pursuant to the parties' agreement, the Court adopts the parties stipulated motions in limine.  Dkt. No. 202 at 3.  The Court decides the parties' disputed motions as follows.

**A.    Tapia's Disputed Motions in Limine**

1.    <u>Motion in Limine No. 1: Argument that the standard of care governing adequate medical care is lower in a correctional setting</u>

Tapia seeks to exclude the argument that the standard of care governing adequate medical care "is different or lessor [sic] in the corrections setting."  Dkt. No. 202 at 3.  According to NaphCare, this motion is unnecessary because whether NaphCare owed a duty of care under Washington state law is no longer at issue.  *Id.* at 4.

NaphCare's argument is beside the point.  As Pierce County's medical provider at the Jail, NaphCare has an obligation to provide constitutionally adequate medical care for pretrial detainees.  *See Est. of Nelson v. Chelan Cnty.*, No. 2:22-CV-0308-TOR, 2024 WL 1705923, at *12 (E.D. Wash. Apr. 19, 2024).  "Accepted standards of care and practice within the medical community are highly relevant in determining what care is medically acceptable and unacceptable."  *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019).  And as the Court explained in its order on the parties' *Daubert* motions, NaphCare again fails to meaningfully distinguish the standard of care in correctional and non-correctional medicine.  Dkt. No. 193 at 14. NaphCare argues that "[p]roviding healthcare in a jail setting presents extraordinary difficulties and complications that do not occur in other settings, such as a family clinic or a hospital."  Dkt. No. 202 at 4.  While the Court does not disagree that correctional health care providers encounter challenges unique to the prison setting, it is not convinced that these medical practitioners may be

held to a different or lower standard of care from the one imposed on physicians in other contexts.

*See Balla v. Idaho*, 29 F.4th 1019, 1026 (9th Cir. 2022) (reaffirming that the "community standard

of care *outside of the prison context*" is "highly relevant" to courts' analysis of medical deliberate

indifference (emphasis added)); *Est. of Wilson v. Cnty. of San Diego*, No. 3:20-cv-00457-RBM-

DEB, 2023 WL 8360011, at *4 (S.D. Cal. Dec. 1, 2023).

 As such, the Court grants Tapia's first motion in limine.

 2. <u>Motion in Limine No. 2: Notice of witnesses to be called and demonstratives to be used</u>

 Tapia requests an order requiring parties to disclose witnesses intended to be called and

any demonstratives to be used "as soon as reasonably possible, but no later than the day prior."

Dkt. No. 202 at 4.  NaphCare does not stipulate to this motion.

 It is this Court's practice that parties disclose at the end of each trial day which witnesses

they plan to call the next day.  During trial, this Court also typically requires parties to exchange

demonstratives the day before they are used.  Because this motion comports with the Court's

practice, this motion is granted.

 During the pretrial conference, the Court explained its procedure for demonstratives used

during opening and closing arguments.  The Court requires the parties to exchange any

demonstratives intended to be used during opening arguments by Thursday, March 20, 2025, at

12:00 PM.  Dkt. No. 222.  To the extent there are objections to any demonstratives, the parties are

directed to meet and confer in a good faith attempt to resolve them.  Any objections the parties are

unable to resolve should be briefly explained in a joint status report filed no later than Friday,

March 21, 2025, at 12:00 PM.  *Id.*  The report shall include a copy of the objectionable material

so that the Court may resolve the objections.  The parties are strongly encouraged to work together

to resolve disputes regarding demonstratives without Court involvement.

3.    Motion in Limine No. 3: Tapia's prior employment history

Tapia requests the Court exclude evidence of Tapia's previous employment history (or lack thereof), arguing that this evidence is irrelevant because his prior employment history would only be relevant to demonstrate economic damages, which Tapia has waived.  Dkt. No. 202 at 5.  Tapia further contends that this evidence is prejudicial because NaphCare may use Tapia's employment history to improperly show character.  *Id.*  In response, NaphCare argues that while Tapia no longer seeks economic damages, this evidence remains relevant to Tapia's noneconomic damages.  NaphCare asserts that the jury should have information necessary to compare his life before his incarceration with his life after incarceration and his injury.  *Id.* at 6.

