1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAVIER TAPIA, | CASE NO. C22-1141-KKE |
| Plaintiff(s), | ORDER GRANTING MOTION FOR ATTORNEY'S FEES |
| v. | |
| NAPHCARE INC., et al., | |
| Defendant(s). | |

Before the Court is Plaintiff Javier Tapia's renewed motion for attorney's fees.  Dkt. No. 350.  The matter is now ripe for consideration.  *See* Dkt. Nos. 350, 356, 357.  For the reasons below, the Court grants Plaintiff's motion.

## I.    BACKGROUND

In 2021, Tapia sued both Pierce County and NaphCare, Inc. ("NaphCare"), a private company contracted to provide medical care to Pierce County Jail inmates.  While incarcerated as a pretrial detainee at Pierce County Jail, Tapia developed phlegmasia cerulea dolens ("PCD") and subsequently had his leg amputated below the knee.  On August 15, 2022, Tapia's case was removed to federal court.  *See* Dkt. No. 1.  After four years of litigating the case, Tapia pursued a sole § 1983 claim against Defendant NaphCare at trial, asserting that NaphCare violated his right to adequate medical care guaranteed by the Fourteenth Amendment.  Dkt. No. 216.  Following a

1    nine-day jury trial, the jury found NaphCare liable under § 1983, and awarded Tapia $5 million in

2    compensatory damages and $20 million in punitive damages.  Dkt. Nos. 293, 295.

3            Tapia filed a timely motion for attorney's fees and costs on April 22, 2025.  Dkt. No. 315.

4    While that motion was pending, Defendants filed Rule 50(b) and 59 motions for judgment as a

5    matter of law, new trial, and remittitur (Dkt. No. 327), which, following full briefing and oral

6    argument, the Court denied.  Dkt. No. 348.  On August 18, 2025, Plaintiff filed a renewed motion

7    for attorney's fees (Dkt. No. 350), which was subsequently briefed and is now ripe for

8    consideration (Dkt. Nos. 356, 357).  Tapia's counsel and multiple Seattle-based attorneys not

9    affiliated with the case filed declarations in support of Tapia's motion for attorney's fees.  Dkt.

10   Nos. 316–320, 351–353, 358.  On August 25, 2025, NaphCare filed a notice of appeal to the Ninth

11   Circuit.  Dkt. No. 354.

## II.    ANALYSIS

13           Though as a general rule, each party must pay its own attorney's fees and expenses, *see*

14   *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), a prevailing party in a § 1983 action may recover

15   "a reasonable attorney's fee as part of the costs[.]" 42 U.S.C. § 1988.  Although an award of fees

16   is discretionary, "successful plaintiffs should ordinarily recover an attorney's fee unless special

17   circumstances would render such an award unjust."  *Sethy v. Alameda Cnty. Water Dist.*, 602 F.2d

18   894, 897 (9th Cir. 1979) (citation omitted).  This is because "Congress enacted 42 U.S.C. § 1988

19   in order to ensure that federal rights are adequately enforced."  *Perdue v. Kenny A. ex rel. Winn*,

20   559 U.S. 542, 550 (2010).  "The defendant has the burden of showing special circumstances

21   warrant a denial of fees and the defendant's showing must be a strong one."  *Herrington v. Cnty.*

22   *of Sonoma*, 883 F.2d 739, 744 (9th Cir. 1989) (citations omitted).

23

24

**A.    Tapia is the prevailing party and thus may recover attorney's fees.**

Tapia asserts that as the prevailing party, he may recover attorney's fees under 42 U.S.C. § 1988. Dkt. No. 350 at 6.    NaphCare does not contest Tapia's prevailing party status, acknowledging that "Plaintiff prevailed (pending appeal)[.]"    Dkt. No. 356 at 6.    Nor does NaphCare argue that an award of attorney's fees would be unjust.  *See generally* Dkt. No. 356.  A party is prevailing when it has "succeeded on any significant issue in the litigation which achieved some benefit the parties sought in bringing suit."  *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 791–92 (1989) (citation modified); *see also* Local Rules W.D. Wash. LCR 54(d) (permitting "[t]he party in whose favor a judgment is rendered" to file a motion for costs).  Given the jury verdict awarding Tapia $5 million in compensatory damages and $20 million in punitive damages, the Court finds that Tapia is the prevailing party entitled to an award of reasonable attorney's fees and costs.