District courts in the Ninth Circuit have considered employment history where plaintiffs cited effects on their employment to support their claim for non-economic damages.  *See, e.g.*, *Meek v. Allstate Fire & Cas. Ins. Co.*, No. 17-cv-00606-NYW, 2018 WL 2301853, at *3 (D. Colo. May 21, 2018) ("Plaintiff also described, in support of his pain and suffering claim, the aggravating effect of his employment duties on his injuries."); *Bardzik v. Cnty. Of Orange*, No. SACV 07-141JVS (RNBx), 2012 WL 13071966, at *3 (C.D. Cal. Apr. 16, 2012) (denying motion in limine regarding plaintiffs' past financial history because it "may be relevant as a source of other stressors when a claim for emotional distress is advanced" and "[p]ast employment history and income may also be relevant to prospective damages.").  Other district courts considered employment history only in relation to economic damages.  *See, e.g.*, *Steward v. United States*, No. CV 03-2715 AHM (AJWx), 2006 WL 8443403, at *12 (C.D. Cal. June 8, 2006), *aff'd*, 282 F. App'x 595 (9th Cir. 2008); *Hill v. United States*, No. 1:11-cv-00413-BLW, 2013 WL 12133657, at *8 (D. Idaho Dec. 26, 2013).  Here, while Tapia disclosed two experts, Mr. Andenmatten and Dr. Volkov, who based their conclusions in part on Tapia's employment history (Dkt. No. 137-4 at 9–10, Dkt. No. 114-20 at 6), in the parties' proposed pretrial order, Tapia indicates that he does not intend to call either

witness.  *See* Dkt. No. 201 at 4–7.  It is unclear whether Tapia intends to argue at trial that his injury specifically affected his employment, which in turn impacted his quality of life.

As such, the Court grants in part and denies in part this motion.  If, at trial, Tapia introduces evidence showing that his employment prospects were negatively impacted by his injury to demonstrate non-economic damages, NaphCare may offer other evidence relating to Tapia's past employment history.  If NaphCare intends to introduce such evidence on Tapia's employment history, it must first make an offer of proof outside of the jury's presence.

4. Motion in Limine No. 4: Tapia's past or present income, assets, or similar economic indicators

Tapia seeks to exclude evidence of Tapia's wealth, financial status, or other economic indicators, arguing that such evidence is irrelevant because Tapia has waived economic damages, and this information could "introduce class prejudice into proceedings" and lead jurors to conclude that any significant award of damages would unjustly enrich Tapia.  Dkt. No. 202 at 7.  NaphCare reiterates the same arguments it made in opposition to Tapia's third motion in limine.  *Id.*

The Court grants in part and denies in part Tapia's fourth motion in limine.  Tapia's financial state is relevant only to the extent Tapia introduces evidence that the injury increased his financial stressors (*e.g.*, by impinging Tapia's ability to work or exacerbating his costs for medical care), which subsequently contributed to his non-economic damages.  *See Bardzik*, 2012 WL 13071966, at *1; *Tavakoli v. Allstate Prop. & Cas. Ins. Co.*, No. C11-1587RAJ, 2013 WL 153905, at *5 (W.D. Wash. Jan. 15, 2013).  *C.f. Friedman v. Medjet Assistance, LLC*, No. CV 09-07585 MMM (VBKx), 2010 WL 9081271, at *12 (C.D. Cal. Nov. 8, 2010).  Accordingly, NaphCare may not introduce evidence of Tapia's financial condition unless Tapia opens the door to such evidence by introducing evidence or making arguments that his injury has exacerbated or contributed to his

economic status.  NaphCare must make an offer of proof outside of the presence of the jury if it seeks to introduce this evidence.

5.  <u>Motion in Limine No. 5: Expert testimony regarding other witness's credibility</u>

The Court previously held that character assessments are not the proper subject for expert testimony because they are unhelpful to the factfinder and infringe upon the jury's role.  Dkt. No. 193 at 39 (citing *United States v. Nguyen*, No. 05-10576, 2006 U.S. App. LEXIS 17395, at *2 (9th Cir. July 10, 2006); *Rhine v. Buttigieg*, No. 2:20-cv-01761-RAJ-BAT, 2022 WL 7729817, at *4 (W.D. Wash. Sept. 15, 2022)).  The parties seem to largely agree that expert testimony regarding another witness's credibility is improper, and that expert testimony is limited to their reports.  *See* Dkt. No. 202 at 8–9.  Therefore, the Court grants Tapia's fifth motion in limine.