**B.    Tapia's Fees are Reasonable.**

Tapia requests attorney's fees for prejudgment work in the amount of $1,972,469.00, post-judgment work in the amount of $162,712.00, work on his reply briefing on fees in the amount of $8,710, and litigation expenses in the amount of $128,015.70.  Dkt. No. 350 at 12, Dkt. No. 357 at 5.  In total, Tapia requests $2,271,906.70.  *Id.*

Tapia is entitled to an award of attorney's fees only to the extent they are "reasonable." *Hensley*, 461 U.S. at 433.  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Id.*  This approach is known as the lodestar method.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).  The lodestar "is presumed a reasonable fee when the number of hours and the claimed rate are proved reasonable."  *Stormans Inc. v. Selecky*, 906 F. Supp. 2d 1093, 1100 (W.D. Wash. 2012) (citing *City of Burlington v. Dague,* 505 U.S. 557, 560

(1992)).  A lodestar figure may be adjusted "upward or downward based on a variety of factors." *Gonzalez*, 729 F.3d at 1202.  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee" which "will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435.

Plaintiff seeks compensation for the work of the following professionals:

| Professional | Hourly rate | Total Hours[1] | Total Fees |
|---|---|---|---|
| Jonathan E. Van Eck & Tim Tesh | $600.00 | 67.40 | $40,440.00 |
| Gabe Galanda | $700.00 | 8.80 | $6,160.00 |
| Edwin Budge | $700.00 | 414.50 | $290,150.00 |
| Ryan Dreveskracht | $650.00 | 1518.40 | $986,960.00 |
| Rachel Tobias | $500.00 | 9.90 | $4,950.00 |
| Shelby Stoner | $500.00 | 0.50 | $250.00 |
| Rachael Shulman | $500.00 | 5.00 | $2,500.00 |
| Corinne Sebren | $500.00 | 1369.20 | $684,600.00 |
| Paralegals/Legal Assistants | $195.00 | 655.80 | $127,881.00 |
| TOTAL | | 4049.50 | $2,143,891.00 (lodestar) |

1. <u>The Court need not wait for resolution of the pending appeal.</u>

NaphCare argues that because Tapia's degree of success is the "'most critical factor' in determining the reasonableness" of the requested attorney's fees, the Court should defer ruling on the motion pending the Ninth Circuit's resolution of its appeal.  Dkt. No. 356 at 4 (quoting *Hensley*, 461 U.S. at 436).  NaphCare asserts that district courts have discretion to defer ruling on attorney's fees where "the relationship between the extent of success and the amount of the fee award" remains uncertain because of a pending appeal.  *Id.* (collecting cases).  Tapia counters that the cases NaphCare cites are outliers, and that the Ninth Circuit encourages district courts to rule on

---

[1] In calculating the lodestar amount, the Court combined total hours from prejudgment work, as well as work on post-trial motions (Dkt. No. 358-3). *See Webb v. Ada Cnty.*, 285 F.3d 829, 834–35 (9th Cir. 2002) (fees may be awarded for work on attorney's fee motion and other post-trial motions).  NaphCare does not oppose Tapia seeking fees on his attorney's fees motion. *See generally* Dkt. No. 356.

attorney's fees motions notwithstanding an appeal.  Dkt. No. 357 at 2 (collecting cases).  For the reasons below, the Court agrees with Tapia.