6.  <u>Motion in Limine No. 6: Prior bad acts</u>

Tapia seeks to exclude evidence of his criminal record, reputation in the community, or unrelated illicit drug use.  Dkt. No. 202 at 9.  He argues that such evidence is inadmissible to prove character and violates Federal Rule of Evidence 404(b), and that NaphCare cannot meet the exceptions provided in Federal Rule of Evidence 609.  *Id.*  Tapia allows the single exception that he was withdrawing from opioids when he was initially incarcerated in June 2018 because this evidence is relevant to his medical condition at the start of his detention.  *Id.*  In response, NaphCare asserts that evidence of Tapia's criminal background, reputation, and unrelated illicit drug use should be admissible because Tapia "opened the door" to this information when he put his character at issue and claimed that "incarceration was largely unremarkable" until September 2018, when he started showing signs of "disordered thinking."  *Id.* at 10 (citing Dkt. No. 18-1 ¶ 8). In NaphCare's view, this evidence is admissible to show that Tapia intended to break the rules during his detention, and that he did not act by accident or mistake.  *Id.* at 11–12, *see also* Dkt.

No. 101-22 at 5 (inmate behavior log describing Tapia's "difficulty following simple rules such as 1400hrs lockdown").

Under Rule 404(b), evidence of prior bad acts is not admissible to show propensity, such as a penchant for rule breaking. However, this type of character evidence may be "admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Ninth Circuit allows courts to admit evidence under Rule 404(b) "if (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." *United States v. Cherer*, 513 F.3d 1150, 1157 (9th Cir. 2008) (cleaned up). "Even if all four conditions are met, the evidence may still be excluded if under Rule 403, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *Duran v. City of Maywood*, 221 F.3d 1127, 1133 (9th Cir. 2000).

For the foregoing reasons, the Court grants this motion in limine as to both Tapia's prior convictions and history of drug use.

      a.   *Prior felony convictions*

The first category of prior bad acts NaphCare aims to introduce include evidence of Tapia's prior felonies between 2012 and 2018, as well as twelve gross misdemeanors between 2000 and August 2017. Dkt. No. 202 at 11. Naphcare argues that Tapia's prior criminal record goes to the material issue of whether his behavior in September 2018 was indicative of a larger health issue, or whether it was part of a pattern of behavior Tapia exhibited before his injury. Here, at least one of Tapia's prior convictions for identity theft go to his character for truthfulness, which could be admissible under Federal Rules of Evidence 608 and 609. Fed. R. Evid. 608(b), 609(a). That said, this conviction is likely inadmissible because of its age. Dkt. No. 202 at 11 (identity theft

conviction on September 13, 2012).  Rule 609(b) limits use of evidence of prior convictions and applies "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Fed. R. Evid. 609(b).  Because of its age, the relevance of Tapia's conviction for identity theft is diminished and does not substantially outweigh its prejudicial effect.  *Id.* (convictions older than 10 years cannot be admitted unless "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect").

Moreover, the instances of alleged "rule-breaking" in the record are dissimilar from the other criminal convictions proffered by NaphCare, even if these convictions occurred less than 10 years ago.  *See* Dkt. No. 101-22 at 4–5.  Specifically, even if Tapia broke rules during his detention (and Plaintiff disputes that he did) these examples are distinguishable from Tapia's prior felonies. Dkt. No. 202 at 11 n.2; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 WL 8941499, at *6 (C.D. Cal. Oct. 6, 2017); *see also Baker v. Cnty. of San Diego*, No. 09-CV-1194 BEN (WMc), 2012 WL 1903899, at *3 (S.D. Cal. May 24, 2012) (excluding defendant's prior "bad acts" because they were dissimilar to the excessive force alleged by plaintiff).  With respect to these prior bad acts, the probative value is also significantly lessened, and risk of potential prejudice is increased. Therefore, evidence of Tapia's prior convictions is inadmissible.

### b.    *History of drug use*

The second category of prior bad acts is Tapia's history of drug use.  NaphCare claims that Tapia's prior drug use goes to the issue of Tapia's non-economic damages because prior drug abuse impacts life expectancy and quality of life.