District courts retain jurisdiction "to award attorneys' fees after the notice of appeal from the decision on the merits [has] been filed."  *Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983).  The Ninth Circuit has explained that a district court ruling on attorney's fees notwithstanding an appeal "prevent[s] postponement of fee consideration until after the circuit court mandate, when the relevant circumstances will no longer be fresh in the mind of the district judge," and "prevent[s] delay and duplication at the appellate level."  *Id.*  Thus, "[t]he Ninth Circuit encourages district courts to rule on attorneys' fees motions notwithstanding an appeal[.]"  *Baker v. Baker*, 16-CV-08931 VAP (JPRX), 2018 WL 6190597, at *3 (C.D. Cal. Aug. 31, 2018); *see also Boza v. U.S. Bank, N.A.*, No. LA CV-12-6993 JAK (FMOx), 2013 WL 5943160, at *3 (C.D. Cal. Oct. 28, 2013) (explaining that "the rule is designed to promote judicial economy").

Though NaphCare is correct that the Court has discretion to defer ruling on attorney's fees, *see* Fed. R. Civ. P. 54(d)(2) Advisory Committee's Notes (1993 Amendments), the cases it cites do not support doing so here.  For example, NaphCare cites *Dufour v. Allen*, but in that case, the court provided no explanation for its decision to delay ruling on fees.  2015 WL 12819170, at *2 (C.D. Cal. Jan. 26, 2015).  Similarly, the court in *Barber v. Ohana Military Communities* remarked only that "judicial economy" favored such an approach.  2018 WL 10195925, at *1 (D. Haw. Feb. 6, 2018).  Thus, both *Dufour* and *Barber* are unpersuasive.

Though the court in *Environmental Defense Center v. Bureau of Ocean Energy Management* explains why delaying a ruling on fees was appropriate in that case, its reasoning sounds in judicial efficiency concerns that are not present here.  2019 WL 10786009, at *2–3 (C.D. Cal. Oct. 28, 2019).  There, given the plaintiff's claims under three statutes with varying fee award

provisions, there were "several outcomes … possible on appeal, many of which would change the fees analysis." *Id.* at *2. Thus, the court would have "to determine attorneys' fees under multiple statutes." *Id.* Owing to "the potential for inaccuracies and redundancies in calculating attorneys' fees" and "because it [was] 'highly likely' that the pending appeal [would] impact the Court's attorneys' fees analysis," the court deferred its ruling until resolution of the appeal. *Id.* at *2–3. NaphCare has not pointed to any similar judicial efficiency concerns implicated by its appeal, only generally asserting that "[t]he court of appeals could reverse [the appealed] orders." Dkt. No. 356 at 4. Nor has NaphCare provided argument to support a high likelihood that resolution of the pending appeal will impact the calculation of attorney's fees.

Thus, the Court declines to exercise its discretion to defer ruling on the Plaintiff's fee motion.

2. Plaintiff's hourly rates are reasonable.

In determining hourly rates, the Court must look to the "prevailing market rates in the relevant community." *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The Court may also rely on its own knowledge and experience in determining what rates are reasonable. *See Salyer v. Hotels.com GP, LLC*, Case No. C13-1966-RSL, 2015 WL 3893079, at *2 (W.D. Wash. June 23, 2015) (citing *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)). "[T]he burden is on the fee applicant to produce satisfactory evidence … that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Plaintiff has met this standard.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Edwin Budge has practiced law for more than 30 years, has been a principal at his law firm since 1998, and has built a specialized practice in wrongful death and serious injury litigation, "the vast majority" of which involves § 1983 claims. Dkt. No. 317 at 1–2. Budge asserts that based on his years of experience litigating cases like this one, and his knowledge of the Seattle legal market, his rate of $700 per hour is reasonable. *Id.* at 5. Budge also notes that NaphCare's counsel, David Perez, sought $785 per hour in a civil rights case in 2020, and that Budge "has twice as much legal experience as Mr. Perez." *Id.* at 5, Dkt. No. 317-1 at 3.