Typically, "life expectancy informs the measure of economic damages." *Castro v. Cnty. of Los Angeles*, No. 2:13–cv–06631–CAS(SSx), 2015 WL 4694070, at *7 (C.D. Cal. Aug. 3, 2015) (Section 1983 and wrongful death suits arising from alleged use of excessive force and police

brutality) (citing *McAsey v. U.S. Dep't of Navy*, 201 F. Supp. 2d 1081, 1097 (N.D. Cal. 2002)); *see also Wilmotte v. Nat'l R.R. Passenger Corp.*, No. C18-0086 BHS, 2020 WL 106744, at *6 (W.D. Wash. Jan. 9, 2020) (discussing the relevance of life expectancy to economic, not non-economic damages); *Jeffries v. United States*, No. C08-1514RSL, 2009 WL 3151030, at *9 (W.D. Wash. Sept. 28, 2009) (same); *Fernandez v. Taser Int'l, Inc.*, No. C 06-4371 SBA, 2008 WL 4775779, *4 (N.D. Cal. Oct. 27, 2008) (declining to exclude evidence regarding drug history because it "is relevant to the issue of damages, to the extent that it relates to decedent's absence from the workplace"). However, some courts have found life expectancy relevant to non-economic damages in wrongful death suits, where surviving family members of a decedent sue for loss of consortium. *See Hammonds v. Yeager*, No. EDCV 15-1036 SS, 2017 WL 10560471, at *3–5 (C.D. Cal. Aug. 9, 2017) (collecting cases); *see Est. of Casillas v. City of Fresno*, No. 1:16-CV-1042 AWI-SAB, 2019 WL 586747, at *3–4 (E.D. Cal. Feb. 13, 2019) (finding prior drug use relevant to non-economic damages where decedent's family sued for loss of the relationship and support from the decedent). Because the alleged non-economic damages at issue here do not involve Tapia's surviving family, but rather Tapia himself, the Court is disinclined to find life expectancy relevant to Tapia's non-economic damages.

NaphCare also contends that Tapia's prior drug abuse is relevant to his quality of life. In other words, NaphCare claims that the jury needs evidence on Tapia's prior drug use to fairly compare Tapia's quality of life before and after his injury. To support this argument, NaphCare cites three cases—all of which are not conclusive on this point. For example, NaphCare cites *Silva v. Chung*, an excessive force case in which a decedent's family sued for economic and non-economic damages. No. 15-00436 HG-KJM, 2019 WL 2292073 (D. Haw. May 29, 2019). In *Silva*, the court concluded that "[d]efendants are able to inquire with witnesses about the [d]ecedent's quality of life, including his history of drug abuse and mental illness for purposes of

damages" and that "history of drug abuse and mental health treatment are relevant to the issue of life expectancy, occupation, and enjoyment of life." *Id.* at 6.  It is unclear whether the *Silva* court considered prior drug abuse for non-economic damages, and even if it did, that the history of drug use was relevant to the surviving family member's alleged pain and suffering, not the decedent's.  Likewise, *Castro v. County of Los Angeles* is distinguishable because the Court found a decedent's prior drug use relevant to non-economic damages when the plaintiffs—his surviving family— "could have been adversely affected prior to his death which may be related to their loss of consortium and loss of society claims."  2015 WL 4694070, at *7 (cleaned up).  And finally, NaphCare's last cited authority, *Quarles v. Cusumano*, does not discuss the relevance of prior drug use to non-economic damages or quality of life at all.  No. 05-00630 KSC, 2007 WL 4699062, at *2 (D. Haw. June 8, 2007).

Even if the aforementioned cases stand for the proposition that past drug abuse is admissible to show quality of life for purposes of calculating non-economic damages, based on the record before the Court, any effect Tapia's history of drug use had on his current "quality of life" is speculative and attenuated.  NaphCare has not pointed to any evidence in the record showing that Tapia's prior drug use affected his current quality of life.  Indeed, NaphCare's experts discuss Tapia's history of drug use in the context of calculating Tapia's life expectancy and earning capacity, not regarding his quality of life, either before or after his injury.  *See* Dkt. No. 117-26 at 15; Dkt. No. 193 at 37, 44, 46.

The Court weighs these considerations against the risk of unfair prejudice.  The danger of unfair prejudice is high because evidence as to Tapia's prior drug use can "deflec[t] the factfinders' attention from the matters that are really at issue in the case to everyone's universally-shared concerns as to the problems that drug usage is creating for our society."  *Gregory v. Oliver*, No. 00 C 5984, 2003 WL 1860270, at *1 (N.D. Ill. 2003); *see also Murillo v. City of L.A.*, No. CV 21-

8738 FMO (AGRx), 2023 U.S. Dist. LEXIS 234414, at *8 (C.D. Cal. Aug. 21, 2023) (granting motion in limine excluding evidence of prior drug use where defendants argued that such evidence "goes directly to his quality of life [and] life expectancy"). On balance, the risk of unfair prejudice outweighs the probative value of evidence relating to Tapia's prior drug use.