Ryan Dreveskracht is an attorney and partner at Galanda Broadman. Dkt. No. 316 at 1. After graduating from law school in 2009, Dreveskracht clerked at the U.S. District Court for the Western District of Louisiana and joined Galanda Broadman as an associate attorney in 2011. *Id.* His focus is plaintiff's and civil rights litigation. *Id.* at 2. He asserts that his current standard hourly rate of $650 per hour is reasonable, as are associate attorneys' rates of $500 per hour (including Corinne Sebren,[2] Rachael Schulman, and Rachel Tobias). *Id.* at 3. Finally, Dreveskracht attests that paralegals and legal assistants reasonably bill $195 per hour. *Id.* Dreveskracht claims that these rates are not only reasonable, but "in fact lower than the rates charged" for similar litigation based on his knowledge of rates charged by other attorneys in Seattle and at his law firm. *Id.* at 4–5. Dreveskracht also notes that the associate and paralegal rates are similar to those charged by NaphCare's counsel at Perkins Coie for professionals with similar levels of experience in a civil rights case in 2020. *Id.* at 5.

Three attorneys not involved in the case submitted declarations in support of Tapia's fee request: Tomás Gahan, J. Nathan Bingham, and Nathan P. Roberts. Gahan, who has been a civil

---

[2] Corinne Sebren is an associate attorney who graduated from the University of Washington School of Law in 2021. Dkt. No. 316 at 4. Along with Budge and Dreveskracht, Sebren serves as counsel of record for Tapia. Dkt. No. 317 at 6. Ms. Sebren worked as an associate attorney at Galanda Broadman until July 8, 2025, when she joined Budge Heipt PLLC as an associate. Dkt. No. 351 at 2.

ORDER GRANTING MOTION FOR ATTORNEY'S FEES - 7

1    rights and personal injury litigator at his law firm, PWRFL, for thirteen years, and who previously

2    tried nearly 100 cases as a prosecutor, states that in this district, plaintiff's civil rights litigation

3    attorneys' hourly rates range between $500 per hour and over $800 per hour.  Dkt. No. 318 at 1–

4    2.  Gahan asserts that the hourly rates of $700 per hour for Ed Budge, $650 per hour for Ryan

5    Dreveskracht, $500 per hour for associate attorneys, and $195 per hour for paralegals and legal

6    assistants are "more than reasonable and easily comport[] with market rates in this jurisdiction."

7    *Id.* at 2–3.  He also believes the total of 3,558.8 hours[3] of combined attorney and paralegal time

8    "is reasonable and in accordance with what [he] would expect in light of the facts … and the nature

9    of the opposition faced." *Id.* at 3.  Finally, given the nature of this case, Gahan estimates that the

10   requested fees in this case are "expected" in light of the "experience and quality" of Tapia's

11   attorneys. *Id.*

12       In his declaration, J. Nathan Bingham, an attorney at Krutch Lindell Bingham Jones who

13   has practiced law since 2013, states that given the "complex legal issues and expert intensive

14   medical issues" in this case, the hourly rates of $700 per hour for Ed Budge, $650 per hour for

15   Ryan Dreveskracht, $500 per hour for associate attorneys, and $195 per hour for paralegals and

16   legal assistants, are reasonable in this jurisdiction.  Dkt. No. 319 at 1–2.  He also finds that the

17   amount of time spent in the case appears reasonable as compared to cases of similar complexity

18   that he has worked on, and in fact, explains the total fee figure is "actually somewhat lower than

19   [he] would have expected in a case of this magnitude and with this number of experts[.]" *Id.*  at

20   2.

21       Nathan P. Roberts, who has worked as a trial attorney at Connelly Law Offices since 2008,

22   and focuses on plaintiff-side personal injury, wrongful death, civil rights, and employment

23

24   ───────────────────

[3] This reflected the number of hours when Tapia filed his initial fee petition.  *See* Dkt. No. 315.

ORDER GRANTING MOTION FOR ATTORNEY'S FEES - 8

litigation, also found the rates requested in this case to be reasonable.  Dkt. No. 320 at 1–3.  He opines that Tapia's counsel in this case are "highly respected in the civil rights legal community" and are "considered the gold standard" on account of their knowledge, skill, and experience.  *Id.* at 2–3.  He adds that the typical hourly rates for plaintiff's civil rights attorneys in the Western District of Washington "range from $500 per hour to $850 per hour."  *Id.* at 2.  Finally, he notes that the same rates requested, and higher rates, have been approved by judges within the geographic territory of the Western District of Washington.  *Id.* at 3–4 (collecting cases).