For these reasons, the Court grants Tapia's sixth motion in limine and excludes evidence of Tapia's prior convictions and past drug use. However, as discussed at the pretrial conference, NaphCare is not precluded from introducing evidence concerning the basis for Tapia's 2018 arrest and subsequent detention nor Tapia's opiate use and withdrawal symptoms in 2018.

7. <u>Motion in Limine No. 7: Testimony that Tapia was involved in creating illegal prison alcohol</u>

Tapia argues that NaphCare should be precluded from introducing evidence that states or implies that Tapia was involved in the creation of illegal prison alcohol or "pruno." Dkt. No. 202 at 12. NaphCare "stipulates that there is no definitive proof that Tapia created the pruno" and agrees not to "suggest that Tapia imbibed the pruno or that it caused any changes to Tapia's mental state." *Id.* Nonetheless, NaphCare claims that the pruno remains relevant because NaphCare seeks to show that he was not suffering from a mental illness when he was transferred to the isolation unit; rather, NaphCare argues that Tapia was transferred due to behavioral infractions, including a "temper tantrum" when officials cancelled a visit with his daughter. *Id.*

Given the lack of evidence in the record regarding Tapia's involvement in the creation of the pruno, the probative value of such testimony is outweighed by the potential prejudice towards Tapia. As such, the Court grants Tapia's seventh motion in limine.

8.  Motion in Limine No. 8: Testimony that Tapia obtained or used illicit substances in the Jail

Because NaphCare "stipulates that no expert will state or imply that Tapia obtained or used illicit substances in the jail[,]" the Court grants this motion as unopposed.  Dkt. No. 202 at 14.

9.  Motion in Limine No. 9: Expert testimony that Tapia's past behavior and criminal history show an antagonistic or anti-authority character trait

Tapia seeks to exclude expert opinions on his past criminal history and behavior that conclude that Tapia has a propensity for antagonistic or negative attitudes towards authority figures.  Dkt. No. 202.  Like with his sixth motion in limine, Tapia argues that such evidence constitutes improper character evidence.  *Id.*  For example, Tapia takes issue with NaphCare's expert testimony during a deposition, in which the expert remarked that Tapia's negative attitudes towards authority figures caused Tapia to "malinger" or lie about how he remembered certain events.  *Id.*

The Court grants this motion.  It is indeed material to NaphCare's defense whether Tapia developed health issues that prevented him from following rules and rendered him nonresponsive.  The Court previously concluded that Dr. Abrams has the requisite experience to opine on Tapia's "selective mutism" possibly caused by "willful conduct or anxiety[,]" therefore denying Tapia's motion to exclude Dr. Abrams.  Dkt. No. 193 at 28.

However, Dr. Abrams' deposition testimony referring to Tapia's potential malingering goes beyond the scope of his expert report.  *See* Dkt. No. 117-1, Dkt. No. 117-2 at 11.  Indeed, Dr. Abrams' expert report does not mention or provide the basis for his conclusions on malingering at all.  Therefore, the Court will exclude expert testimony on this topic.  *See Pajas v. Cnty. of Monterey*, No. 16-CV-00945-BLF, 2019 WL 188660, at *4 (N.D. Cal. Jan. 14, 2019) (excluding an expert's deposition testimony that went beyond the scope of his expert report); *Plumley v.*

*Mockett*, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010) (excluding expert's declaration which contained opinions that departed "substantially" from those offered in his expert report).

### 10. Motion in Limine No. 10: Settled or dismissed claims

The parties generally agree that evidence of settled or dismissed claims is irrelevant. Dkt. No. 202 at 15–16. However, NaphCare also argues that evidence about Pierce County, its policies, and its decisions that may have caused Tapia's alleged injuries is relevant and probative to the § 1983 claim pending against NaphCare, especially Tapia's theory that NaphCare and Pierce County had a policy of noncommunication which led to his constitutional injury. *Id.* at 16. Plaintiff clarified at the pretrial conference that he seeks only to exclude evidence of Tapia's settlement with Pierce County.

With that clarification, the Court grants this motion. NaphCare may introduce evidence regarding Pierce County's policies and decision making relating to Tapia's care *without* disclosing the state of Tapia's claims against Pierce County.

### 11. Motion in Limine No. 11: Evidence relating to Tapia's daughter's cause of death

The Court agrees with Tapia that the cause of his daughter's death (i.e., fentanyl overdose) is irrelevant and more prejudicial than probative. Dkt. No. 202 at 16. The Court therefore grants this motion.