NaphCare argues that Tapia's attorneys' rates are excessive across the board.[4]  *See* Dkt. No. 356 at 7–8.  As to Budge, NaphCare points to a case from the Eastern District of Washington for work done in Spokane in which the court adopted $550 per hour as a reasonable rate.  *Id.* at 7. But as Budge points out, that rate was set in reference to rates for comparable work in Spokane, not Seattle.  Dkt. No. 317 at 4–5 (citing *Est. of Hill v. NaphCare, Inc.*, No. 2:20-CV-00410-MKD, 2024 U.S. Dist. LEXIS 110069 at *26 (E.D. Wash. June 21, 2024) (finding rate of $550 per hour reasonable for an attorney in Spokane with Budge's skill)).  As detailed above, the record adequately supports $700 per hour for an attorney of Budge's experience and skill in a matter of this type and complexity.  Recent authority from this district is in accord.  *See e.g.*, *Knudsen v. Hightower Holdings, LLC*, No. C24-0395-KKE, 2024 WL 3430994, at *3 (W.D. Wash. July 16, 2024) (approving $850 hourly rate for Seattle law firm partner with 20 years of experience and $755 for partner with 16 years of experience); *Promedev, LLC v. Wilson*, No. C22-1063JLR, 2024 WL 3043415, at *6 (W.D. Wash. June 18, 2024), *aff'd sub nom. Promedev, LLC v. Imagipix Corp.*, No. 24-4096, 2025 WL 2160143 (9th Cir. July 30, 2025) (approving $850 hourly rate for Seattle law firm partner).  Accordingly, the Court rejects NaphCare's request to reduce Budge's rate.

---

[4] NaphCare does not challenge the rates charged by Tapia's initial attorneys, Jonathan E. Van Eck & Tim Tesh.

1    With respect to Dreveskracht and Sebren, NaphCare primarily argues that their hourly rates

2    of $650 and $500 should be reduced in proportion to NaphCare's desired cuts to Budge's rate.

3    Dkt. No. 356 at 7.  But the Court has concluded that Budge's rate is appropriate.  Moreover, the

4    record amply supports Dreveskracht's and Sebren's requested rates, as does the recent legal

5    authority cited above.  By contrast, the rates approved in the cases NaphCare cites are from 2020,

6    2016, and 2012.  *See id.* at 8 (citing cases).  NaphCare cites no authority that discusses *currently*

7    prevailing rates in this community for services like those offered in this case.  Nor does NaphCare

8    contend with the evidence of higher rates more recently approved by this and other courts (Dkt.

9    No. 320 at 3–4), including its own lawyers' hourly rates in a civil rights matter in 2020.  *See* Dkt.

10   No. 317-1.

11   Finally, NaphCare argues that Tapia provides "no authority" to support a $195 hourly rate

12   for paralegals.  Dkt. No. 356 at 8.  This is not correct.  Roberts attests that the paralegal rate sought

13   by Tapia is reasonable, and further attaches to his declaration a 2025 order from Pierce County

14   Superior Court approving a $350 per hour rate for a paralegal (Dkt. No. 320-3) and a 2023 King

15   County Superior Court order also approving a $350 hourly paralegal rate (Dkt. No. 320-4).  Dkt.

16   No. 320 at 3–4.  Moreover, the Gahan and Bingham declarations support that $195 per hour for

17   paralegal work is reasonable in this jurisdiction.  Dkt. No. 318 at 3, Dkt. No. 319 at 2.

18   Accordingly, based on the Gahan, Bingham, and Roberts declarations, the declarations

19   from Tapia's counsel, applicable authority, and the Court's own knowledge and experience,

20   including the Court's observations of Tapia's attorneys at trial, the Court finds Tapia's requested

21   rates track those prevailing in the community for similar services by professionals of reasonably

22   comparable skill, experience, and reputation.