## B. NaphCare's Disputed Motions in Limine

### 1. Motion in Limine No. 1: Calling Apex witnesses)

NaphCare seeks to bar Tapia from calling as witnesses (1) Brad McLane, NaphCare's Chief Executive Officer; (2) James ("Jim") McLane, the Chairman of NaphCare's Board of Directors; and (3) Bradley Cain, NaphCare's former Chief Legal Officer. Dkt. No. 202 at 17. During the pretrial conference, Tapia indicated that he does not plan to call any of these witnesses. Therefore, the Court grants this motion as unopposed. In a footnote, NaphCare also moves to

exclude Cathy Ceballos'[1] testimony on the basis that she was not properly disclosed.  Dkt. No. 202 at 18.  While Tapia indicated during the pretrial conference that he did not intend to call Ms. Ceballos, Plaintiff's counsel nonetheless argued she had been properly disclosed via Tapia's deposition testimony.  The Court rejects this argument.  NaphCare's motion to exclude Ms. Ceballos is granted.

    2.  <u>Motion in Limine No. 2: Witnesses outside the Court's subpoena power</u>

NaphCare seeks to bar Tapia from calling witnesses outside the Court's subpoena power under Rule 45, including Jim McLane, Brad McLane, Bradley Cain, Dr. Labine, and Elizabeth Warren.  Dkt. No. 202 at 24.

Tapia represented that he will not call any witnesses outside the Court's subpoena power, including the individuals identified in this motion in limine.  The Court thus grants this motion as unopposed.

    3.  <u>Motion in Limine No. 3: *Monell* policies or practices not mentioned in prior briefing</u>

NaphCare argues that Tapia should be precluded from asserting other *Monell* policies or practices outside the three alleged in response to NaphCare's motion for summary judgment.  Dkt. No. 202 at 25.  NaphCare also asserts that Tapia should not be allowed to introduce evidence of theories the Court previously dismissed—such as failure to train and ratification.  *Id.*

The parties reached an agreement during the pretrial conference that Tapia will not introduce evidence on dismissed theories, and that Tapia will not assert other *Monell* theories outside those identified in his response to NaphCare's motion for summary judgment.  Thus, the Court grants this motion as unopposed.

---

[1] In its motion, NaphCare refers to this individual as "Cathy Cebllos."  Dkt. No. 202 at 23.  Tapia identifies this potential witness as "Cathy Ceballos" in the joint pretrial order.  Dkt. No. 201 at 11.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

4.  <u>Motion in Limine No. 4: Other incidents insufficiently similar to Tapia's case</u>

NaphCare argues that Tapia should be barred from introducing evidence on other incidents that occurred at the Pierce County Jail that would support existence of Tapia's alleged *Monell* customs.  Dkt. No. 202 at 26.  According to NaphCare, these other incidents should be excluded because (1) Tapia failed to properly disclose this information, (2) these other incidents are too dissimilar to Tapia's case to amount to a *Monell* practice, and (3) some of these incidents occurred at Pierce County Jail before NaphCare began providing services there in 2015.  *Id.* at 28.

First, Tapia did not fail to disclose evidence of these other incidents.  NaphCare served an interrogatory asking for "all the policies/practices that allegedly caused a violation of [Tapia's] Fourteenth Amendment rights" and did not ask Tapia to provide a list of other similar incidents at Pierce County.  Moreover, the prejudice against NaphCare, if any, is slight because Tapia obtained this information from former Defendant Pierce County and NaphCare received all exchanged discovery in this matter.  Dkt. No. 203-12 at 4–5.

That said, the other lawsuits and complaints against NaphCare are only relevant to the extent that they demonstrate "practices of sufficient duration, frequency and consistency" to constitute a *Monell* policy.  *Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021).  Tapia does not argue or demonstrate that these other incidents are sufficiently similar.[2]  *See* Dkt. No. 202 at 30.  Indeed, the parties' description of these other incidents is scant.  Therefore, the Court reserves on this issue.  Tapia may make an offer of proof outside of the presence of the jury, and

---

[2] To the extent that Tapia argues that this Court found a genuine dispute as to existence of a *Monell* policy based on the factual findings in *Est. of Hill v. NaphCare, Inc.*, Tapia misstates the Court's prior holding.  No. 2:20-cv-00410-MKD, 2022 WL 1464830 (E.D. Wash. May 9, 2022).  The Court cited to *Hill* to draw comparison between each case's facts, but the Court's holding was based on evidence of policies applied to Tapia.  While a *Monell* policy can be established based on conduct towards an individual or an array of people, at the summary judgment stage, Tapia only presented evidence of conduct towards himself.  If Tapia now seeks to introduce evidence of incidents involving other individuals, he must still show how they—in conjunction with his *own* experiences—establish a pattern under *Monell*.

the Court will decide whether these incidents are sufficiently similar in the factual context in which they arise.