23

24

1

2

3    3.   <u>Hours spent on the litigation are reasonable.</u>

4    "By and large, the district court should defer to the winning lawyer's professional

5 judgment as to how much time" was necessary to spend on the case. *Ryan v. Editions Ltd. W.,*

6 *Inc.*, 786 F.3d 754, 763 (9th Cir. 2015) (citation modified). But only hours "reasonably expended

7 on the litigation" are compensable under § 1988. *Webb v. Bd. Of Educ. of Dyer Cnty.*, 471 U.S.

8 234, 242 (1985) (citation modified). In determining the lodestar, the district court should exclude

9 hours "that are excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565

10 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley*, 461 U.S. at 433). The determination "should

11 not result in a second major litigation" and trial courts "need not, and indeed should not, become

12 green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). The essential goal in shifting

13 fees "is to do rough justice, not to achieve auditing perfection." *Id.* "[T]rial courts may take into

14 account their overall sense of a suit, and may use estimates in calculating and allocating an

15 attorney's time." *Id.*

16    Here, Tapia's counsel aver that Tapia's case was "one of the most legally and factually

17 complex jail cases ever tried in this district," and so the hours expended on the litigation—4049.50

18 hours including briefing on attorney's fees—are reasonable. Dkt. No. 316 at 6. Tapia's counsel

19 state that they "endeavored to investigate and litigate the case efficiently by dividing labor where

20 practicable," and that "[t]he hours spent by … counsel were all in necessary aid of the result." Dkt.

21 No. 350 at 9. Tapia's counsel also claim to have "painstakingly combed their ledgers and stricken

22 any time entries that are 'truly fractionable'" as to work done in pursuit of claims against NaphCare

23 and Pierce County. *Id.*, Dkt. No. 316 at 3–4 (Dreveskracht asserting that time entries relating to

24 claims against NaphCare's co-defendant, Pierce County, were expunged to the extent they were

"truly fractionable").

1    While not directly attacking the number of hours Tapia submits, nor challenging any

2  particular categories of billing entries, NaphCare argues that Tapia's fees should be reduced by "at

3  least $250,000" due to the "unsuccessful litigation" inflating his requested amount.  Dkt. No. 356

4  at 5–6.  NaphCare suggests that "Plaintiff was not especially successful" because he abandoned

5  multiple aspects of his case, including his negligence claim and claim for economic damages, and

6  because he dropped multiple defendants in filing his second amended complaint.  *Id.*  NaphCare

7  also argues that Tapia's attorneys "do not specify which claims or defendants are the subject of

8  the billing" from 2019 through 2022, when Tapia filed his second amended complaint.  *Id.* at 6.

9    Tapia counters that he only dropped defendants "in the spirit of compromise," given that

10  any judgment in the case "would ultimately come from [those defendants'] employers[.]"  Dkt.

11  No. 357 at 3.  Tapia further explains that he dropped his negligence claim because courts in this

12  district have held that "healthcare corporations can never be held liable for negligence[.]"  *Id.*

13  Thus, once Tapia obtained a successful settlement with Pierce County (*see* Dkt. Nos. 209, 211),

14  he strategically chose to drop that claim.  *Id.* at 3–4, *id.* at 3 n.1 ("There are also strategic reasons

15  for not asserting negligence … against NaphCare, as punitive damages are not available under

16  Washington State common law.").  Similarly, Tapia asserts his decision to waive economic

17  damages before trial does not reflect the degree of success he obtained, but rather, "was a strategic

18  choice."  *Id.* at 4 (citing *Brandy C. v. Kijakazi*, No. 21-5029, 2022 WL 17223018, at *3 (E.D.

19  Wash. Apr. 11, 2022) (rejecting party's request to reduce attorney's fees, explaining that "attorneys

20  should be given room to make strategic choices[.]")).  The Court agrees with Tapia.