5. Motion in Limine No. 5: Financial information related to NaphCare executives

NaphCare requests the Court to preclude Tapia from arguing or introducing evidence at trial about NaphCare's compensation to executives, shareholders, or board members. Dkt. No. 202 at 31.

Tapia claims that this information goes to NaphCare's financial incentives and motives underlying its policies. However, in so arguing, Tapia equates these non-party individuals to Defendant NaphCare without sufficient basis in the record. *See* Dkt. No. 202 at 32–33 (claiming, without citation to the record, that "NaphCare intentionally reduces its net revenue by distributing it to three entities under 'common control'"). *C.f. Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST, 2021 WL 1232451, at *11 (N.D. Cal. Mar. 31, 2021) (allowing evidence on *individual defendants'* compensation and ownership of Twitter stock during a limited period to show motive and scienter); *In re Homestore.com, Inc.*, No. CV 01-11115 RSWL (CWx), 2011 WL 291176, at *11 (C.D. Cal. Jan. 25, 2011). Therefore, because the risk of prejudice outweighs the probative value of this evidence, the Court grants NaphCare's fifth motion in limine.

6. Motion in Limine No. 6: NaphCare's corporate structure

NaphCare seeks to bar evidence relating to NaphCare's corporate structure, arguing that such information is irrelevant. Dkt. No. 202 at 33.

This Court already concluded that NaphCare's net worth and financial condition are relevant to the issue of punitive damages. Dkt. No. 86 at 12. Moreover, NaphCare's financial incentives are relevant to the existence of *Monell* policies at issue here. Dkt. No. 186 at 17 (citing *Hill*, 2023 WL 6297483, at *8–9). Because the relevance of evidence relating to NaphCare's corporate structure outweighs the risk of prejudice, the Court denies this motion.

7.  <u>Motion in Limine No. 7: Reference to Tapia being malnourished</u>

NaphCare argues that references to malnourishment should be excluded under Rule 403 as irrelevant, unreliable, and prejudicial.  Dkt. No. 202 at 36.  According to NaphCare, a registered dietician, Jane Valley, assessed Tapia on October 2, 2018—Tapia's second day in the hospital—and concluded that Tapia was malnourished.  *Id.*  However, NaphCare claims that Valley later rescinded that assessment during a deposition.  *Id.*  Tapia responds that NaphCare misconstrues Valley's deposition.  Dkt. No. 202 at 37.

The Court denies this motion.  Whether Tapia was malnourished is certainly relevant to his claim.  Moreover, there are multiple references to Tapia's purported malnutrition and dehydration in the record.  *See* Dkt. No. 117-6 at 2; Dkt. No. 112-3 at 8; Dkt. No. 104-29 at 3–4, 9; Dkt. No. 104-11 at 6.  NaphCare's challenges to this evidence are better suited for argument and cross-examination during trial.  *Strandquist v. Washington State Dep't of Soc. & Health Servs.*, No. 3:23-cv-05071-TMC, 2025 WL 331032, at *2 (W.D. Wash. Jan. 29, 2025) ("In ruling on motions in limine, courts do not resolve factual disputes or weigh evidence.").

8.  <u>Motion in Limine No. 8: Press reports, newspaper articles, and online articles</u>

In its eighth motion in limine, NaphCare reiterates the Federal Rules of Evidence, stating that "[s]tatements reported in magazine articles, newspapers, and online articles are hearsay if offered to prove the truth of the matter asserted."  Dkt. No. 202 at 37.  NaphCare does not specify what hearsay material it expects Tapia to introduce.  *See id.*

"A motion *in limine* is ordinarily granted only if the evidence at issue is inadmissible on all potential grounds; if not, the evidentiary ruling is better deferred until trial, to allow for questions of foundation, relevancy, and prejudice to be resolved with the appropriate context."  *Romero v. Washington*, No. 2:20-cv-01027-TL, 2023 WL 6458871, at *1 (W.D. Wash. Oct. 4,

2023); *Strandquist*, 2025 WL 331032, at *2.  Accordingly, the Court reserves on NaphCare's eighth motion in limine.