21    Crucially, NaphCare cites no legal authority for its argument that courts must dissect fee

22  requests based on "successful" and "unsuccessful" portions of litigation in a case where the

23  plaintiff was resoundingly successful on all the claims brought to trial.  *See Hensley*, 461 U.S. at

24  435 (explaining that cases involving "a common core of facts" or "related legal theories" should

not "be viewed as a series of discrete claims"); *Anderson v. State Farm Fire & Cas. Co.*, 3:20-CV-05119-DGE, 2024 WL 3598505, at *5 (W.D. Wash. July 31, 2024) (same); *see also League of Residential Neighborhood Advocs. v. City of Los Angele*s, 633 F. Supp. 2d 1119, 1132 (C.D. Cal. 2009) ("[I]n a lawsuit where the plaintiff presents different claims for relief that involve a common core of facts or are based on related legal theories, the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis." (citation modified) (citing *McCown*, 565 F.3d at 1103)).

The Supreme Court has explained that when a plaintiff "obtain[s] excellent results, his attorney should recover a fully compensatory fee" that "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Id.* And in cases like Tapia's that "involve a common core of facts," "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* Thus, rather than viewing such a case as "a series of discrete claims," "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* Here, the overall relief obtained by Tapia—a favorable jury verdict on the sole claim he elected to try in the amount of $25 million—is significant considering the number of hours his counsel spent on the litigation. The trial in this case pertained to the same "common core of facts" that have been at issue since the onset of this case—thus, the Court will not "attempt to divide the request for attorney's fees on a claim-by-claim basis." *League of Residential Neighborhood Advocs.*, 633 F. Supp. 2d at 1132 (citation omitted).

In sum, the Court finds that, given the excellent results achieved, Tapia's claimed hours and resulting lodestar calculation, *supra* at Part II.B, are reasonable.

**C.    Tapia's litigation costs are reasonable.**

Tapia requests $128,015.70 in out-of-pocket litigation costs. Dkt. No. 350 at 11–12. Tapia does not seek reimbursement for sums paid to expert witnesses, including expert witness travel. *Id.* at 11. Dreveskracht provides an itemized list of expenses, which include court filing fees, legal research costs, discovery services, travel expenses, various office supplies, deposition costs, printing costs, and focus group costs, among other litigation costs. *See* Dkt. No. 316-2. The list details expenses that have been omitted from the request, which includes costs related to expert witnesses. *Id.* at 3–5, 7–8, 10–13.

NaphCare objects to Tapia's counsel seeking fees for travel by Dreveskracht, Sebren, and paralegals/legal assistants to Seattle, including to attend hearings and for trial-related preparation. Dkt. No. 356 at 9. NaphCare argues that such travel shows Tapia's counsel failed to exercise requisite "billing judgment" because Galanda Broadman maintains an office in Seattle. *Id.* (citing *Hensley*, 461 U.S. 434). NaphCare asks the court to reduce Tapia's fees by "at least $25,000" to account for "unnecessary travel." *Id.*

"It is well established that attorney's fees under 42 U.S.C. § 1988 include reasonable out-of-pocket litigation expenses that would normally be charged to a fee paying client, even if the court cannot tax these expenses as 'costs' under 28 U.S.C. § 1920." *Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006). Tapia's expenses for travel are recoverable, "as they are generally charged to fee paying clients." *Ostling v. City of Bainbridge Island*, 3:11-CV-05219-RBL, 2012 WL 4846252, at *5 (W.D. Wash. Oct. 11, 2012); *see also United States v. City & Cnty. of San Francisco*, 748 F. Supp. 1416, 1422 (N.D. Cal. 1990) ("Reasonable attorneys' fees include reasonable travel time compensated at the full

hourly rate."). NaphCare fails to cite any legal authority on travel costs to the contrary. *See* Dkt. No. 356 at 9. Thus, the Court rejects NaphCare's argument that Tapia's travel costs are unnecessary.

In sum, Tapia is entitled to $128,015.70 in litigation costs.

## III.  CONCLUSION

Accordingly, the Court ORDERS that Tapia's motion for attorney's fees is GRANTED. Tapia is entitled to attorney's fees in the amount of $2,143,891.00 and litigation costs of $128,015.70, for a total of $2,271,906.70.

Dated this 26th day of November, 2025.

Kymberly K. Evanson
United States District Judge

ORDER GRANTING MOTION FOR ATTORNEY'S FEES - 15