9.  Motion in Limine No. 9: NaphCare LPN recruitment YouTube video

NaphCare seeks to exclude introduction of a NaphCare LPN recruitment video entitled "Life at NaphCare: Autonomy."  Dkt. No. 202 at 38.  The video was posted on YouTube in 2024.[3] *Id.*  NaphCare argues that the video does not reference LPNs acting outside the scope of their licensure, and that suggesting otherwise is misleading and unfairly prejudicial.  *Id.*  During the pretrial conference, Tapia argued that the video does reference LPNs acting outside the scope, and that the recent posting date demonstrates how NaphCare's unofficial policy has not changed since Tapia's incarceration.

After reviewing the video, the Court finds that this video does not relate to the alleged *Monell* policy of LPNs practicing out of scope.  In the brief 48-second video, there is virtually no reference or allusion to the policy.  At most, NaphCare LPN states in the video "[LPNs] get to do a variety of things that we may typically not do."[4]  This video is irrelevant and likely to confuse the jury.  As such, the Court grants this motion.

10. Motion in Limine No. 10: Expert testimony

For its tenth motion in limine, NaphCare reiterates Federal Rule of Evidence 701, which provides that only expert witnesses may provide expert testimony.  The Court grants this motion.

11. Motion in Limine No. 11: Expert testimony based on inadmissible hearsay

NaphCare asserts that Dr. Bates, Tapia's expert, should not base any of his opinions on a "stray reference … in his rebuttal report to a statement allegedly made by NaphCare's previous

---

[3] NaphCare, Inc., *Life at NaphCare: Autonomy*, YouTube (Mar. 12, 2024),
https://www.youtube.com/watch?v=rMHB92RzJFs.
[4] *Id.*

CEO[,]" because this "reference" constitutes inadmissible hearsay.  Dkt. No. 202 at 40.  NaphCare provides no citation in the record or further description of this "reference," though described it in more detail at the pretrial conference.

The Court denies this motion.  NaphCare may raise specific objections at trial as appropriate, and the Court will decide this issue within the appropriate context.  *Romero*, 2023 WL 6458871, at *5.

12. Motion in Limine No. 12: Golden rule arguments

NaphCare seeks to exclude "golden rule" arguments (i.e., arguments asking the jury to put itself in the shoes of one of the parties), which require the jury to base their decisions on their emotions and prejudices.  Dkt. No. 202 at 41.  The Court agrees that such arguments are improper, and thus, grants this motion.

13. Motion in Limine No. 13: Court's prior *Daubert* order

NaphCare requests the Court to exclude Tapia's expert testimony per the Court's prior *Daubert* order, and then proceeded to list five proposed limitations.  Dkt. No. 202 at 42.  Again, this motion in limine is denied as unnecessary.  The Court does not require NaphCare to reiterate its prior order; it will apply the *Daubert* order as the need arises during trial.

## IV.  CONCLUSION

For the above reasons, the Court decides Tapia's disputed motions in limine as follows:

- Motion in Limine #1 is GRANTED;

- Motion in Limine #2 is GRANTED;

- Motion in Limine #3 is GRANTED IN PART and DENIED IN PART;

- Motion in Limine #4 is GRANTED IN PART and DENIED IN PART;

- Motion in Limine #5 is GRANTED;

- Motion in Limine #6 is GRANTED;

- Motion in Limine #7 is GRANTED;

- Motion in Limine #8 is GRANTED;

- Motion in Limine #9 is GRANTED;

- Motion in Limine #10 is GRANTED; and

- Motion in Limine #11 is GRANTED.

The Court also decides NaphCare's disputed motions in limine as follows:

- Motion in Limine #1 is GRANTED;

- Motion in Limine #2 is GRANTED;

- Motion in Limine #3 is GRANTED;

- Motion in Limine #4 is RESERVED;

- Motion in Limine #5 is GRANTED;

- Motion in Limine #6 is DENIED;

- Motion in Limine #7 is DENIED;

- Motion in Limine #8 is RESERVED;

- Motion in Limine #9 is GRANTED;

- Motion in Limine #10 is DENIED;

- Motion in Limine #11 is DENIED;

- Motion in Limine #12 is GRANTED; and

- Motion in Limine #13 is DENIED.

Dated this 17th day of March, 2025.

Kymberly K. Evanson
United States District Judge